## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>     v.<br><br>BRANDEIS UNIVERSITY,<br><br>                          Defendant. | No.<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     NATURE OF ACTION ............................................................................................1

II.    JURISDICTION AND VENUE ...........................................................................2

III.   PARTIES ..............................................................................................................3

IV.   FACTS .................................................................................................................5

     A.     Background ...............................................................................................5

     B.     The Novel Coronavirus Shutdowns And Defendant's Campus Closure .................9

     C.     Defendant's Refusal To Issue Tuition And Fee Refunds ......................................14

V.    CLASS ACTION ALLEGATIONS ...................................................................15

VI.   CAUSES OF ACTION .......................................................................................18

     COUNT I  BREACH OF CONTRACT..............................................................18

     COUNT II  UNJUST ENRICHMENT ...............................................................19

     COUNT III  CONVERSION .............................................................................20

PRAYER FOR RELIEF ................................................................................................21

JURY DEMAND ..........................................................................................................22

Plaintiff, JOHN DOE, individually and on behalf of all others similarly situated, for his

Class Action Complaint against Defendant Brandeis University ("Brandeis"), based upon

personal knowledge as to his own actions and based upon the investigation of counsel regarding

all other matters, complains as follows:

## I.      NATURE OF ACTION

1.      This Class Action Complaint comes during a time of hardship for so many

Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1]

Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and

universities across the country to shut down their campuses, evict students from campus

residence halls, and switch to online "distance" learning.

2.      Despite sending students home and closing its campus(es), Defendant continues

to charge for tuition, fees, and/or room and board as if nothing has changed, continuing to reap

the financial benefit of millions of dollars from students. Defendant does so despite students'

complete inability to continue school as normal, occupy campus buildings and dormitories, or

avail themselves of school programs and events. So while students enrolled and paid Defendant

for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class

Members something far less: a limited online experience presented by Google or Zoom, void of

face-to-face faculty and peer interaction, separated from program resources, and barred from

facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

3.       While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law. And for some students and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4.       As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full-value of the services paid, did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.       JURISDICTION AND VENUE

5.       This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Massachusetts, where this action is

originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).[2]

6.      Venue is appropriate in this District because Defendant is located within the District of Massachusetts. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.    PARTIES

7.      Plaintiff John Doe is a resident of the State of Massachusetts. Plaintiff is enrolled as a full-time student for the Spring 2020 academic term at Defendant. Plaintiff is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term. Plaintiff paid Defendant for opportunities and services that he will not receive, including on-campus education, facilities, services, and activities.

8.      While Plaintiff could have obtained his degree online, Plaintiff enrolled at Brandeis University to obtain the full experience of live, in-person courses and direct interactions with instructors and students, facilitated by small class sizes.

9.      With Defendant's campus closure and transition to an online-only educational experience, Plaintiff suffered a decreased quality of experience and education, and lost access to important university facilities and experiences that were bargained for by selecting in-person instruction.

---

[2] About 29.3% of the students attending Brandeis University come from within Massachusetts. https://www.collegefactual.com/colleges/brandeis-university/student-life/diversity/.

10.     Plaintiff found the transition to online learning to be disruptive and ineffective with no oversight or accountability to ensure the same quality of education as in-person instruction. For example, many courses relied heavily on presentations, class experiment participation and surveys, and debate components that were significantly hindered once the courses shifted online. One professor cancelled a week of lecture to learn how to use online platforms and did not reschedule. Another professor did not conduct any online lectures, only provided PowerPoint slides, disorganized notes, and limited assistance to students navigating course assignment guidelines. Other professors continuously revised the syllabus making it difficult for students to understand expectations and do their best work.

11.     Plaintiff lost the use of important facilities for his studies, including study spaces, university libraries, lounges, the dining halls, and the art studios. He also lost access to his peers, which was a significant component in choosing an in-person academic experience.

12.     Defendant effectively cancelled Plaintiff's art course after Defendant decided to revoke access to the art studios, providing students no opportunity to retrieve their work. Plaintiff could not complete the artwork he started and Defendant did not provide a feasible way for students to continue the course online. For example, Defendant did not provide any resources or support to students or art professors to facilitate an effective transition leaving students without the ability to continue art courses, or even the basic art supplies necessary to complete their artwork. Defendant has yet to provide access for Plaintiff to collect his work from the studios.

13.     Additionally, Plaintiff was unable to access academic resources he often utilized during his time at Brandeis to supplement his studies, including the writing center, academic offices, and academic advisors. Plaintiff actively sought out these resources during the Spring 2020 semester but was provided minimal support.

-4-

14.     Defendant Brandeis University is a private institute of higher education, located at 415 South Street, Waltham, MA 02453. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

## IV.     FACTS

### A.     Background

15.     Founded in 1948, Brandeis has a current enrollment of approximately 5,800 students across a variety of undergraduate and graduate areas of study.

16.     For the fiscal year ending June 30, 2019, Brandeis' endowment had an approximate value of $1.074 billion. Brandeis also reported operating revenues and other support of approximately $356.4 million, which included $168.6 million in revenue from tuition and fees along with another $43.3 million in residence hall and dining fees.

17.     Since 1994, Brandeis has raised "more than $1.5 billion from alumni, parents, friends, trustees, the Brandeis National Committee, and corporations and foundations."[3]

18.     Moreover, Brandeis has received multiple national awards for overall performance in fundraising, with Brandeis' Institutional Advancement Division recognized "as one of the nation's premier fundraising operations by the Council for Advancement and Support of Education (CASE), the industry's leading professional association."[4]

19.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western

---

[3] https://alumni.brandeis.edu/news-events/news-archive/winship-retire.html.

[4] https://alumni.brandeis.edu/news-events/news-archive/case-award-2018.html.

Governors University, Southern New Hampshire University, University of Phoenix-Arizona),

Defendant is not such a school.

20.     Rather, a significant focus of Defendant's efforts to obtain and recruit students

pertains to the campus experience it offers along with face-to-face, personal interaction with

skilled and renowned faculty and staff.

21.     Brandeis is a residential university where 78 percent of students live on campus

all four years.[5]

22.     Defendant recognizes that "[a] distinct hallmark of a Brandeis education is

experiential learning," which "takes many forms and encompasses a variety of hands-on

experiences, including research, fieldwork, community-engaged learning, internships and more.

A flexible curriculum that allows students to pursue multiple academic interests, and highly

accessible faculty members who are leaders in their fields, help Brandeis students make the most

of their college experience."[6]

23.     Brandeis notes that its "[u]ndergraduate courses are taught by the same world-

class scientists, scholars and artists who teach in the graduate programs and make Brandeis a

leader in fields as varied as neuroscience, American history, theater arts and business," stressing

that "[t]hese faculty members will know you as a person, not a number. Your professors will be

able to assess your strengths (and weaknesses) and help you develop both as a student and a

person."[7]

---

[5] https://www.brandeis.edu/admissions/studentlife/housing.html.

[6] https://www.brandeis.edu/admissions/academics/index.html.

[7] https://www.brandeis.edu/admissions/academics/research.html.

24.     Moreover, Brandeis particularly emphasizes the interpersonal connections among students, faculty, and staff, emphasizing that "because Brandeis is smaller than other research universities, it is also marked by a particular connectivity. Faculty, students and staff engage with others across departments, disciplines and interests," resulting "in an academic and social environment that is both deeply curious and collaborative."[8]

25.     Students in the art program are able to "build an accomplished portfolio that generates an interdisciplinary exploration from studio offerings" and includes an opportunity for students to "develop a year-long portfolio of personal work."[9] Interacting with the art faculty "fosters students' abilities to make informed judgments and push themselves beyond expectations."[10]

26.     As a result, Brandeis ordinarily "features a kind of connectedness you don't find elsewhere."[11]

27.     To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

28.     For the Spring 2020 term, Defendant assessed undergraduate students' tuition and fee charges, including $28,690 for undergraduate tuition and $956 in undergraduate fees.[12] Total charges for a standard residence hall room (double-occupancy) and a 12-meal per week board

---

[8] https://www.brandeis.edu/brand/narrative/index.html.

[9] https://www.brandeis.edu/fine-arts/undergraduate/studio-art-minor/index.html.

[10] https://www.brandeis.edu/fine-arts/undergraduate/index.html.

[11] *Id.*

[12] https://www.brandeis.edu/registrar/bulletin/provisional/arts-sciences/tuition.html. Notably, "[l]ibrary privileges and use of athletic facilities for the academic year are included in the full tuition fee." *Id.*

contract for the 2019–2020 academic year assessed at $7,945.[13] On a per course basis, Defendant assessed undergraduate students at $6,918 ($1,729 per credit, per term). Additionally, art courses require a $75 studio fee per semester.

29.     Defendant did the same for graduate students as well depending on the course of study. For example, for students in Brandeis' Graduate School of Arts and Sciences, Defendant charges full-time resident students at $25,970 per term, while charging special students, postbaccalaureate students in mathematics, and part-time resident students $6,492 per course.[14] As another example, Defendant charged full-time students in its MBA program $52,250 per semester and part-time MBA students at the rate of $5,992 per course.[15]

30.     Such charges for study are significantly higher than online-only programs, including the limited online courses that Defendant offers.

31.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

32.     As to Defendant, for the Spring 2020 term, Defendant offered limited online degree programs, charging such students less per credit hour for online courses. Through its Rabb School of Continuing Studies, Division of Graduate Professional Studies, Defendant offers

---

[13] https://www.brandeis.edu/registrar/bulletin/provisional/arts-sciences/tuition.html.

[14] https://www.brandeis.edu/registrar/bulletin/provisional/gsas.html.

[15] https://www.brandeis.edu/registrar/bulletin/provisional/heller.html.

13 Master of Science degrees in a variety of courses of study.[16] For the Spring 2020 term,

Defendant charged students $3,535 per three-credit course.[17]

**B.    The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

33.    On December 31, 2019, governmental entities in Wuhan, China confirmed that

health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days

later, researchers in China identified a new virus that had infected dozens of people in Asia,

subsequently identified and referred to as the novel coronavirus, or COVID-19.

34.    By January 21, 2020, officials in the United States were confirming the first

known domestic infections of COVID-19.

35.    Due to an influx of thousands of new cases in China, on January 30, 2020, the

World Health Organization officially declared COVID-19 as a "public health emergency of

international concern."

36.    By March 11, 2020, the World Health Organization declared COVID-19 a

pandemic.

37.    Travel and assembly restrictions began domestically in the United States on

March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-

place orders. Other states, counties, and municipalities have followed the shelter-in-place orders

and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District

of Columbia, and Puerto Rico are being urged or directed to stay home.

---

[16] https://www.brandeis.edu/registrar/bulletin/provisional/rabb.html.

[17] *Id.*

38.     As it relates to this suit, Defendant began its response to the virus on or about February 9, 2020, when it restricted "**all Brandeis students, faculty, and staff from traveling to China on official university business, effective immediately**."[18]

39.     On February 26, 2020, Brandeis extended its travel restrictions to Korea,[19] then broadened the restrictions again on March 1, 2020 when it restricted travel to Italy and Iran as well.[20]

40.     On March 9, 2020, Defendant began restricting its campus events. Effective that day, Brandeis instructed its community to postpone, cancel, or "virtualize" events with more than 100 attendees and prohibited spectators at athletic events on campus.[21]

41.      On March 11, 2020, Defendant officially announced that it would transfer all classes, regardless of size, to an online only format. By March 16, 2020, Defendant directed that all Brandeis classes with more than 100 students will move online, with the last day of in-person instruction for all classes, regardless of size set for March 20, 2020.[22]

42.     And when the March 23–25 portion of Defendant's Spring Recess ended, "all undergraduate and graduate classes will move online for the remainder of the academic semester."[23]

---

[18] https://www.brandeis.edu/provost/letters/2019-2020/2-9-20-coronavirus.html (emphasis in original).

[19] https://www.brandeis.edu/provost/letters/2019-2020/2-26-20-covid-19.html.

[20] https://www.brandeis.edu/provost/letters/2019-2020/3-1-20-covid-19.html.

[21] https://www.brandeis.edu/provost/letters/2019-2020/3-9-20-coronavirus-update.html.

[22] https://www.brandeis.edu/coronavirus/campus-updates/2020-03-11-covid-19-update-changes-classes-operations.html.

[23] *Id.*

43.     Moreover, "[e]vents or meetings with more than 20 attendees, on-campus or off-campus, must be postponed, cancelled or 'virtualized.'"[24]

44.     By March 13, 2020, Defendant encouraged students to move out of campus housing as soon as practical and that all students must move out of residents halls by March 25, 2020, other than those granted exceptions to stay in the halls.[25]

45.     On March 16, 2020, Defendant closed its library, along with its Gosman Sports and Athletics center for all recreational activities.[26]

46.     And in accordance with Massachusetts Governor Charlie Baker's order that all non-essential businesses in Massachusetts must close by March 24, 2020, the Brandeis campus closed to all students but those who were specifically approved to remain on campus or who had move-out dates in the next few days.[27] It also directed that all departments "should have determined which employees are essential and will continue to report to work on campus, and which employees will begin teleworking if they have not already."[28]

47.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiff and the Class Members.

48.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students'

---

[24] *Id.*

[25] https://www.brandeis.edu/coronavirus/campus-updates/2020-03-13-covid-19-important-community-update.html.

[26] https://www.brandeis.edu/coronavirus/campus-updates/2020-03-16-covid-19-update-related-to-leaving-campus.html.

[27] https://www.brandeis.edu/coronavirus/campus-updates/2020-03-23-governor-orders-business-closures-in-massachusetts.html.

[28] https://www.brandeis.edu/coronavirus/campus-updates/2020-03-23-working-under-governors-order-to-close-non-essential-businesses.html.

bargained for educational experience and the experience that colleges and universities, including

Defendant, now provide.

49.     For example, as reported in The Washington Post, one student "wonders why he

and others . . . are not getting at least a partial tuition refund. Their education, as this school year

ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social

experience students imagined when they enrolled. But tuition remains the same: $27,675 per

semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from

New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't

just be a part of the business model where, no matter what happens, you have to pay the same

amount. The cost needs to reflect some of the realities.'"[29]

50.     As another example, as reflected in a Change.org petition, with nearly 5,000

supporters, students at another major university highlight the loss experienced by students: "As a

result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of

emergency in Illinois. In response, Northwestern University made the sensible decision to offer

all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of

the quarter as the situation worsens. While this is certainly the right call to ensure the health and

safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by

switching to online education for potentially an entire term. For the following reasons, we are

seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter.

Since Northwestern is a top private university, the estimated annual cost of attendance of

$78,654 goes towards a comprehensive academic experience that cannot be fully replicated

---

[29] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[30]

51.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[31]

52.     Brandeis students echo such concerns.

53.     For example, the Brandeis Hoot compiled various quotes from Brandeis students "to give their thoughts surrounding the latest developments" related to the virus:

> "Don't cancel graduation. Don't cancel senior week. Don't cancel Springfest. Or, refund me half my tuition."
>
> ***
>
> "I would like some tuition back or funding for my work, because online classes mean I physically will be unable to continue my studies (my painting thesis—as I will lose studio access and resources)."[32]

54.     And as reflected in an editorial from the Brandeis Hoot's editorial board:

> We, the editorial board of The Brandeis Hoot, feel the weight of the impact of the university's decision to transition to online learning. This change to our lives and our college careers will no doubt affect our memory of Brandeis and our time here, especially for the Class of 2020 as they approach graduation. The sadness and anger that students feel for the loss of events, practices and performances is undeniable. So much work and effort was put into

---

[30] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

[31] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

[32] http://brandeishoot.com/2020/03/13/class-of-2020-responds-to-online-transition/.

these endeavors, and we respect how difficult it is to have to give
up on them.[33]

## C.    Defendant's Refusal To Issue Tuition And Fee Refunds

55.    While Brandeis has adjusted student accounts with prorated credits for room and

board based on the date students move out, Defendant has refused to give a prorated refund for

fees paid for student services students cannot use because those services were curtailed,

eliminated, or because the student followed the university's instruction to leave the campus and

return home.

56.    Defendant has also refused to provide any tuition adjustments, despite the

significant changes Defendant implemented to student life, learning, and programs.

57.    In a list of FAQ's, Brandeis offers the following policy as support for its refusal to

provide tuition adjustments:

> **Will my spring tuition be refunded because courses are no
> longer in person?**
>
> Brandeis is continuing to provide all courses that were underway in
> the spring semester. Our students are receiving course credit, and
> making the same progress toward their degrees as they would
> otherwise. The reality in which we are currently living is not one
> that anyone anticipated; Brandeis faculty are continuing to work
> with all students to provide them with the attention and academic
> material that is the hallmark of a Brandeis education despite the
> current challenges.
>
> Online education is not less expensive to provide than in-person
> learning, and Brandeis has incurred significant unanticipated
> expenses around this transition. The same faculty are teaching the
> courses and the delivery mechanisms and support add challenges
> and costs, all while the existing expenses of maintaining the
> university's campus remain.
>
> In addition to transforming the delivery of our academic program
> to the online environment, all of Brandeis' student services are

---

[33] http://brandeishoot.com/2020/03/13/on-the-universitys-covid-19-response/.

being delivered online, from our library to our career center to our spiritual life services. Because Brandeis is working hard to provide students with continued access to coursework and services, students will receive credit and will not experience delays in their graduation dates, tuition will not be refunded for the spring semester.[34]

## V.   CLASS ACTION ALLEGATIONS

58.     Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of

Civil Procedure, on behalf of himself and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

59.     The definition of the Class is unambiguous. Plaintiff is a member of the Class Plaintiff seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

60.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly

---

[34] https://www.brandeis.edu/student-financial-services/faqs.html.

exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

61.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

62.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

63.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.      Whether Defendant engaged in the conduct alleged;

b.      Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

c.      Whether Defendant breached identical contracts with Plaintiff and the Class Members;

d.      Whether Defendant violated the common law of unjust enrichment;

e.   Whether Defendant converted Plaintiff and the Class Members refunds and/or rights to refunds; and

f.   The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

64.   The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

65.   Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

66.   Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

67.   The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually.

Even if the Class Members themselves could afford such individual litigation, the court system could not.

68.     In addition under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

69.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

70.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI.     CAUSES OF ACTION
### COUNT I
### BREACH OF CONTRACT

71.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

72.     Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

73.     Under their contracts with Defendant, Plaintiff and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

-18-

74.     Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

75.     However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiff and the Class Members' ability to access university facilities, and/or has evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

76.     Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

77.     Plaintiff and members of the Class are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

78.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

79.     At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiff and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

80.     Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

010920-25/1271025 V1

81.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

82.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

83.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

84.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

## COUNT III

## CONVERSION

85.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

86.     Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access Defendant's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

87.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting

-20-

students from campus housing. All the while, Defendant has unlawfully retained the monies

Plaintiff and the Class Members paid Defendant as well as barred Plaintiff from Defendant's

facilities.

88.     Defendant deprived Plaintiff and the other Class Members of the rights and

benefits for which they paid Defendant tuition, fees, and/or room and board.

89.     Plaintiff and/or Class Members have requested and/or demanded that Defendant

issue refunds.

90.     Defendant's interference with the rights and services for which Plaintiff and

members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for

rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiff and

members of the Class of their rights, benefits, services, and/or facility access.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or

judgment against Defendant including:

A.     Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of

the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and

his counsel of record as Class Counsel;

B.     Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.     Actual damages and all such other relief as provided under the law;

D.     Pre-judgment and post-judgment interest on such monetary relief;

E.     Other appropriate injunctive relief as permitted by law or equity, including an

order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.     The costs of bringing this suit, including reasonable attorney's fees; and

-21-

G.      All other relief to which Plaintiff and members of the Class may be entitled by

law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

Dated: May 28, 2020                         Respectfully submitted,

By: */s/ Kristie LaSalle*
Kristie LaSalle (BBO #692891)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
(617) 482-3700
kristiel@hbsslaw.com

Steve W. Berman (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice* Forthcoming)
Whitney K. Siehl (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Attorneys for Plaintiff, individually and on behalf of all others similarly situated*