**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALAN THOMAS OMORI and JOHN DOE, individually and on behalf of all others similarly situated, | No. 1:20-cv-11021-NMG |
| Plaintiffs, | <u>JURY TRIAL DEMANDED</u> |
| v. | |
| BRANDEIS UNIVERSITY, | |
| Defendant. | |

**<u>CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.    NATURE OF ACTION ........................................................................................1

II.   JURISDICTION AND VENUE ........................................................................3

III.  PARTIES ...........................................................................................................4

     A.    Plaintiffs .................................................................................................4

     B.    Defendant ...............................................................................................5

IV.  FACTS .............................................................................................................5

     A.    Background ............................................................................................5

     B.    Plaintiffs Contracted With Defendant For On-Campus Classes...............................8

     C.    The Novel Coronavirus Shutdowns And Defendant's Campus Closure ..............13

     D.    Defendant's Refusal to Issue Tuition, Fee, and Room and Board Refunds
           Constitutes a Breach of Contract. ........................................................15

V.   CLASS ACTION ALLEGATIONS .................................................................20

VI.  CAUSES OF ACTION ...................................................................................24

     COUNT I  BREACH OF CONTRACT.................................................................24

     COUNT II - BREACH OF IMPLIED CONTRACT.........................................26

     COUNT III - UNJUST ENRICHMENT .........................................................31

     COUNT IV  CONVERSION.................................................................................33

PRAYER FOR RELIEF ..........................................................................................34

JURY DEMAND ....................................................................................................35

Plaintiffs, ALAN THOMAS OMORI and JOHN DOE, individually and on behalf of all others similarly situated, for their Consolidated Class Action Complaint against Defendant Brandeis University ("Brandeis"), based upon personal knowledge as to their own actions and based upon the investigation of counsel regarding all other matters, complain as follows:

## I.  NATURE OF ACTION

1.  This Consolidated Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19. Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.  Despite sending students home and closing its campuses, Defendant continues to charge for and/or retain tuition and fees as if nothing has changed, reaping the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive in-person academic experience, Defendant instead offers Plaintiffs and Class Members something different: a remote, online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiffs and Class Members did not bargain for such an experience.

3.  While some colleges and universities have promised refunds and/or discounts, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law. And for some students and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

-1-

4.      In response to COVID-19, on or about March 11, 2020, Brandeis decided to migrate all, or substantially all, classes online. Larger lectures were moved online on March 16, 2020 and all courses would transition online after March 20, 2020 and be conducted online for the remainder of the Spring 2020 semester.

5.      Despite the provision of an entirely remote undergraduate and graduate studies experience, Defendant refuses to refund or reimburse Plaintiffs and similarly situated Brandeis students the tuition and fees they paid for the promised on-campus instruction, services they are not being provided, events they cannot attend, and programs and activities that have been curtailed, discontinued, or closed.

6.      Essentially, students have paid Brandeis for in-person instruction that is no longer available to them, access to buildings they can no longer enter, technology, programs and services that Brandeis is no longer providing, and activities that are no longer available. Brandeis is thus profiting from COVID-19 while further burdening students and their families—many of whom have been laid off, become ill, lost loved ones, or are otherwise already bearing the brunt of the COVID-19 pandemic. The result is an enormous windfall to Brandeis. Both contract and equity demand that Brandeis disgorge its ill-gotten funds.

7.      Defendant's actions have financially damaged Plaintiffs and Class Members. Plaintiffs bring this action because Plaintiffs and Class Members did not receive the full value of the services paid, and did not receive the benefits of in-person instruction. Plaintiffs and Class Members lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, and attorney's fees and costs. This lawsuit seeks disgorgement and monetary damages in the amount of prorated, unused amounts of tuition, room and board,

and fees that Plaintiffs and the other Class Members paid, the benefits of which will not be provided by Defendant.

## II.   JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Massachusetts, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).[1]

9.     Venue is appropriate in this District because Defendant is located within the District of Massachusetts. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

---

[1] About 29.3% of the students attending Brandeis University come from within Massachusetts. https://www.collegefactual.com/colleges/brandeis-university/student-life/diversity/.

## III.    PARTIES

### A.    Plaintiffs

10.    Plaintiff John Doe ("Plaintiff Doe") is a resident of the State of Massachusetts. Plaintiff Doe was enrolled as a full-time student for the Spring 2020 academic term in Defendant's undergraduate program.

11.    Plaintiff Alan Thomas Omori ("Plaintiff Omori") is a resident of the State of Illinois. Plaintiff Omori was enrolled as a full-time student for the Spring 2020 academic term in Defendant's undergraduate program.

12.    Plaintiffs were in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term.

13.    While Plaintiffs could have obtained their degrees online, Plaintiffs specifically selected, and reasonably expected to receive, an in-person, in-class experience at Brandeis University for the variety of educational experiences that only an in-person program can deliver.

14.    With Defendant's campus closure, cancellation of campus events, suspension of many campus services and programs, and transition to exclusively online instruction during the Spring 2020 semester, Plaintiffs lost access to the on-campus instruction, opportunities, facilities, and services for which Plaintiffs had bargained for by selecting—and paying tuition and fees for—in-person courses and experiences.

15.    For example, Plaintiffs lost vital access to campus libraries and important facilities for studies, including classrooms, study spaces, studio spaces, and lounges that were bargained for by selecting in-person instruction.

16.    Plaintiffs paid Defendant for on-campus courses and the unique opportunities that come with it, including the ability to communicate directly with professors, utilize campus

-4-

facilities and laboratories, attend office hours, and work through issues in-person. However, following the campus closure and transition to online courses, these benefits disappeared.

17.     As a result, while Plaintiffs and Class Members paid for students' in-person access to renowned faculty as essential to the Brandeis experience, Defendant excluded students from such access for the Spring 2020 and Fall 2020 semesters.

**B.     Defendant**

18.     Defendant Brandeis University is a private institute of higher education, located at 415 South Street, Waltham, MA 02453. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charged Plaintiffs and the Class Members.

## IV.     FACTS

**A.     Background**

19.     Founded in 1948, Brandeis has a current enrollment of approximately 5,800 students across a variety of undergraduate and graduate areas of study.

20.     Since its founding, Brandeis has predominantly provided students with an on-campus, in-person educational experience.

21.     For the fiscal year ending June 30, 2019, Brandeis' endowment had an approximate value of $1.074 billion. Brandeis also reported operating revenues and other support of approximately $356.4 million, which included $168.6 million in revenue from tuition and fees along with another $43.3 million in residence hall and dining fees.

22.     Upon information and belief, Defendant received $3,198.465 in federal stimulus under the CARES Act.[2]

---

[2] https://www2.ed.gov/about/offices/list/ope/allocationsforsection18004a1ofcaresact.pdf

23.    From this federal bailout, Defendant has allocated only $1,599,232.50 to students (the bare minimum required by law), apparently intending to keep the remaining $1.599 million for itself.[3]

24.    Since 1994, Brandeis has raised "more than $1.5 billion from alumni, parents, friends, trustees, the Brandeis National Committee, and corporations and foundations."[4]

25.    Moreover, Brandeis has received multiple national awards for overall performance in fundraising, with Brandeis' Institutional Advancement Division recognized "as one of the nation's premier fundraising operations by the Council for Advancement and Support of Education (CASE), the industry's leading professional association."[5]

26.    A significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff, a wide array of in-person services, opportunities, and extra-curricular activities, state-of-the-art facilities, and much more.

27.    A few examples of such efforts to promote that experience follow.

28.    Brandeis is a residential university where 78 percent of students live on campus all four years.[6]

29.    Defendant recognizes that "[a] distinct hallmark of a Brandeis education is experiential learning," which "takes many forms and encompasses a variety of hands-on experiences, including research, fieldwork, community-engaged learning, internships and more. A flexible curriculum that allows students to pursue multiple academic interests, and highly

---

[3] https://www.brandeis.edu/student-financial-services/financial-aid/30-cares-act.html.

[4] https://alumni.brandeis.edu/news-events/news-archive/winship-retire.html.

[5] https://alumni.brandeis.edu/news-events/news-archive/case-award-2018.html.

[6] https://www.brandeis.edu/admissions/studentlife/housing.html.

accessible faculty members who are leaders in their fields, help Brandeis students make the most of their college experience."[7]

30.     Brandeis notes that its "[u]ndergraduate courses are taught by the same world-class scientists, scholars and artists who teach in the graduate programs and make Brandeis a leader in fields as varied as neuroscience, American history, theater arts and business," stressing that "[t]hese faculty members will know you as a person, not a number. Your professors will be able to assess your strengths (and weaknesses) and help you develop both as a student and a person."[8]

31.     Moreover, Brandeis particularly emphasizes the interpersonal connections among students, faculty, and staff, emphasizing that "because Brandeis is smaller than other research universities, it is also marked by a particular connectivity. Faculty, students and staff engage with others across departments, disciplines and interests," resulting "in an academic and social environment that is both deeply curious and collaborative."[9]

32.     Students in the art program are able to "build an accomplished portfolio that generates an interdisciplinary exploration from studio offerings" and includes an opportunity for students to "develop a year-long portfolio of personal work."[10] Interacting with the art faculty "fosters students' abilities to make informed judgments and push themselves beyond expectations."[11]

---

[7] https://www.brandeis.edu/admissions/academics/index.html.

[8] https://www.brandeis.edu/admissions/academics/research.html.

[9] https://www.brandeis.edu/brand/narrative/index.html.

[10] https://www.brandeis.edu/fine-arts/undergraduate/studio-art-minor/index.html.

[11] https://www.brandeis.edu/fine-arts/undergraduate/index.html.

33.     As a result, Brandeis ordinarily "features a kind of connectedness you don't find elsewhere."[12]

**B.     Plaintiffs Contracted With Defendant For On-Campus Classes**

34.     For the Spring 2020 semester, Plaintiffs contracted with Brandeis—and paid a premium—specifically for on-campus courses and programs.

35.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (see, e.g., Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

36.     In fact, Brandeis' Spring 2020 course listings show that classes were offered in-person at specific locations on campus.[13]  For example, the sample screenshots below show classes such as Twentieth-Century and Contemporary Latin American Art scheduled to meet in the Golding Judaica Center Room 101, Fine Arts Senior Studio II scheduled to meet in the Epstein Building Senior Art Studio [**Exhibit A**], Louis Brandeis: Law, Business and Politics meeting in the Golding Judaica Center Room 110, and Communication and Media meeting in Olin-Sang American Civilization Center Room 101. [**Exhibit B**].

| 8112 | FA 77B 1 Syllabus | **Twentieth-Century and Contemporary Latin American Art** [ ca  nw ] See Course Catalog for Special Notes. | Block V T,Th 5:00 PM–6:20 PM Golding Judaica Center101 | **Open** 52 / 999 / 0 | Falconi, Jose |
| 4032 | FA 110B 1 | **Senior Studio II** [ ca ] See Course Catalog for Special Notes. Additional course fee applies. Instructor's Signature Required. | M,W 2:00 PM–4:50 PM Epstein Bldg FineArts SrStudio | **Open Consent Req.** 15 / 999 / 0 | Wardwell, Joseph M |

---

[12] *Id.*

[13] http://registrar-prod.unet.brandeis.edu/registrar/schedule/search/.



37.     Brandeis' 2019–2020 University Bulletin ("Bulletin") evidences the terms of the contract between Brandeis and Plaintiffs and Class Members.[14] [**Exhibit C**].

38.     As the Bulletin lays out, courses provided on-campus routinely offer students advantages and opportunities that are only available through on-campus, in-person instruction. For example, the Bulletin's descriptions for on-campus courses refer to: "hands-on experience"[15] "hands-on exposure,"[16] "experiential learning,"[17] access to "state-of-the-art studios,"[18] "practical experience" in laboratory courses,[19] and dozens of other references to benefits exclusive to on-campus instruction. [**Exhibit D**].

---

[14] Ex. C located at https://www.brandeis.edu/registrar/bulletin/2019-2020/overview/index.html/.

[15] Ex. D incorporated into the Bulletin via link at https://www.brandeis.edu/registrar/bulletin/2019-2020/arts-sciences/index.html/; also available at https://www.brandeis.edu/business/.

[16] Ex. D also available at https://www.brandeis.edu/fine-arts/.

[17] Ex. C located at https://www.brandeis.edu/registrar/bulletin/2019-2020/overview/index.html/.

[18] Ex. D also available at https://www.brandeis.edu/fine-arts/undergraduate/studio-art/index.html/.

[19] Ex. D also available at https://www.brandeis.edu/chemistry/.

010920-25/1365559 V1

39.     The Bulletin promotes student's rights to access Brandeis' facilities including "the Shapiro Campus Center, Usdan Student Center, the Sherman Student Center and the Gosman Sports and Convocation Center."[20]

40.     The Bulletin further emphasizes student's rights to interact in-person with students in classrooms noting "you will encounter innovative thinkers with diverse points of view — not just in front of the class, but in the seat beside you."[21]

41.     Perhaps because it has long taken pride in and marketed its unique on-campus academic experience, Brandeis has been relatively hesitant to develop online courses and programs or online-only programs. Brandeis offered limited fully online part-time graduate programs during the 2019–2020 school year. These online-only offerings are separately marketed and must be affirmatively selected, distinct from the in-person, on-campus educational experience chosen by the vast majority of Brandeis students.

42.     Plaintiffs selected on-campus courses and paid for the in-class and educational experiences that only an in-person program can deliver, such as the ability to access important university facilities, services, and faculty in-person.

43.     Defendant's usual and customary practice when students register for on-campus courses and pay tuition for such courses is to provide on-campus instruction. Plaintiffs' and Class Members' reasonable expectation when registering for classes for the Spring 2020 semester was that those classes would be provided on-campus, consistent with Defendant's usual and customary practice.

---

[20]Ex. C located at https://www.brandeis.edu/registrar/bulletin/2019-2020/overview/index.html/.

[21] Ex. D also available at https://www.brandeis.edu/business/undergraduate/index.html/.

44.     Plaintiffs and Class Members had the reasonable expectation that Defendant would provide the in-person educational experience and use of its facilities provided in Defendant's publications, including but not limited to the Bulletin, handbooks, brochures, advertisements, and other promotional materials.

45.     The combination of the express terms of the Bulletin, Defendant's publications, and Defendant's usual and customary practice constituted an offer to any students attending Brandeis to register for on-campus classes. If accepted by Plaintiffs and Class Members who did in fact register for such on-campus classes, in accordance with Brandeis' policies and procedures and usual custom and practice, and who timely paid tuition for those on-campus classes, Defendant became contractually obligated to provide on-campus classes to Plaintiffs and Class Members.

46.     In light of the terms laid out in the Bulletin, Defendant's publications, and Defendant's usual and customary practice, Plaintiffs registered for on-campus courses for the Spring 2020 semester. Defendant accepted their registration as an on-campus student taking on-campus courses and charged Plaintiffs the following for the Spring 2020 semester: $28,690 for undergraduate tuition and $956 in undergraduate fees.[22] Total charges for a standard residence hall room (double-occupancy) and a 12-meal per week board contract for the 2019–2020 academic year assessed at $7,945.[23] On a per course basis, Defendant assessed undergraduate students at $6,918 ($1,729 per credit, per term). Additionally, art courses require a $75 studio fee per semester.

---

[22] https://www.brandeis.edu/registrar/bulletin/provisional/arts-sciences/tuition.html. Notably, "[l]ibrary privileges and use of athletic facilities for the academic year are included in the full tuition fee." *Id.*

[23] https://www.brandeis.edu/registrar/bulletin/provisional/arts-sciences/tuition.html.

010920-25/1365559 V1

47.     Defendant did the same for graduate students as well depending on the course of study. For example, for students in Brandeis' Graduate School of Arts and Sciences, Defendant charges full-time resident students at $25,970 per term, while charging special students, postbaccalaureate students in mathematics, and part-time resident students $6,492 per course.[24] As another example, Defendant charged full-time students in its MBA program $52,250 per semester and part-time MBA students at the rate of $5,992 per course.[25]

48.     Such charges for study are significantly higher than online-only programs, including the limited online courses that Defendant offers.

49.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

50.     As to Defendant, for the Spring 2020 term, Defendant offered limited online graduate degree programs, charging such students less per credit hour for online courses. Through its Rabb School of Continuing Studies, Division of Graduate Professional Studies, Defendant offers 13 Master of Science degrees in a variety of courses of study.[26] For the Spring 2020 term, Defendant charged students $3,535 per three-credit course.[27]

51.     Plaintiffs and Class Members paid Brandeis tuition and fees for on-campus courses—and the benefits, services, opportunities, and facilities that came with them—for the

---

[24] https://www.brandeis.edu/registrar/bulletin/provisional/gsas.html.

[25] https://www.brandeis.edu/registrar/bulletin/provisional/heller.html.

[26] https://www.brandeis.edu/registrar/bulletin/provisional/rabb.html.

[27] *Id.*

Spring 2020 semester. In registering and paying Brandeis tuition and fees for the Spring 2020 semester, Plaintiffs and Class Members understood, per the course Bulletin, Brandeis' publications, and Brandeis' usual and customary practice, that the classes they bargained and paid for would be administered on-campus for the duration of the semester, and that they would get a full semester's worth of access to on-campus facilities, services, and resources.

52.     However, as set forth further below, since March 11, 2020, Plaintiffs have not been permitted to attend classes on-campus or had access to campus benefits.

**C.     The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

53.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

54.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

55.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

56.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

57.     On March 11, 2020, Defendant officially announced that it would transfer all classes, regardless of size, to an online only format. By March 16, 2020, Defendant directed that

all Brandeis classes with more than 100 students will move online, with the last day of in-person instruction for all classes, regardless of size set for March 20, 2020.[28]

58.     And when the March 23–25 portion of Defendant's Spring Recess ended, "all undergraduate and graduate classes will move online for the remainder of the academic semester."[29]

59.     Moreover, "[e]vents or meetings with more than 20 attendees, on-campus or off-campus, must be postponed, cancelled or 'virtualized.'"[30]

60.     By March 13, 2020, Defendant encouraged students to move out of campus housing as soon as practical and that all students must move out of residents halls by March 25, 2020, other than those granted exceptions to stay in the halls.[31]

61.     On March 16, 2020, Defendant closed its library, along with its Gosman Sports and Athletics center for all recreational activities.[32]

62.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiffs and the Class Members.

---

[28] https://www.brandeis.edu/coronavirus/campus-updates/2020-03-11-covid-19-update-changes-classes-operations.html.

[29] *Id.*

[30] *Id.*

[31] https://www.brandeis.edu/coronavirus/campus-updates/2020-03-13-covid-19-important-community-update.html.

[32] https://www.brandeis.edu/coronavirus/campus-updates/2020-03-16-covid-19-update-related-to-leaving-campus.html.

-14-

D.    **Defendant's Refusal to Issue Tuition, Fee, and Room and Board Refunds Constitutes a Breach of Contract.**

63.    Moving classes online barred students from the in-person courses and access to facilities bargained for and paid for by Plaintiffs and Class Members and promised to be delivered by Defendant.

64.    Plaintiffs and Class Members were provided with an online substitute for the hands-on, in-person coursework for which they contracted—and for which they paid.

65.    Yet despite providing students with only online educational experiences that are vastly different from what Plaintiffs and Class Members contracted and paid for, Brandeis has refused to provide students with prorated reimbursements of tuition and fees.

66.    The remote, online learning classes offered to Spring 2020 students since March deprived students of in-person learning from their peers and school faculty and the on-campus experience for which they had contracted.

67.    The move to these remote classes also deprived students of access to the facilities, materials, and opportunities only offered on Brandeis' physical campus, including laboratory and research experience, use of on campus facilities, such as the art studios, gym, and libraries, and use of on-campus services and events such as sporting events, end-of-year programs, lectures, and various student services.

68.    The online classes Plaintiffs and their peers have been provided are not equivalent to the in-person, campus experience that Plaintiffs and other Brandeis students chose for their university education. The tuition and fees that Defendant charged were predicated on access to, constant interaction with, and feedback from peers, mentors, professors, and guest lecturers; access to technology, libraries, and laboratories; opportunities to attend or participate in spectator

-15-

sports and athletic programs; access to student government and health services; and participation in extracurricular groups and learning, among other things.

69.    College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

70.    For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[33]

71.    As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by

---

[33] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/

switching to online education for potentially an entire term. For the following reasons, we are

seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter.

Since Northwestern is a top private university, the estimated annual cost of attendance of

$78,654 goes towards a comprehensive academic experience that cannot be fully replicated

online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no

longer have access to invaluable face-to-face interaction with faculty, resources necessary for

specific programs, and access to facilities that enable learning."[34]

72.     Another university's student newspaper reflects another example: "At this time,

most of the campus and dorms need not be rigorously maintained. No events will be held, nor

speakers hosted. The world-class education that consists in having opportunities to work and

interact with academics and peers (not to mention the vast numbers of innovators, creators,

doctors, organizers, and more that congregate on our campus) will no longer be provided."[35]

73.     A July 2020 survey of 13,606 college students in the United States found that

75% of students are unhappy with their online classes, and 93% percent believe that if classes are

provided online, tuition should be lowered.[36] Students are so disappointed in online instruction

that more than one-third are considering withdrawing from school entirely.[37]

74.     Brandeis students echo such concerns.

75.     For example, the Brandeis Hoot compiled various quotes from Brandeis students

"to give their thoughts surrounding the latest developments" related to the virus:

---

[34] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

[35] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

[36] https://www.cnbc.com/2020/07/27/93percent-of-college-students-say-tuition-should-be-cut-for-online-classes.html.

[37] *Id.*

> "Don't cancel graduation. Don't cancel senior week. Don't cancel Springfest. Or, refund me half my tuition."

> \*\*\*

> "I would like some tuition back or funding for my work, because online classes mean I physically will be unable to continue my studies (my painting thesis—as I will lose studio access and resources)."[38]

76.     And as reflected in an editorial from the Brandeis Hoot's editorial board:

> We, the editorial board of The Brandeis Hoot, feel the weight of the impact of the university's decision to transition to online learning. This change to our lives and our college careers will no doubt affect our memory of Brandeis and our time here, especially for the Class of 2020 as they approach graduation. The sadness and anger that students feel for the loss of events, practices and performances is undeniable. So much work and effort was put into these endeavors, and we respect how difficult it is to have to give up on them.[39]

77.     Professors and administrators have also expressed dismay with schools charging students full tuition and fees for substantially inferior online substitutes. For instance, University of Pennsylvania Professor Jonathan Zimmerman, who specializes in the history of education, opined that "[m]ost online instruction isn't as effective as the traditional kind."[40] Alison Byerly, President of Lafayette College, which is offering a 10% discount to students who study from home in the 2020–2021 academic year, similarly stated: "If you don't have access to the library, to campus facilities, if you're not going to be on campus with students, you shouldn't have to pay full price."[41] Peter Kastor, a Professor and Chair of the History Department at Washington

---

[38] http://brandeishoot.com/2020/03/13/class-of-2020-responds-to-online-transition/.

[39] http://brandeishoot.com/2020/03/13/on-the-universitys-covid-19-response/.

[40] https://www.inquirer.com/opinion/commentary/coronavirus-remote-distance-learning-online-degrees-20200408.html.

[41] https://abcnews.go.com/US/petitions-lawsuits-students-demand-lower-tuition-online-instruction/story?id=72105974.

University in St. Louis, commented, ". . . [students] had already rejected online education when they chose a traditional campus experience." [42]

78.     As said in New York Magazine, "Universities are still in a period of consensual hallucination with each saying, 'We're going to maintain these prices for what has become, overnight, a dramatically less compelling product offering.'"[43]

79.     While Brandeis has adjusted student accounts with prorated credits for room and board based on the date students move out, Defendant has refused to give a prorated refund for fees paid for student services students cannot use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave the campus and return home.

80.     Defendant has also refused to provide any tuition adjustments, despite the significant changes Defendant implemented to student life, learning, and programs.

81.     In a list of FAQ's, Brandeis offers the following policy as support for its refusal to provide tuition adjustments:

> **Will my spring tuition be refunded because courses are no longer in person?**
>
> Brandeis is continuing to provide all courses that were underway in the spring semester. Our students are receiving course credit, and making the same progress toward their degrees as they would otherwise. The reality in which we are currently living is not one that anyone anticipated; Brandeis faculty are continuing to work with all students to provide them with the attention and academic material that is the hallmark of a Brandeis education despite the current challenges.

---

[42] https://www.washingtonpost.com/education/2020/04/04/these-washington-university-faculty-had-rejected-online-classes-until-coronavirus-heres-how-they-made-switch/.

[43] James D. Walsh, "The Coming Disruption," New York Magazine, May 11, 2020, available at https://nymag.com/intelligencer/2020/05/scott-galloway-future-of-college.html?utm_source=fb.

> Online education is not less expensive to provide than in-person learning, and Brandeis has incurred significant unanticipated expenses around this transition. The same faculty are teaching the courses and the delivery mechanisms and support add challenges and costs, all while the existing expenses of maintaining the university's campus remain.
>
> In addition to transforming the delivery of our academic program to the online environment, all of Brandeis' student services are being delivered online, from our library to our career center to our spiritual life services. Because Brandeis is working hard to provide students with continued access to coursework and services, students will receive credit and will not experience delays in their graduation dates, tuition will not be refunded for the spring semester.[44]

82.    Despite the fact that Brandeis students also would not get what they bargained for in contracting for on-campus courses, opportunities, facilities, and resources, Defendant has refused to give prorated tuition refunds or refunds for fees paid for student services that students cannot use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave campus and return home.

## V.    CLASS ACTION ALLEGATIONS

83.    Plaintiffs sue under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All people paying Defendant, in whole or in part, personally and/or on behalf of others, for tuition and fees, and/or room and board for in-person instruction and use of campus facilities, but who were denied use of and/or access to in-person instruction and/or campus facilities by Defendant for the Spring 2020 academic term or any subsequent term.

84.    Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and

---

[44] https://www.brandeis.edu/student-financial-services/faqs.html.

employees. Further excluded from the Class is this Court and its employees. Plaintiffs reserve the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

85.     The definition of the Class is unambiguous. Plaintiffs are members of the Class they seek to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

86.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiffs but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

87.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

88.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

89.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.     Whether Defendant engaged in the conduct alleged;

b.     Whether there is a difference in value between online distance learning and live in-person instruction;

c.     Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiffs and the Class Members;

d.     Whether Defendant breached identical contracts with Plaintiffs and the Class Members;

e.     Whether Defendant violated the common law of unjust enrichment;

f.     Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

g.     Whether Defendant converted Plaintiffs and the Class Members money paid for in-person instruction; and

h.     The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

90.     The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

91.     Plaintiffs' claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiffs are students enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiffs were instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

92.     Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiffs are familiar with the basic facts that form the bases of the Class Members' claims. Plaintiffs' interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiffs' counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class Members.

93.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

94.     In addition under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

95.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiffs and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

010920-25/1365559 V1

96.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI.     CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

97.     Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

98.     Plaintiffs bring this count on behalf of themselves and other members of the Class.

99.     Plaintiffs and Class Members entered into identical, binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the terms of the Bulletin, Defendant's publications, Defendant's website, and Defendant's usual and customary practice of providing on-campus courses.

100.    It was the reasonable expectation of Plaintiffs and Class Members and Defendant that Defendant would provide on-campus—as opposed to online—classes and instruction, and use of Defendant's facilities as mutually agreed in accordance with Defendant's usual and customary practice of providing on-campus courses, and as provided in Defendant's publications, including but not limited to the Bulletin, brochures, advertisements, and other promotional materials.

101.    Under their contracts with Defendant, and Defendant's usual and customary practice of providing on-campus courses, Plaintiffs and Class Members registered for on-campus

-24-

courses and paid Defendant tuition, fees, and/or room and board charges for Defendant to

provide in-person instruction, access to Defendant's facilities, and/or housing services.

102.   A material term of the bargain and contractual relationship, whether express or

implied, was that Defendant would provide on-campus courses and access to on-campus

facilities and services. Plaintiffs and Class Members have fulfilled all requirements of their

mutually agreed contracts, having followed the Bulletin's policies, procedures, and requirements

for registering and paying for on-campus courses and access to on-campus facilities and services.

Plaintiffs and Class Members have paid Defendant for all Spring 2020 term financial

assessments.

103.   However, Defendant has breached such contracts, failed to provide those on-

campus classes and/or services, and has not otherwise performed as obligated and required by

the contracts between Plaintiffs and Class Members and Defendant. Defendant moved all classes

to online classes, restricted or eliminated Class Members' ability to access university facilities,

and/or evicted Plaintiffs and/or their children and Class Members from campus housing. In doing

so, Defendant has deprived and continues to deprive Plaintiffs and Class Members from the

benefit of their bargains with Defendant.

104.   This cause of action does not seek to allege "educational malpractice."

105.   Plaintiffs and Class Members have been damaged as a direct and proximate result

of Defendant's breach. The online classes provided by Defendant are objectively different from,

and less valuable than, the on-campus classes for which the parties contracted.

106.   Plaintiffs and Class Members are entitled to damages, including but not limited to

tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II

## BREACH OF IMPLIED CONTRACT

107.    Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

108.    Plaintiffs plead this Count in the alternative to Count I.

109.    Plaintiffs bring this count on behalf of themselves and other members of the Class.

110.    Plaintiffs and Class Members entered into an implied contract by accepting Defendant's offer to register for on-campus classes and use of Defendant's facilities in accordance with Defendant's usual and customary practice of providing on-campus courses.

111.    Under the implied contract, Plaintiffs and Class Members registered for on-campus courses.

112.    It was the reasonable expectation of Plaintiffs and Class Members that Defendant would provide them with on-campus—as opposed to online—classes and instruction and use of Defendant's facilities as mutually agreed and intended in accordance with Defendant's publications including, brochures, advertisements, and other promotional materials and Defendant's usual and customary practice of providing on-campus courses.

113.    Plaintiffs and Class Members accepted and intended to use and enjoy Defendant's on-campus classes and facilities.

114.    Plaintiffs and Class Members have fulfilled all expectations of their mutual agreement, by registering and paying for on-campus courses and access to on-campus facilities and services for the Spring 2020 semester. Plaintiffs and Class Members have paid Defendant for all Spring 2020 semester financial assessments.

115.    Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at the University as opposed to other institutions of higher learning.

116.    Through these publications, Defendant markets to and enrolls students into an on-campus college experience.

117.    Defendant's publications are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity; campus location and the like.

118.    When visitors and prospective students visit the "About" section on Defendant's website, they are greeted with the following:[45]

### Learn, engage, lead

There is no other place like Brandeis. As a medium-sized private research university with global reach, we are dedicated to first-rate undergraduate education while making groundbreaking discoveries.

Our 235-acre campus is located in the suburbs of Boston, a global hub for higher education and innovation.

Our faculty are leaders in their fields, as passionate about teaching and mentorship as they are about pushing the boundaries of knowledge. Our students are motivated, compassionate, curious and open to exploring new and challenging experiences.

At Brandeis, you will discover a community rooted in purpose, guided by our founding values, poised to lead in education and research in the 21st century.

119.    When visitors and prospective students visit the "Student Life" webpage and subpages on Defendant's website, they are greeted with the words, "Keep calm and get connected," followed by, "Free pizza at midnight during finals. Bubble soccer. Clubs that range from a capella groups to skydiving. If you can't find your passion here, you can create it—and find other Brandeisians who want to join you," among other subsequent promises:[46]

- **Residence and community.** Our rolling 235-acre campus isn't defined by bricks and mortar. We bring spirit and passion to everything we learn to

---

[45] https://www.brandeis.edu/about/index.html

[46] https://www.brandeis.edu/oncampus/index.html.

do. Events like Festival of the Arts bring us together; residence hall life, dining and lively discussions keep us connected.[47]

- o Brandeis' beautiful 235-acre campus offers the best of both worlds—safety and security, as well as quick and easy access to Boston. The majority of Brandeis' 3,700 undergraduate students live on campus each year.[48]

- o The Department of Community Living cultivates an inclusive, diverse, and symbiotic living and learning environment in all of our residence halls. We empower our community members to respectfully challenge each other and engage in opportunities of holistic enrichment through critical thinking, constructive dialogue, and leadership development.[49]

- o At Brandeis, you will reside with diverse people who share your interests, some of whom will introduce you to new experiences, and several you will call friends for the rest of your life.[50]

- **Career.** Create the connections and get the experience to accelerate your career. Networking opportunities, funded internships and advice from successful alums in your chosen profession are just some of the resume-building strategies we offer.[51]

- o The Hiatt Career Center assists students and alumni in developing the skills to transform their unique backgrounds, liberal arts education and experimental learning into meaningful professional futures and relationships.[52]

- o In 1984 Jacob Hiatt, a Worcester businessman and member of the Brandeis Board of Trustees, endowed the Hiatt Career Development Center at Brandeis, offering students skilled professional assistance to enable them to find ways to relate their liberal arts education to future career plans.[53]

---

[47] *Id.*

[48] https://www.brandeis.edu/dcl/.

[49] *Id.*

[50] *Id.*

[51] https://www.brandeis.edu/oncampus/index.html.

[52] https://www.brandeis.edu/hiatt/.

[53] https://www.brandeis.edu/hiatt/about-us/index.html.

010920-25/1365559 V1

- **Clubs and organizations.** Brandeis was founded with a commitment to improving the world. Every year, our students rack up 55,000 hours of community service. If you're passionate about a cause, or just looking for a club – find it here.[54]

  - Brandeis has more than 200 student-run clubs and organizations, including service organizations, cultural awareness groups, performing groups, spiritual and religious groups, sports and games clubs, student leadership and activism groups, student publications, a television station (BTV) and a radio station (WBRS).[55]

  - As a part of our continued support of the Student Union and Union-recognized clubs and organizations, the Department of Student Activities offers various programming resources to assist student groups with their many programmatic efforts.[56]

- **Health and wellness.** You'll perform best academically when your body and mind are in peak condition, too. Get information on mental health and physical fitness, counseling services and spiritual life on campus.[57]

  - [Brandeis Counseling Center is] a multicultural counseling center that responsibly and compassionately addresses the diverse psychological needs of our university students. We offer a variety of services on campus and facilitate referrals to outside resources. We are committed to social justice and dismantling systems of oppression, while fostering healing and wellness. We value the participation of all students inclusive of all intersecting identities.[58]

  - The Center for Spiritual Life offers a safe space for students to explore their spirituality and find their place in the world, on their terms. Whether students are rooted in a particular faith tradition or searching for answers to fundamental human questions, we are here. We have staff chaplains trained in different faith traditions who help students find a supportive

---

[54] https://www.brandeis.edu/oncampus/index.html.

[55] https://www.brandeis.edu/clubs/.

[56] https://www.brandeis.edu/student-activities/clubs-organizations/club-support/index.html.

[57] https://www.brandeis.edu/oncampus/index.html.

[58] https://www.brandeis.edu/counseling/.

community, access a non-judgmental spiritual mentor, and find opportunities to serve others.[59]

120.     On the "Admissions & Aid" section of Defendant's website, Defendant recognizes that, "Choosing a college (education) is a really big decision. There's so much to think about: size, location, campus community, professors, career services, majors, clubs. The good news is that the most important qualities of a Brandeis education never change: academic rigor, a welcoming, diverse community, innovation in teaching and learning."[60]

121.     It is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

122.     However, Defendant breached the implied contract, failed to provide those on-campus classes and/or services, and has not otherwise performed as obligated and required by the implied-in-fact contract between Plaintiffs and Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiffs and Class Members from campus housing. In doing so, Defendant has deprived and continues to deprive Plaintiffs and Class Members from the benefit of their bargains with Defendant.

123.     Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendant's breach. The online classes provided by Defendant are objectively different from, and less valuable than, the on-campus classes for which the parties entered into an implied contract. Plaintiffs and Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

---

[59] https://www.brandeis.edu/spiritual-life/.

[60] https://www.brandeis.edu/attending/index.html.

010920-25/1365559 V1

**COUNT III**

**UNJUST ENRICHMENT**

124.    Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

125.    Plaintiffs plead this Count in the alternative to Counts I and II.

126.    Plaintiffs bring this count on behalf of themselves and other members of the Class.

127.    To the extent Defendant contends that the Bulletin permits it to unilaterally and without notice change the terms under which Plaintiffs and Class Members were to receive instruction—from on-campus to online—the promises made by Defendant to Plaintiffs and Class Members to provide on-campus instruction were illusory and no contract exists between the parties.

128.    Plaintiffs and Class Members directly conferred a benefit upon Defendant in the form of monies paid for tuition for Spring Semester 2020 and following semesters in exchange for certain service and promises. Tuition and fees for Spring Semester 2020 and following semesters were intended to cover in-person educational services and access to campus facilities, not a virtual campus and online courses.

129.    Defendant knowingly accepted the benefits conferred upon it by Plaintiffs and Class Members.

130.    Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiffs and members of the Class.

131.    Defendant voluntarily accepted and retained the non-gratuitous benefits conferred by Plaintiffs and Class Members, with full knowledge and awareness it would be unjust and inequitable to retain the benefit provided by Plaintiffs and Class Members for in-person

-31-

instruction, access to Defendant's facilities and housing services under the circumstances because Defendant moved all classes online, restricted or eliminated Plaintiffs' and Class Members' ability to access university facilities, and/or evicted Plaintiffs and Class Members from campus housing.

132.    Defendant has retained this benefit, even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

133.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

134.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.

135.    Due to Defendant's unjust and inequitable actions, Plaintiffs and Class Members are entitled to refunds for tuition, fees, and/or room and board.

136.    Defendant knew Plaintiffs enrolled at Defendant and paid Defendant non-gratuitous benefits for a comprehensive academic experience, including in-person classes, opportunities to network with students and professors in-person, access to campus buildings and dormitories, and to avail themselves of school programs and events.

137.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and Class Members under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

138.    This is particularly true where, as here, Defendant's campus is supported by millions of dollars in endowment funds, while its students, upon information and belief, do not

have access to such immense financial resources, and further where, upon information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

139.    At the same time, Defendant received significant aid from the federal government, of which Defendant has retained in excess of $1.59 million for itself, as opposed to passing it along to students.

140.    It would be unjust and inequitable for Defendant to retain benefits in excess of the services it provided, and Defendant should be required to disgorge any tuition and fees that exceed the value of online education from March 11, 2020 through the remaining sessions and semesters where Defendant failed to provide a live in-person, on-campus academic experience.

**COUNT IV**

**CONVERSION**

141.    Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

142.    Plaintiffs bring this count on behalf of themselves and other members of the Class.

143.    Plaintiffs and the Class Members have an undisputed right to receive educational services, activities, and access Defendant's facilities for the Spring 2020 term. Plaintiffs and the Class Members obtained such rights by paying Defendant specific amounts of money for tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

144.    Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiffs and Class Members by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies

Plaintiffs and the Class Members paid Defendant as well as barred Plaintiffs and the Class Members from Defendant's facilities.

145.    Defendant deprived Plaintiffs and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board including access to Defendant's campus and in-person educational services, and access to its classrooms, libraries, student centers, dining halls, and dorms.

146.    Plaintiffs and/or Class Members have requested and/or demanded that Defendant issue refunds.

147.    Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiffs and Class Members, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiffs and Class members of their rights, benefits, services, and/or facility access.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members request that the Court enter an order or judgment against Defendant including:

A.    Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiffs as Class Representative and their counsel of record as Class Counsel;

B.    Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.    Actual damages and all such other relief as provided under the law;

D.    Pre-judgment and post-judgment interest on such monetary relief;

E.    Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.    The costs of bringing this suit, including reasonable attorney's fees; and

-34-

G.      All other relief to which Plaintiffs and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiffs demand trial by jury on their own behalf and on behalf of Class Members.

***

-35-

Dated: October 29, 2020

Respectfully submitted,

By: */s/ Kristie LaSalle*
Kristie LaSalle (BBO #692891)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
(617) 482-3700
kristiel@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Richard E. Levine (BBO# 672675)
STANZLER LEVINE, LLC
65 William Street, Suite 205
Wellesley, MA 02481
(617) 482-3198
rlevine@stanzlerlevine.com

Eric M. Poulin (*Pro Hac Vice*)
Roy T. Willey, IV (*Pro Hac Vice*)
ANASTOPOULO LAW FIRM, LLC
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com

*Attorneys for Plaintiffs, individually and on behalf
of all others similarly situated*

## <u>CERTIFICATE OF SERVICE</u>

I, Kristie LaSalle, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: October 29, 2020                    */s/ Kristie LaSalle*
                                           Kristie LaSalle (BBO #692891)

-37-