```
                   United States District Court
                     District of Massachusetts
```

|   |   |
|---|---|
| ALAN THOMAS OMORI and JOHN DOE, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>BRANDEIS UNIVERSITY<br><br>  Defendant. | Civil Action No.<br>20-11021-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

This putative class action arises out of the decision by Brandeis University ("Brandeis" or "defendant") to retain the full amount of tuition and fees collected from students for the Spring, 2020, semester despite closing its on-campus facilities and transitioning from in-person to online learning in response to the COVID-19 pandemic. Plaintiffs Alan Thomas Omori ("Omori") and John Doe ("Doe") (collectively, "plaintiffs" or "the students") allege that the failure of Brandeis to reimburse students for the tuition differential between in-person and online education constitutes breach of contract, unjust enrichment and conversion.

Pending before this Court is defendant's motion to dismiss the Consolidated Class Action Complaint ("the complaint") and plaintiff John Doe's motion to proceed under a pseudonym. For

- 1 -

the reasons that follow, plaintiff's motion will be allowed and defendant's motion will be allowed, in part, and denied, in part.

I. **Background**

At the beginning of the Spring, 2020, academic term, plaintiffs were enrolled as full-time undergraduate students at Brandeis University, a private educational institution in Waltham, Massachusetts. The students had registered and paid for in-person courses, purportedly expecting to receive access to on-campus instruction, facilities and experience.

Prior to the COVID-19 pandemic, Brandeis provided its students with such an on-campus, in-person educational experience and offered only a few online courses. On March 11, 2020, however, Brandeis announced that all of its classes would be conducted in an online format due to the spread of the coronavirus. In the following days, Brandeis closed its library and other campus facilities, cancelled all in-person meetings and events, required all non-exempt students to move off campus and declared that remote-only instruction would continue for the remainder of the semester. The University offered students prorated refunds of room and board but declined to refund tuition and other fees.

In response, plaintiffs, on their own behalf and on behalf of other students, brought this four-count complaint, alleging

breach of contract (express and implied (Counts I & II), unjust enrichment (Count III) and conversion (Count IV). They seek to recover from Brandeis tuition and fees and/or room and board allegedly paid in consideration for "in-person instruction and use of campus facilities" which were denied during the second half of the Spring, 2020, academic term.

## II. Motion to Dismiss

### A. Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if actual proof of those facts is

improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

**B. Application**

    **i. Educational Malpractice and Academic Freedom**

As a threshold matter, the contention of the University that plaintiffs' claims are simply disguised educational malpractice claims barred under Massachusetts law and the First Amendment to the United States Constitution is unavailing. The complaint challenges neither the substance nor the quality of the specific online courses or curriculum provided by Brandeis. See Chong v. Northeastern Univ., No. 20-cv-10844, 2020 WL 7338499, at *2 n.1 (D. Mass. Dec. 14, 2020) ("The court is not convinced that plaintiffs' contract claim is merely a disguised educational malpractice claim [as] it appears to challenge the mere fact of the switch from in-person to online instruction, not the quality of the online education . . ." (emphasis in original)).

Moreover, plaintiffs do not complain that the online education provided by Brandeis was ineffective, or that they were unable to learn the relevant subject matter or earn academic credits. See Patel v. Univ. of Vt. and State Agric. Coll., No. 20-cv-61, 2021 WL 1049980, at *5 (D. Vt. Mar. 15,

- 4 -

2021) (finding similar claims different from educational malpractice because the students were not challenging the effectiveness of online learning).  Instead, plaintiffs seek the reimbursement for services for which they purportedly bargained and paid, i.e. in-person instruction and access to on-campus facilities. See In re Boston University COVID-19 Refund Litig., -- F. Supp. 3d --, 2021 WL 66443, at *2 n.5 (D. Mass. Jan. 7, 2021).

Such claims sound in contract, not educational malpractice, and are therefore justiciable. Id.  As the Seventh Circuit Court of Appeals has explained,

> [i]n these cases, the essence of the plaintiff's complaint would not be that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all.  Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform on its promise.

Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir. 1992); see also Holmes v. Univ. of Mass. Suffolk Cty. Super. Ct., No. 208-cv-01025-B, slip op. at *5 n.3 (Mar. 8, 2021) ("I agree with the many courts who have considered this question, locally and farther afield, that the sorts of claims pleaded here are not claims for educational malpractice." (internal marks omitted)).

Having concluded that plaintiffs have not made impermissible claims for educational malpractice, this Court

will determine whether plaintiffs have stated claims for relief as to each Count.

### ii. Breach of Contract (Counts I and II)

Brandeis contends that plaintiffs have failed to state a claim for breach of contract, either express or implied, because they have identified no legal basis for any contractual right to in-person instruction.  It submits that the University made no contractual promise to provide exclusively in-person instruction under all circumstances, let alone during a pandemic, and has, instead, expressly "reserve[d] the right [of Brandeis] to make any changes in the course offerings without prior notice."  That right, according to Brandeis, provides it with the discretion to find, inter alia,

> a substitute for a renowned teacher who becomes ill, shift students from one classroom to another, or (as here) provide substitute means of teaching existing courses with the same professors and requirements.

Plaintiffs respond that the statements in Brandeis' online publications, academic bulletins and course listings constitute a specific promise to provide in-person instruction and on-campus opportunities.  The University Bulletin, for instance, states that Brandeis offers "hands-on experience" and "state-of-the-art studios".  The course listings, furthermore, reference specific locations on campus at which each class is scheduled to take place.  Finally, plaintiffs contend that tuition and fees

- 6 -

for online courses and programs are lower than those for in-person courses and programs, thereby indicating that online and in-person learning is differentiated.[1]

To state a cause of action for breach of contract under Massachusetts law, a plaintiff must show

> (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result.

In re Boston University COVID-19 Refund Litig., 2021 WL 66443, at *2 (quoting Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013)).

In the private education context, Massachusetts law has long recognized "a contractual relationship between the school and the student," DMP v. Fay School ex rel. Bd. of Trustees, 933 F. Supp. 2d 214, 223 (D. Mass. 2013), the governing terms of which are often set forth in a combination of the school's handbooks, policy manuals, brochures and other promotional materials. Guckenberger v. Boston Univ., 974 F. Supp. 106, 150 (D. Mass. 1997).  Courts interpreting such terms

> employ the standard of reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it.

---

[1] The complaint alleges that Brandeis charges more than $1,700 per credit hour for each in-person course but less than $1,200 per credit hour for each online course.

Bleiler v. Coll. Of Holy Cross, No. 11-cv-11541, 2013 WL 4714340, at *15 (D. Mass. Aug. 26, 2013).

Here, the factual allegations in the complaint support the inference that Brandeis should have reasonably expected its prospective students to understand its promotion of "hands-on experience" and "state-of-the-art studios", among other things, to be an offer of in-person instruction and on-campus facilities and experience.  The complaint plausibly submits, furthermore, that students paid the (higher) on-campus tuition and fees charged for the Spring, 2020, academic term and registered for on-campus courses in consideration for receiving such services, hence forming a contract. See In re Boston COVID-19 Refund Litig., 2021 WL 66443, at *2 ("[T]he court cannot, as a matter of law, say that no student could have reasonably expected that paying the tuition charged for the Spring semester of 2020 and registering for on-campus course would entitle them to in-person instruction.").  The claim is that, by purportedly denying students such services while retaining full tuition, Brandeis has breached that contract.

Although Brandeis has reserved the right to make some changes to its course offerings, this Court cannot, at this stage of the litigation, rule as a matter of law that the disclaimer includes the right to convert all in-person courses to an online format. See Grant v. Target Corp., No. 15-cv-12972,

2017 WL 2434777, at *4 (D. Mass. June 5, 2017) ("[E]ven where a manual contains unambiguous language disclaiming the formation of any contractual obligation, the overall context may sufficiently suggest a legally enforceable contract as to overwhelm the effect of the specific disclaimer." (internal quotation marks and citations omitted)). Accordingly, the COurt finds that plaintiffs have stated a claim for breach of contract and defendant's motion to dismiss will be denied as to Counts I and II.

### iii. Unjust Enrichment (Count III)

Under Massachusetts law, a claim for unjust enrichment requires a plaintiff to show that (1) he or she conferred a benefit upon the defendant, (2) the defendant accepted that benefit and (3) the defendant's retention of the benefit would be inequitable without payment for its value. Mass. Eye & Ear Infirmary v. QLT Photohterapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009).

Brandeis argues that plaintiffs cannot, as a matter of law, state a claim for unjust enrichment because they have an adequate remedy at law, namely, a breach of contract action. Citing Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017) (noting that "a party with an adequate remedy at law cannot claim unjust enrichment."). At the same time, Brandeis disputes the existence of any contract between the parties

requiring in-person instruction and access to on-campus facilities and resources. Because plaintiffs plead unjust enrichment only to the extent that the parties do not have a contractual relationship, however, defendant's argument is of no avail. See In re Boston Univ. COVID-19 Refund Litig, 2021 WL 66443, at *3 (denying the defendant university's motion to dismiss as to both breach of contract and unjust enrichment claims, finding it "inappropriate for the court to find plaintiffs limited to a contractual remedy at this juncture.").

In any event, plaintiffs state plausibly that they conferred a benefit on Brandeis (on-campus tuition and fees) and that Brandeis accepted that benefit without providing the on-campus experience for which plaintiffs paid, namely, in-person instruction and access to on-campus resources and facilities. Plaintiffs also state plausibly that retention of such tuition and fees by the University is unjust in light of the factual allegation that the cost of providing online courses is less than in-person courses. For those reasons, this Court will deny defendant's motion as to Count III.

### iv. Conversion (Count IV)

Conversion is the intentional or wrongful exercise of ownership or control by defendant over the personal property of another to which it has no right of possession. See Third Nat'l Bank v. Continental Ins. Co., 446 N.E.2d 380, 383 (Mass. 1983).

In order for money to be the subject of a conversion claim, the plaintiff must identify a specific pool or fund in which he or she has a possessory interest. See Wollaston Indus., LLC v. Ciccone, No. 19-cv-10678, 2019 WL 6841987, at *2 (D. Mass. Dec. 16, 2019).

Here, plaintiffs contend that they entrusted specific sums of money to Brandeis, i.e. tuition and fees, in order to receive in-person instruction.  Although Brandeis retained the money, plaintiffs aver, it failed to provide them with in-person instruction, thereby converting their funds.  Because plaintiffs seek a refund of only some unspecified, prorated portion of their payments rather than specific funds in which they have a possessory interest, however, they have not stated a claim for conversion. See Salerno v. Fla. Southern Coll., 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020).

To the extent plaintiffs contend that Brandeis has converted their right to in-person education, moreover, those allegations likewise cannot support a claim for conversion because such rights do not constitute "personal property" for the purpose of that tort. See Karter v. Pleasant View Gardens, 248 F. Supp. 3d 299, 315 (D. Mass. 2017) (concluding that the theft of intangible property generally cannot support a claim for conversion).  Thus, Count IV will be dismissed.

III.  **Motion to Proceed by Pseudonym**

Doe also seeks leave to proceed under a pseudonym. Although he filed his motion only after filing the Consolidated Class Action Complaint, because Doe has stated that disclosure of his identity would cause him severe harm and harassment and defendant does not currently oppose the request, his motion will be allowed subject to later challenge if this case should proceed to trial. See Doe v. Trustees of Dartmouth Coll., No. 18-cv-040, 2018 WL 2048385, at *5-6 (D.N.H. May 2, 2018).

### ORDER

For the foregoing reasons, defendant's motion to dismiss (Docket No. 21) is, as to Count IV, **ALLOWED,** but is otherwise **DENIED.**   Count IV is hereby **DISMISSED.**

Plaintiff's motion to proceed under a pseudonym (Docket No. 29) is **ALLOWED,** for the time being.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated April 13, 2021