**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ALAN THOMAS OMORI and LINFEI YANG, individually and on behalf of all others similarly situated, | No. 1:20-cv-11021-NMG |
| Plaintiffs, | District Judge Nathaniel M. Gorton |
| v. | Leave to file granted on May 5, 2022 |
| BRANDEIS UNIVERSITY, |  |
| Defendant. |  |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
BRANDEIS UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..............................................................................................1

II. RESPONSE TO DEFENDANT'S STATEMENT OF FACTS ..........................................2

III. LEGAL STANDARD..........................................................................................2

IV. ARGUMENT....................................................................................................3

    A.  Brandeis is not entitled to judgment on Plaintiffs' breach of contract claim for tuition. ....................................................................................................3

        1. Plaintiffs have proven an implied contract for in-person educational instruction. ................................................................................3

            a. Brandeis created a reasonable expectation of in-person, on-campus instruction. ......................................................................4

            b. Brandeis' lack of online undergraduate educational instruction further created the reasonable expectation of on-campus and in-person educational instruction. ........................................................5

            c. Brandeis' major and course descriptions also supports the reasonable expectation of on-campus and in-person educational instruction. ......................................................................6

            d. Plaintiffs can prove damages. .........................................................7

        2. Brandeis' miscellaneous documents do not preclude a contract claim........9

            a. Brandeis' financial responsibility agreement is inapplicable. .........9

            b. Brandeis' Refund Schedule is irrelevant.......................................10

            c. Brandeis' reservation of discretion does not preclude a contract. .11

            d. Impossibility and frustration of purpose are not valid defenses here...............................................................................................12

    B.  Genuine issues remain regarding Plaintiffs' fee claims.......................................14

        1. Standing arguments should be rejected as premature. ..............................14

        2. The jury must determine whether Brandeis breached a contract for fees..15

a.    Plaintiffs reasonably expected Brandeis' fees supported in-person experiences........................................................................................15

b.    Questions of material fact remain regarding Brandeis' breaches regarding fees.................................................................................16

c.    Brandeis' short attack on the damages element of Plaintiffs' fee claims must fail. ............................................................................16

C.    Summary judgment on Plaintiffs' unjust enrichment claim would be improper...17

    1.    Plaintiffs' alternative unjust enrichment claim is not barred by a contract. ........................................................................................17

    2.    Questions of fact remain regarding the elements of Plaintiffs' unjust enrichment claim and Brandeis misstates the fundamental legal principles. ........................................................................................18

V.    CONCLUSION...............................................................................22

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

*Arredondo v. Univ. of La. Verne*,
    2022 WL 1183561 (C.D. Cal. Feb. 8, 2022)..........................................................................7

*Aware, Inc. v. Centillium Commc'ns, Inc.*,
    604 F. Supp. 2d 306 (D. Mass. 2009) (Gorton, J.)..............................................................18

*Barkhordar v. President & Fellows of Harvard Coll.*,
    2022 WL 605820 (D. Mass. Mar. 1, 2022)............................................................................3

*Bettencourt v. Jeanne D'Arc Credit Union*,
    370 F. Supp. 3d 258 (D. Mass. 2019) (Gorton, J.)..............................................................18

*In re Biogen, Inc. ERISA Litig.*,
    2021 WL 3116331 (D. Mass. July 22, 2021)......................................................................14

*Bonina v. Sheppard*,
    78 N.E.3d 128 (Mass. App. Ct. 2017) .................................................................................19

*In re Boston Univ. COVID Refund Litig.*,
    No. 1:20-cv-10827-RGS ...............................................................................................7, 14

*Burt v. Bd. of Trs. of the Univ. of Rhode Island*,
    523 F. Supp. 3d 214 (D.R.I. 2021).........................................................................................4

*Chase Precast Corp. v. John J. Paonessa Co.*,
    566 N.E.2d 603 (Mass. 1991) .............................................................................................13

*In re Citigroup Inc. Capital Accumulation Plan Litig.*,
    2005 WL 8165211 (D. Mass. May 25, 2005)........................................................................2

*Coyne v. Taber Partners I*,
    53 F.3d 454 (1st Cir. 1995)...................................................................................................2

*Demoulas v. Demoulas*,
    703 N.E.2d 1149 (Mass. 1998) ...........................................................................................20

*Durbeck v. Suffolk Univ.*,
    547 F. Supp. 3d 133 (D. Mass. 2021) ..............................................................................4, 21

*Ferring Pharms., Inc. v. Braintree Lab'ys, Inc.*,
    221 F. Supp. 3d 161 (D. Mass. 2016) ...................................................................................2

*Figueroa v. Point Park Univ.*,
   533 F. Supp. 3d 259 (W.D. Pa. 2021)......................................................................10

*Fiore v. Univ. of Tampa*,
   2021 WL 4925562 (S.D.N.Y. Oct. 20, 2021)............................................................9

*Gibson v. Lynn Univ., Inc.*,
   504 F. Supp. 3d 1335 (S.D. Fla. 2020) ...................................................................8

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*,
   285 F.R.D. 169 (D. Mass. 2012).............................................................................14

*Greenwald v. Chase Manhattan Mortg. Corp.*,
   241 F.3d 76 (1st Cir. 2001).....................................................................................21

*Hiatt v. Brigham Young Univ.*,
   512 F. Supp. 3d 1180 (D. Utah 2021).....................................................................13

*Lass v. Bank of Am., N.A.*,
   695 F.3d 129 (1st Cir. 2012)...................................................................................18

*LeMaitre v. Mass. Tpk. Auth.*,
   70 Mass. App. Ct. 634 (2007).................................................................................18

*LeMaitre v. Mass. Tpk. Auth.*,
   876 N.E.2d 888 (Mass. Ct. App. 2007) ...................................................................3

*Linton v. N.Y. Life Ins. & Annuity Corp.*,
   392 F. Supp. 2d 39 (D. Mass. 2005)......................................................................22

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics*,
   552 F.3d 47 (1st Cir. 2009)..............................................................................19, 20

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
   412 F.3d 215 (1st Cir. 2005)...................................................................................18

*Metro. Life Ins. Co. v. Beard*,
   2019 WL 480513 (D. Mass. Feb. 7, 2019) .......................................................21, 22

*Metro. Life Ins. Co. v. Cotter*,
   984 N.E.2d 835 (Mass. 2013) ..........................................................................20, 21

*Mooers v. Middlebury College*,
   2021 WL 4225659 (D. Vt. Sept. 16, 2021).............................................................10

*Ninivaggi v. Univ. of Delaware*,
   555 F. Supp. 3d 44 (D. Del. 2021).............................................................10, 11, 13

*Omori v. Brandeis Univ.*,
   533 F. Supp. 3d 49 (D. Mass. 2021) ................................................................. *passim*

*Perry v. Roy*,
   782 F.3d 73 (1st Cir. 2015) ........................................................................................3

*Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*,
   513 F. Supp. 3d 1350 (M.D. Fla. 2021) ..................................................................21

*Schaer v. Brandeis Univ.*,
   432 Mass. 474, 735 N.E.2d 373 (2000) ...................................................................3

*Sentinel Prods. Corp. v. Mobile Chem. Co.*,
   2001 WL 92272 (D. Mass. Jan. 17, 2001) .............................................................18

*Shaffer v. George Wash. Univ.*,
   27 F.4th 754 (D.C. Cir. 2022) .....................................................................5, 11, 13

*Szulik v. State St. Bank & Tr. Co.*,
   935 F. Supp. 2d 240 (D. Mass. 2013) (Gorton, J.) ..................................................3

*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*,
   524 F. Supp. 3d 1346 (S.D. Fla. 2021) ....................................................................9

*Walker v. President & Fellows of Harvard Coll.*,
   840 F.3d 57 (1st Cir. 2016) ......................................................................................16

*Wheelabrator Envirotech Operating Servs. Inc. v. Mass. Laborers Dist. Council*
   *Local 1144*,
   88 F.3d 40 (1st Cir. 1996) ........................................................................................12

*Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*,
   2022 WL 980178 (D. Mass. Mar. 29, 2022) (Gorton, J.) ...................................2, 14

*Zhao v. CIEE, Inc.*,
   3 F.4th 1 (1st Cir. 2021) ....................................................................................10, 12

### OTHER AUTHORITIES

Federal Rules of Civil Procedure Rule 23 ....................................................................14

Federal Rule of Civil Procedure Rule 56 ......................................................................14

Federal Rule of Civil Procedure Rule 56(d) ............................................................2, 16

Restatement (Second) of Contracts § 377 (1981) ........................................................13

Restatement (Third) of Restitution .......................................................................20, 22

## I.       INTRODUCTION

While there are thousands of universities across the country and many online-only institutions, Plaintiffs Alan Omori and Linfei Yang enrolled at Brandeis University with the reasonable expectation of receiving on-campus and in-person educational instruction and educational services, facilities, and amenities at Defendant Brandeis University. Pls.' CSOF ¶¶ 71, 72. Brandeis created such expectations through representations of itself through its websites, brochures, admissions materials, handbooks, and other University publications, payment of tuition and fees to allow the registration for on-campus courses, and the University's prior course of conduct of providing on-campus and in-person educational instruction and services. Plaintiffs did not enroll to receive online education, *id.* ¶¶ 71, 72, nor could they as Brandeis "has never offered an online undergraduate degree program." ECF 75-2 at ¶ 5. Plaintiffs enrolled at Brandeis' on-campus and in-person undergraduate program and paid tuition and fees on that basis. Pls.' CSOF ¶¶ 71, 72. Plaintiffs received their instruction and services as promised until their final semester: Spring 2020 Semester. *Id.* ¶¶ 82, 83.

But on March 15, 2020, Brandeis cancelled in-person and on-campus educational instruction and closing access to on-campus educational facilities and services. Pls.' CSOF ¶ 82, 83. Plaintiffs did not have access to any on-campus buildings, classrooms, laboratories, libraries, study spaces, student center, health center, and athletic facilities for which Plaintiffs had paid for in tuition and fees. *Id.* ¶¶ 82, 83. The services provided from March 16, 2020 to the end of the Spring 2020 semester were not of equal financial value to the tuition and fees Plaintiffs paid. But Brandeis refuses to refund any of Plaintiffs' pre-paid tuition and fees. *Id.* ¶ 90. Brandeis' failure to provide Plaintiffs with the agreed upon and paid for education and services represents a breach of contract for tuition and fees. Furthermore, Brandeis' decision to not refund tuition and fees is an inequitable and unjust retention of funds. Defendant's Motion should be denied in its entirety.

## II.     RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

Brandeis relies upon both disputed and undisputed facts. Plaintiffs contemporaneously submit their responses to Defendant's Statement of Undisputed Material Facts and Counter-Statement of Disputed and Undisputed Material Facts ("CSOF"). In the CSOF, Plaintiffs (1) respond to the Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment [ECF 75]; and (2) submit their own undisputed material facts. In addition, as Plaintiffs require discovery on certain subjects, they seek relief by separate motion per Rule 56(d).

## III.     LEGAL STANDARD

Brandeis maintains the burden "to show, through the pleadings, discovery and affidavits, that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Woods Hole Oceanographic Inst. v. ATS Specialized, Inc*., 2022 WL 980178, at *3 (D. Mass. Mar. 29, 2022) (Gorton, J.).[1] "The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor." *Id.* A judgment is inappropriate where, like here, the evidence of record in a case is "sufficiently open-ended to permit a rational factfinder to resolve the [liability] issue in favor of either side." *Coyne v. Taber Partners I*, 53 F.3d 454, 457 (1st Cir. 1995). "A genuine issue of material fact exists where the evidence with respect to the material fact in dispute 'is such that a reasonable jury could return a verdict for the nonmoving party.'" *Ferring Pharms., Inc. v. Braintree Lab'ys, Inc.*, 221 F. Supp. 3d 161, 165 (D. Mass. 2016). "A dispute is genuine if it 'may reasonably be resolved in favor of either party.'" *In re Citigroup Inc. Capital Accumulation Plan Litig.*, 2005 WL 8165211, at *2 (D. Mass. May 25, 2005). Ultimately, "[t]he district court's role is limited to assessing whether there exists evidence [ ] such that a reasonable jury could return a verdict for the

---

[1] Citations and internal quotations to all cases have been omitted unless otherwise noted.

nonmoving party." *Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015). Against these standards, Brandeis' motion for summary judgment must be denied.

## IV.    ARGUMENT

### A.  Brandeis is not entitled to judgment on Plaintiffs' breach of contract claim for tuition.

#### 1.  Plaintiffs have proven an implied contract for in-person educational instruction.

This case involves the existence of an implied contract between Brandeis and Plaintiffs. Courts reviewing the terms of a university-student contract apply a "reasonable expectation" standard, i.e., "what meaning the party making the manifestation, the university, should reasonably expect the [student] to give it." *Schaer v. Brandeis Univ.*, 432 Mass. 474, 478, 735 N.E.2d 373 (2000). The reasonable expectations of the contracting parties are assessed at the time of contracting. *See Barkhordar v. President & Fellows of Harvard Coll.,* 2022 WL 605820, at *3 (D. Mass. Mar. 1, 2022) (applying reasonable expectation standard "at the time [student] entered into contracts" in concluding "Harvard would have reasonably expected students to understand it was promising to provide in-person instruction and on-campus experiences"). Ultimately, whether a contract exists or students' expectations were reasonable is a question of fact for the jury. *See, e.g.*, *Szulik v. State St. Bank & Tr. Co.*, 935 F. Supp. 2d 240, 260 (D. Mass. 2013) (Gorton, J.) (finding questions of fact as to whether a defendant's conduct "frustrated the reasonable expectations of the contracting parties"); *LeMaitre v. Mass. Tpk. Auth.,* 876 N.E.2d 888, 891 (Mass. Ct. App. 2007). As this Court previously recognized: "Here, the factual allegations in the complaint support the inference that Brandeis should have reasonably expected its prospective students to understand its promotion of 'hands-on experience' and 'state-of-the-art studios, among other things, to be an offer of in-person instruction." *Omori v. Brandeis Univ.*, 533 F. Supp. 3d 49, 55 (D. Mass. 2021). As the result of discovery, more information has become available to support Plaintiffs' tuition claim and Defendant's motion for summary judgment must be denied.

   **a.**  **Brandeis created a reasonable expectation of in-person, on-campus instruction.**

Brandeis first argues that its promotional statements are too general to create an implied contract. ECF 75 at 5. In support, Brandeis cites *Burt v. Bd. of Trs. of the Univ. of Rhode Island*, 523 F. Supp. 3d 214 (D.R.I. 2021). However, *Burt* does not apply because Brandeis' materials are more specific than those identified in *Burt*. For example, in *Burt*, the plaintiffs relied on statements like: "A small beautiful place. See for yourself. At the University of Rhode Island, the ocean is a big part of our history, culture, and everyday life. Combine out unique location with our welcoming community and you'll find the small, beautiful place we call home." *Id.* at 222. Here, however, Brandeis' documents are not mere aspirations.

Brandeis promoted itself as "an elite research university" with "a distinct hallmark of a Brandeis education" being experiential learning which "encompasses a variety of hands-on experiences, including research, fieldwork, community-engaged learning, internships and more" to prospective students. Pls.' CSOF ¶ 85. Brandeis also promoted itself as providing its "undergraduate students [with] unprecedented access to important, cutting-edge, hands-on research opportunities." Pls. CSOF ¶ 86. Furthermore, Brandeis continued to market that "hands-on experience is a hallmark of a Brandeis education" with "award-winning faculty, centers and institutes in virtually every discipline, and support from the Undergraduate Research and Creative Collaborations Office, Brandeis students are creating new knowledge every day." Pls.' CSOF ¶ 87. These statements of, which are specific promises to students who enroll at Brandeis, confirm that the Parties bargained for in-person access to Brandeis' award-winning, hands-on, on-campus research facilities, centers, and institutes. Pls.' CSOF ¶ 87. *See also Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133, 145 (D. Mass. 2021) (rejecting university's argument "that the representations in its publications are too 'vague' and 'generalized' to form an implied-in-fact contract, misses the mark" where "[t]he implied-in-fact contract alleged here derives not from these representations

standing alone, but from these representations viewed in context with the Plaintiffs' payment of fees and tuition, and the Plaintiffs' registration for and attendance at on-campus classes prior to the campus closure").

Furthermore, in the 2019–2020 University Bulletin, tuition is described as: "the undergraduate tuition fee for 2019-2020 is $55,340 and the fee for each semester course required for degree credit is $6,918 ($1,729 per credit, per term). Library privileges and use of athletic facilities for the academic year are included in the full tuition fee." Pls.' CSOF ¶ 81. Thus, not only did Brandeis promise students who pay tuition in-person access to on-campus research facilities, centers, and institutes, but also access to the on-campus library and athletic facility. Plaintiffs, upon payment of tuition, therefore, reasonably expected to receive on-campus and in-person educational instruction at Brandeis for the entire Spring 2020 semester.

> **b.   Brandeis' lack of online undergraduate educational instruction further created the reasonable expectation of on-campus and in-person educational instruction.**

Next, Brandeis argues that it does not have an online program for undergraduate students, like Plaintiffs. ECF 74 at 16. Brandeis not offering online classes for undergraduate provides further evidence supporting Plaintiffs' reasonable expectation that Plaintiffs would, upon payment of tuition, have their classes taught in-person. Pls. CSOF ¶¶ 75-76. *See, e.g.*, *Shaffer v. George Wash. Univ.*, 27 F.4th 754, 761 (D.C. Cir. 2022) (reversing dismissal of tuition claims in case against university which "does not offer undergraduate online degrees, although it does offer some undergraduate online courses"). Plaintiffs enrolled at Brandeis knowing that Brandeis did not offer online classes, Pls. CSOF ¶¶ 71-74 and accepted Brandeis' offer of admission because they did not want to take college courses online. *Id.* ¶¶ 71-72; *see also* Omori Aff. ¶¶ 6-7; Yang Aff. ¶¶ 6-7. The absence of online undergraduate courses, thus, *supports* Plaintiffs' claim.

**c. Brandeis' major and course descriptions also supports the reasonable expectation of on-campus and in-person educational instruction.**

Brandeis next argues the Spring 2020 course listings do not constitute a promise of in-person instruction because classroom locations and meeting times are subject to be changed. ECF 74 at 10. Brandeis ignores its published undergraduate major/minor descriptions and course listings. In the 2019–2020 University Bulletin, Brandeis describes all majors and minors to undergraduate students, and descriptions of the courses required to complete the major or minor. For example, Brandeis describes the undergraduate chemistry major as giving students "the opportunity to develop extensive, practical experience through laboratory courses using macro- and microscale techniques." Pls.' CSOF ¶ 88. Chemistry courses as then described, for example, as providing "hands-on experience for making materials that find applications in the real world." Pls.' CSOF ¶ 88. However, the description of the chemistry major and course is not the only example. Pls.' CSOF ¶ 88.

Brandeis' descriptions of the majors, minors, and courses, which was available to students, create the reasonable expectation that if students engage in a specific major, minor, or course, then students could expect to receive "hands-on" or "experiential" educational instruction on-campus. *See id.* Furthermore, Brandeis' major and course descriptions, taken in combination that Brandeis does not offer online courses to undergraduate students, solidify the reasonable expectation that students, upon payment of tuition, will be provided in-person, hands-on, experiential educational instruction on Brandeis' campus for the entire semester. In viewing all circumstances and documents in the light most favorable to Plaintiffs, Brandeis impliedly promised Plaintiffs in-person and on-campus educational instruction. However, Brandeis failed to meet Plaintiffs' reasonable expectations when, in March 2020, Brandeis closed campus and transitioned all undergraduate courses to an online and remote format. Brandeis' substituted performance was not

agreed upon by the parties and, thus, resulted in a breach of contract.

### d. Plaintiffs can prove damages.

Despite Defendant's contentions otherwise, Plaintiffs can prove damages. ECF 74 at 12. Damages can be measured by the value of the in-person education that Plaintiffs expected, determined by the contract price, *i.e.*, the tuition they paid. The value of the online instruction received by Plaintiffs can be measured by using the price of online programs in various contexts: online programs offered by Brandeis or online programs offered elsewhere, including online-only colleges and universities. The difference in value, once calculated, would be prorated for the percentage of the Spring 2020 semester for which all classes were remote. *See In re Boston Univ. COVID Refund Litig.*, No. 1:20-cv-10827-RGS at ECF 72 (D. Mass. Aug. 20, 2021) ("And as to damages, Plaintiffs have already identified how BU valued the receipt of online credits in comparison to in-person credits, so determining the amount of any award will be as simple as calculating the difference between the two values and pro-rating that difference to account for the portion of the semester each plaintiff spent on campus prior to the campus shutting down."); *Arredondo v. Univ. of La. Verne*, 2022 WL 1183561, at *4 (C.D. Cal. Feb. 8, 2022) ("A simple comparison of this value and the market value of online classes will yield the measure of damages for each student.").

While Brandeis declares that Plaintiffs were not harmed because it transitioned its campus online, ECF 74 at 12, this is false but ultimately a jury question. Plaintiffs, and all students, contracted with Brandeis to receive in-person and on-campus educational instruction upon payment of tuition. When Brandeis unilaterally did not perform on this contract, Plaintiffs were harmed as they paid a premium to receive Brandeis' in-person educational instruction. It is irrelevant that Plaintiffs mitigated their damages by remaining enrolled in their classes and received course credit for the remainder of the Spring 2020 semester. Plaintiffs, and all students,

had pre-paid tuition for the Spring 2020 semester and had no meaningful choice other than to complete their courses. As stated in an analogous case "the Court will not draw the conclusion that Plaintiff relinquished his contractual remedies solely based on allegations that he did not—in the face of an unpredictable, novel, and rapidly evolving pandemic—quit school mid-semester and risk forfeiting his tuition." *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1343 (S.D. Fla. 2020). Plaintiffs did not waive their right to assert claims for damages.

For the Spring 2020 Semester, Plaintiffs, and all students, contracted and paid Brandeis to receive in-person and on-campus educational instruction. Plaintiffs, and all students, did not receive what they had contracted for. Thus, Plaintiffs and proposed class members are entitled to the difference in value between what they had paid for and what they had actually received. This can be determined by using the price of online undergraduate programs and traditional undergraduate programs of similar colleges and universities. The pricing difference is not "an apples-to-oranges comparison" as Brandeis claims. ECF 74 at 12. Even though Brandeis does not offer online courses for undergraduate students, the pricing difference between similar colleges' and universities' online programs and in-person programs shows the difference in monetary value when Brandeis failed to perform on the contract. Furthermore, the difference of pricing between Brandeis' traditional graduate degree and online only degree can be used as a scale to determine the difference in value between Brandeis' traditional undergraduate degree and the online program in which Brandeis required all students to participate.[2]

---

[2] To the extent expert testimony will aid this analysis, Plaintiffs' expert disclosures are not due until September 15, 2022 (ECF 59), so Plaintiffs should not be prejudiced by this premature summary judgment filing. *See id.* (setting December 15, 2022 dispositive motion deadline).

**2.  Brandeis' miscellaneous documents do not preclude a contract claim.**

Brandeis argues that, even if there is an implied contract between Brandeis and Plaintiffs, the Financial Responsibility Agreement, Refund Schedule, and the Reservation of Rights preclude the existence of a contract. ECF 74 at 6–8. However, these documents are irrelevant, inapplicable and/or do not preclude a contract between Brandeis and Plaintiffs.

**a.  Brandeis' financial responsibility agreement is inapplicable.**

Brandeis attempts to preclude the existence of a contract between Brandeis and all students, including Plaintiffs, due to the Financial Responsibility Agreement ("FRA"). ECF 75-1, Exhibit A and Exhibit B. However, the FRA cannot preclude an implied contract for in-person instruction upon payment of tuition because the FRA is not a complete or integrated contract. The FRA is missing essential terms, such as the nature and extent of the services that Brandeis will provide students and the tuition and fees owed by students. Likewise, the FRA cannot preclude an implied contract for in-person educational instruction because there are no terms covering in-person educational instruction. Other courts have correctly rejected the same argument about the schools' financial responsibility agreements and this Court should too. *See In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 524 F. Supp. 3d 1346, 1354 (S.D. Fla. 2021) (finding financial responsibility statement was not a contract because "it does not address numerous material terms concerning the students' enrollment, including the cost and amount of tuition and fees owed")*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 524 F. Supp. 3d 1346, 1354 (S.D. Fla. 2021) (finding financial responsibility statement was not a contract because "it does not address numerous material terms concerning the students' enrollment, including the cost and amount of tuition and fees owed"); *Fiore v. Univ. of Tampa*, 2021 WL 4925562, at *13–15 (S.D.N.Y. Oct. 20, 2021) ("Nor could the [financial responsibility statement] properly integrate the entirety of the agreement, because it is missing essential terms including the nature of the educational services

UT is to provide and the amount of tuition and fees owed."); *Figueroa v. Point Park Univ.*, 533 F. Supp. 3d 259, 270–271 (W.D. Pa. 2021) (same). Here, Brandeis' FRA is missing the same key terms is not controlling.

### b. Brandeis' Refund Schedule is irrelevant.

Like the FRA, Brandies attempts to argue that the Refund Schedule precludes a refund of tuition. However, Brandeis ignores the named purpose of the Refund Schedule: withdrawal from the University. Pls.' CSOF ¶ 91. The Refund Schedule is extremely limited in scope and applicability: it only applies if a student receives approval from the University to withdraw. *Id.* As the Court in *Mooers v. Middlebury College*, 2021 WL 4225659, at *8 (D. Vt. Sept. 16, 2021), stated when rejecting the same argument: "Defendant's Refund Policy . . . would not preclude Plaintiff's . . . claim because the Refund Policy merely explains what happens when a student voluntarily withdraws from Middlebury or officially drops below a full-time course load. It does not purport to govern any other situation." Similarly, Third Circuit Judge Bibas, sitting by designation, rejected this argument made by the University of Delaware: "This does not help the school either: it focuses on the *student's* decision to drop a class, not *U. Delaware's* right to cancel or change classes." *Ninivaggi v. Univ. of Delaware*, 555 F. Supp. 3d 44, 52 (D. Del. 2021). So too here.

Brandeis attempts to draw similarities between its Refund Schedule and the refund policy in *Zhao v. CIEE, Inc.*, 3 F.4th 1 (1st Cir. 2021), should be rejected. ECF 74 at 7. *Zhao* does not apply here. In *Zhao*, the refund policy specifically stated: "in the unlikely event that a program is cancelled prior to the start of the program, due to low enrollment or any other reason, CIEE will refund all payments received." *Zhao*, 3 F.4th at 5. The refund policy in *Zhao* had a *force majeure* clause allowing CIEE to "make reasonable efforts to make alternative arrangements" for the students if an emergency occurs. *Id.* Thus, the express language of the policy in *Zhao* allowed

CIEE to arrange for students and not provide refunds when doing so. Here, this is not the case. Brandeis' refund policy contemplates approved withdrawals only from the University and does not include the University's transitioning of all classes to an online and remote format. Plaintiffs did not withdraw so the Refund Policy does not warrant summary judgment.

### c. Brandeis' reservation of discretion does not preclude a contract.

Last, Brandeis argues that the reservation of discretion in the University's Bulletin and Handbook preclude an implied contract for in-person instruction. ECF 74 at 7. However, the University Bulletin's disclaimer only applies to "changing course offerings." Pls.' CSOF ¶ 91. Courts across the country routinely reject similar arguments. For example, as explained by the D.C. Circuit:

> [T]he reservation language does not specifically address emergencies or other force majeure events. In particular, it says nothing about allocating the financial risk of those events to the students, as the Universities contend. Taking as true the Plaintiffs' allegations as to the course of conduct between them and the Universities, we cannot agree with Defendants that this language must as a matter of law be viewed by a reasonable person as allocating the entire financial consequences of the pandemic change to online classes to the students.
>
> Indeed, the Universities cite nothing in their historical courses of dealings with their students to suggest that they have retained unfettered rights to shut down on-campus educational activities and use online learning in its place after students have paid tuition for traditional on-campus courses.

*Shaffer*, 27 F.4th at 765; *Ninivaggi*, 555 F. Supp. 3d at 52 ("No provision expressly reserves the school's right to go online or expressly limits students' remedies. Nor is there a force majeure clause. U. Delaware could have added these terms; we will not."). So too here. Yet even if Brandeis' documents contained "unambiguous language disclaiming the formation of any contractual obligation, the overall context may sufficiently suggest a legally enforceable contract as to overwhelm the effect of the specific disclaimer." *Omori*, 533 F. Supp. 3d at 55. Ultimately,

Brandeis did not reserve the right to unprecedently switch courses to remote and online instruction or limit students' remedies. Thus, the reservation is inapplicable.

Brandies attempts to bolster its argument by adding language from the Rights and Responsibilities Handbook. ECF 74 at 7–8. But like the University Bulletin's reservation of rights, neither provision cited is controlling. First, the University cites to a provision in the Housing section. *Id.* at 7. But Plaintiffs do not allege that Brandeis wrongfully reassigned them from University Housing. Second, Brandeis cites to the Campus Facilities section. However, Brandies fails to include the full language of the section, which clarifies that the Campus Facilities discusses events, activities, and programs held on campus. *Id.*; Pls.' CSOF ¶ 92. These reservations refer to one-off instances, not the unilateral transition of traditional on-campus and in-person classes to online and remote instruction. *Id.* Because Brandeis included no language regarding the potential of Brandeis to transition all courses to online and remote instruction, let alone a *force majeure* clause, an implied contract for in-person and on-campus educational instruction upon payment of tuition is not precluded. Therefore, summary judgment must be denied.

### d. Impossibility and frustration of purpose are not valid defenses here.

Brandeis also declares that its defenses of impossibility of performance and frustration of purpose bar Plaintiffs' claims. ECF 74 at 19. The Court should reject this argument.

First, "[e]xcuse under the contract doctrine of impossibility depends not simply on whether performance has become substantially impossible," i.e., where Brandeis' analysis stops, "but also on whether or not the parties reasonably foresaw and allocated the risk that the event or circumstances making performance impossible might occur." *Wheelabrator Envirotech Operating Servs. Inc. v. Mass. Laborers Dist. Council Local 1144*, 88 F.3d 40, 44 (1st Cir. 1996). Indeed, "[p]arties can plausibly assume the risks of events occurring where they know they will not be able to complete specific performance, but will be able to pay damages." *Id.* at 45. Whether Brandeis

can rely on impossibility or frustration of purpose depends on resolution of who bore the risk of non-performance, which is a "question for the trier of fact." *Chase Precast Corp. v. John J. Paonessa Co.*, 566 N.E.2d 603, 606 (Mass. 1991) (evaluating where promisor "bore no responsibility for the department's elimination of the median barriers from the projects" such that "whether it can rely on the defense of frustration turns on whether elimination of the barriers was a risk allocated by the contracts to [promisor]"). *See also Hiatt v. Brigham Young Univ.*, 512 F. Supp. 3d 1180, 1187–88 (D. Utah 2021) (discussing defenses: "[i]t is essential to know which party bears the risk of the agreement before determining whether impracticability is a valid defense"). Brandeis identifies no fact indicating it shifted the risk of *Brandeis'* non-performance to Plaintiffs. *See supra* at § IV.A.2.c (evaluating Brandeis' purported reservations of discretion); *Shaffer*, 27 F.4th at 765; *Ninivaggi*, 555 F. Supp. 3d at 52.

Second, even if either contract defense applied, Brandeis ignores that with impossibility or frustration of purpose, *both parties* to the contract are excused from performance. When both parties are excused from performance, the law seeks to restore both parties to their pre-contract position. *See* Restatement (Second) of Contracts § 377 (1981) ("A party whose duty of performance . . . is discharged as a result of impracticability of performance . . . is entitled to restitution for any benefit he has conferred on the other party by way of part performance or reliance"); *id.* at cmt. A ("Furthermore, in cases of impracticability . . . the other party . . . is also entitled to restitution."); *id.* at cmt. B ("after the occurrence of a disrupting event that was ordinarily unforeseeable when the contract was made . . . . restitution is all that is required"); *Hiatt*, 512 F. Supp. 3d at 1188 ("Even if it was impossible for BYU to provide in-person education, BYU could still be required to provide restitution"). Since Brandeis did not perform on the contract due to COVID-19, as the breaching party it may have the value of the remote instruction it provided

as substitute performance. However, Brandeis has provided no evidence of the value of the remote instruction provided during the Spring 2020 semester. *See generally* ECF 75. Plaintiffs would be entitled to restitution for the amounts they paid in advance for tuition and fees, potentially less the value of the online education provided by Brandeis. *But see In re Boston Univ. COVID Refund Litig.*, No. 1:20-cv-10827-RGS [ECF 72] (D. Mass. Aug. 20, 2021) (noting "[l]iability will hinge on whether the contract required provision of in-person instruction, not on the value of educational services ultimately received."). Summary judgment is inappropriate.

**B.  Genuine issues remain regarding Plaintiffs' fee claims.**

> **1.  Standing arguments should be rejected as premature.**

First, Defendant contends that Plaintiffs lack Article III standing to represent other class members for unidentified fees. ECF 74 at 14–15. Because Brandeis identifies no such particular fee, it fails to carry its threshold burden as movant. *See Woods Hole*, 2022 WL 980178, at *3. Even if it did identify the fees, Brandeis inappropriately conflates Article III requirements with class certification matters. Whether Plaintiff has standing for other unidentified fees depends on the class certification proceeding. *See Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012) (denying summary judgment as conflating class action requirements with summary judgment requirements, as whether "Plaintiff has standing to sue on behalf of a class that includes claims related to the 257 lending funds Plaintiff did not purchase…depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure"); *In re Biogen, Inc. ERISA Litig.*, 2021 WL 3116331, at *4 (D. Mass. July 22, 2021) (noting plaintiffs "personally paid excessive fees in connection with their own investments…and have asserted a sufficient claim for class standing given their joint stakes in the litigation"). Plaintiffs' ability to represent other unidentified fee payments rests within the Rule 23 process, not under Rule 56.

**2.   The jury must determine whether Brandeis breached a contract for fees.**

Brandeis, again relying on the University Bulletin and Rights and Responsibilities Handbook, argues preclusion of a contract for in-person services or activities or refunds after the first day of instruction. ECF 74 at 15. However, as detailed *supra* at § IV.A.2, neither the Rights and Responsibilities Handbook nor the Financial Responsibility Agreements govern the matter of refunds, whether tuition or fees, when Brandeis completely changed the manner and format of educational experience. Defendant then attacks Plaintiffs' claims as to four fees (Undergraduate Fee, Senior Program Fee, Processing Fee, and Studio Fee) claiming no contract exits, and, even if there were a contract, no breach or damages. Summary judgment should be denied here too.

**a.   Plaintiffs reasonably expected Brandeis' fees supported in-person experiences.**

First, Brandeis claims that the University's fee descriptions for the fees charged did not create reasonable expectations of in-person services. ECF 74 at 16. Plaintiffs disagree and since the evidence suggests otherwise, this is, ultimately, a question for the jury to resolve.

First, Brandeis' myopic focus on the Bulletin's references to the four fees ignores the context (and Plaintiffs' implied contract claim asserted in Count II). However, Brandeis cannot ignore the parties' course of conduct and Massachusetts law which does not limit an implied contract to written statements as "[a] contract implied in fact may be found to exist from the conduct and relations of the parties." *Jackson v. Action* for *Bos. Cmty. Dev., Inc.*, 403 Mass. 8, 9, 525 N.E.2d 411, 413 (1988) (citing *LiDonni, Inc. v. Hart*, 355 Mass. 580, 583, 246 N.E.2d 446 (1969)). *See also Omori*, 533 F. Supp. 3d at 55 ("[E]ven where a manual contains unambiguous language disclaiming the formation of any contractual obligation, the overall context may sufficiently suggest a legally enforceable contract as to overwhelm the effect of the specific disclaimer.'"). Here, Plaintiffs understood that they would attend classes in-person and have on-campus access upon payment of tuition and fees, with their fees payments providing access to on-

campus facilities, services, and activities. Pls.' CSOF ¶¶ 79, 80. Furthermore, throughout Plaintiffs' history of interacting with Brandeis, including the start of the Spring 2020 semester, those interactions were in-fact in person.[3]

### b. Questions of material fact remain regarding Brandeis' breaches regarding fees.

Brandeis also claims that the undisputed facts show that Brandeis met Plaintiffs' reasonable expectations. Mot. at 17. Not so. Under Massachusetts law, "[a] breach of contract is a failure to comply with one or more material, or significant, terms of the contract." Mass. Sup. Ct. Civil Practice Jury Instructions § 14.1. "A breach of contract is established if the facts show that the university has 'failed to meet [the student's] reasonable expectations.'" *Walker v. President & Fellows of Harvard Coll.*, 840 F.3d 57, 61–62 (1st Cir. 2016) (quoting *Schaer v. Brandeis Univ.*, 735 N.E. 2d 474, 378 (Sup. Judicial Court, Mass, Middlesex (2000)). "Whether a material breach has occurred is a question of fact for the jury to decide." Mass. Sup. Ct. Civil Practice Jury Instructions § 14.8. Even if Brandeis' stated actions that rendered any breach non-material, it still would not preclude a claim for damages. *See id.* ("[I]f a party breaches a contract in a nonmaterial way, the injured party may be entitled to bring an action for damages, but it may not stop performing its obligations under the contract."). Plaintiffs understood their fees paid for in-person experiences. Pls.' CSOF ¶¶ 79, 80.

### c. Brandeis' short attack on the damages element of Plaintiffs' fee claims must fail.

Last, the Court should reject Brandeis' argument that Plaintiffs were not damaged because

---

[3] Brandeis' discovery production is deficient regarding Brandeis' descriptions of the four fees (*see* ECF 74 at 16–17). Brandeis produced over 93% of its total production within three weeks of filing summary judgment motion. ECF 77. Plaintiffs' on-going review and keyword searches confirms the deficiency of Brandeis' production is now directly impacting Plaintiffs' ability to respond to these paragraphs. Except for its Bulletin and two documents from its files reflecting Plaintiffs' respective student account transactions, Brandeis did not produce documents from its files referencing any of the four fees. *See* Pls.' Motion to Exclude or For Discovery Pursuant to Rule 56(d). Given such deficiencies, further discovery on these four fees should occur.

no breach occurred, ECF 74 at 18, because genuine issues of material fact remain for the jury to decide regarding questions of breach. And Plaintiffs' expert disclosures, which includes damages reports, are not due until September 15, 2022 (ECF 59). Brandeis' statement that Plaintiffs have not offered evidence they were materially harmed by the transition to remote technology and activities, ECF 74 at 18, must be rejected. "Materially harmed" is not the standard in evaluating Plaintiffs' damages. Rather Plaintiffs are "entitled to recover damages sufficient to give [them] the benefit of [their] contractual bargain" and are "entitled to those damages that would put [them] in a position to obtain that which [they] . . . bargained to obtain . . . ." Mass. Supp. Ct. Civil Practice Jury Instr. § 14.9.1. Defendant did not perform its bargain with Plaintiffs. Instead, Brandeis substituted a materially different experience than what Plaintiffs bargained for and received until March 2020. Plaintiffs were damaged.

## C.  Summary judgment on Plaintiffs' unjust enrichment claim would be improper.

### 1.  Plaintiffs' alternative unjust enrichment claim is not barred by a contract.

Despite contending Plaintiffs "lack any contractual right to exclusively in-person instruction or services," Brandeis argues that Plaintiffs' unjust enrichment claim is foreclosed simply because the Brandeis-student relationship is based in contract. ECF 74 at 19. Defendant misreads Massachusetts law.

First, Plaintiffs assert their claims for unjust enrichment in the alternative. As this Court explained at the motion to dismiss stage:

> Brandeis argues that plaintiffs cannot, as a matter of law, state a claim for unjust enrichment because they have an adequate remedy at law, namely, a breach of contract action. At the same time, Brandeis disputes the existence of any contract between the parties requiring in-person instruction and access to on-campus facilities and resources. Because plaintiffs plead unjust enrichment only to the extent that the parties do not have a contractual relationship, however, defendant's argument is of no avail.

*Omori*, 533 F. Supp. 3d at 55–56. Now Brandeis doubles-down on this position. But the existence

of a contract remains a question of fact, *LeMaitre v. Mass. Tpk. Auth.*, 70 Mass. App. Ct. 634, 637

(2007), and a contract only bars Plaintiffs' unjust enrichment claims if the Court accepts a disputed

fact that the terms explicitly address the parties' dispute. *See Bettencourt v. Jeanne D'Arc Credit

Union,* 370 F. Supp. 3d 258, 265 (D. Mass. 2019) (Gorton, J.) (noting preclusion occurs where

"the contracts explicitly encompass the dispute"). *See also Mass. Eye & Ear Infirmary v. QLT

Phototherapeutics, Inc*., 412 F.3d 215, 233–34 (1st Cir. 2005) (finding summary judgment on

unjust enrichment claim inappropriate where "agreement is too indefinite to be enforced" as

"[u]njust enrichment provides an equitable stopgap for occasional inadequacies in contractual

remedies at law" noting that while the key statements at issue "were not specific enough to support

MEEI's contract claims" they formed "a key component of MEEI's unjust enrichment claim and

present a triable issue of fact"); *Lass v. Bank of Am., N.A*., 695 F.3d 129, 140–41 (1st Cir. 2012)

(rejecting contract preclusion argument where the contract at issue "does not explicitly address"

the key issues ). While Plaintiffs may "eventually be required to choose which theory of recovery

to pursue 'courts have been flexible regarding when they require this choice to be made.'" *Aware,

Inc. v. Centillium Commc'ns, Inc.,* 604 F. Supp. 2d 306, 312 (D. Mass. 2009) (Gorton, J.) (quoting

*Philip Alan, Inc. v. Sarcia*, 2007 WL 738484, at \*10 (Mass. Super. Ct. Feb. 6, 2007)). *See also

Sentinel Prods. Corp. v. Mobile Chem. Co*., 2001 WL 92272, at \*22 n.15 (D. Mass. Jan. 17, 2001)

("It may be that the existence of an action at law will render the unjust enrichment claim

duplicitous at the trial stage. However, the plaintiff should have the option under which theory to

proceed."). In any event, now is not the time.

**2.   Questions of fact remain regarding the elements of Plaintiffs' unjust enrichment
   claim and Brandeis misstates the fundamental legal principles.**

Finally, summary judgment as to the individual elements of Plaintiffs' unjust enrichment

claim must be denied. Massachusetts law requires Plaintiffs to show three elements: "(1) he or she conferred a benefit upon the defendant, (2) the defendant accepted that benefit and (3) the defendant's retention of the benefit would be inequitable without payment for its value." *Omori*, 533 F. Supp. 3d at 55. While Brandeis accurately quotes these three elements in its papers, Mot. at 19, the accuracy of its analysis stops there.

Attacking the first element of the claim, Brandeis argues Plaintiffs cannot prove a benefit, declaring that it did not benefit financially from the transition to online classes and services. *See* ECF 74 at 19. However, summary judgment on benefit would be inappropriate because there exists no real dispute that Brandeis received a "benefit" from Plaintiffs, i.e., Plaintiffs' tuition and fee payments for the Spring 2020 semester. *See* CSOF ¶¶ 79, 80; Omori Aff. ¶ 4; Yang Aff. ¶ 5. Payment of money is a quintessential "benefit" that satisfies the first element of an unjust enrichment claim. *Bonina v. Sheppard*, 78 N.E.3d 128, 134 (Mass. App. Ct. 2017) (explaining that "benefits may be measured by 'money paid by or on behalf of the plaintiff'") (quoting Dobbs, Law of Remedies § 13.2(2), at 520 (2d ed. 1993)). *See also Mass. Eye & Ear Infirmary v. QLT Phototherapeutics*, 552 F.3d 47, 66 (1st Cir. 2009) (noting on the facts before it that "the appropriate measure of damages should be an approximation of the value of the benefit [plaintiff] conferred on [defendant]."); *id.* at 59–60 ("A 'benefit' for purposes of an unjust enrichment claim is any form of advantage that has a measurable value, including the advantage of being saved from an expense or loss."). While the value of the benefit conferred by Plaintiffs can be derived based on their payments to Brandeis, ultimately, "the determination of the value of the benefit conferred on the defendant is a question of fact." *Id.* ‼

While Brandeis claims to have "lost significant revenue due" for Spring 2020 and Fall 2020, which government aid did not offset, ECF 74 at 19, Massachusetts law does not require that

Brandeis book a profit to allow Plaintiffs' unjust enrichment claim to proceed to the jury. Disgorgement of a defendant's profit is one option available for courts to use in fashioning a remedy for aggrieved plaintiffs, but not the sole remedy. In fact, "Massachusetts courts have not squarely considered the availability of profit disgorgement in an unjust enrichment action," though the First Circuit surmised "we think it likely that they would approve of a disgorgement remedy in the present unjust enrichment context" in evaluating the question presented before it. *Massachusetts Eye*, 552 F.3d at 67. Such a result follows as courts retain flexibility to fashion remedies in unjust enrichment. *Demoulas v. Demoulas*, 703 N.E.2d 1149, 1169 (Mass. 1998) ("Equitable remedies are flexible tools to be applied with the focus on fairness and justice.").

This result is appropriate in a case like this one, where Brandeis should not have profited as it is a not-for-profit institution of higher education. Pls.' CSOF ¶ 93. Brandeis' balance sheets undermine its myopic position it incurred additional expenses and/or did not financially benefit during its pandemic response. From FY2019 to FY2020 (year ending June 30), Brandeis saw its total assets *increase* by $49,861,000, with its net assets after accounting for its total liabilities *increasing* by $17,756,000 from the pre-pandemic fiscal year. *Id.* ¶ 94 (Brandeis Audit YE June 30, 2020). *See also* Restatement (Third) of Restitution & Unjust Enrichment § 49(2) (2011) ("Enrichment from a money payment is measured by the amount of the payment or the resulting increase in the defendant's net assets, whichever is less.").

Brandies also argues that even if it did receive a benefit, it did not *unjustly* benefit. ECF 74 at 20. This issue implicates too many questions for resolution on summary judgment. In Massachusetts, "[a] plaintiff asserting a claim for unjust enrichment must establish not only that the defendant received a benefit, but also that such a benefit was unjust, a quality that turns on the reasonable expectations of the parties." *Metro. Life Ins. Co. v. Cotter,* 984 N.E.2d 835, 850 (Mass.

2013). "The injustice of the enrichment or detriment in quasi-contract equates with the defeat of someone's reasonable expectations." *Id.* Plaintiffs reasonably expected that their payments were for in-person instruction and experiences. Pls.' CSOF ¶¶ 79, 80. They registered for in-person classes. *Id*. ¶¶ 75, 76. They did not enroll in Brandeis' online offerings, let alone an exclusive online institution. *Id.* ¶¶ 75, 76. Brandeis presented students with no other options, informing the entire student body it would be transitioning to online education and that students were effectively barred from campus. *Id.* ¶¶ 82, 83. In such circumstances, the ultimate determination of whether any enrichment was "unjust," is a question of fact, not law. *See, e.g.*, *Durbeck*, 547 F. Supp. 3d at 150 ("Although Suffolk contends that it was not unjust to retain the Plaintiffs' fees and tuition because Suffolk continued to provide educational instruction toward a degree, the Court must draw all reasonable inferences in the Plaintiffs' favor, and in so doing it cannot be said as matter of law that Suffolk's actions were not unjust under the circumstances."); *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.,* 513 F. Supp. 3d 1350, 1360 (M.D. Fla. 2021) ("[E]ven if Plaintiff received a substantial benefit from his payments of tuition and fees, it may still be inequitable for Defendant to retain their full value" and that such an inquiry is "a question of fact"); *Greenwald v. Chase Manhattan Mortg. Corp*., 241 F.3d 76, 81 (1st Cir. 2001) (noting restitution decisions "reflect a weighing of whether an outcome is more or less 'fair' or 'just'").

Finally, Brandeis argues that Plaintiffs did not have a "detriment" because Brandeis provided them with an online, remote experience. ECF 74 at 20. However, Brandeis identifies its routine expenditures of money (e.g., its use of tuition receipts on its "fixed and operating costs" and its use of fees "in the same ways they had been used in prior semesters"), which provides no defense to an unjust enrichment claim because "[a]n expenditure of money is not itself a defense to liability in restitution." *Metro. Life Ins. Co. v. Beard*, 2019 WL 480513, at *7 (D. Mass. Feb. 7,

2019). To avail itself of such a defense, Brandeis needed to identify expenditures of Plaintiffs'
tuition and fee payments which were "devoted to extraordinary consumption," i.e., that its
expenditures "would not have been made but for the payment or transfer for which the claimant
seeks restitution." *Id*. Brandeis identifies novel expenditures made because of the pandemic, not
because of a change in position due to Plaintiffs' pre-pandemic payments.

Finally, Brandeis' underperformance and unilateral substitution of one product (remote
experience) for another (in-person experience) does not mean that Plaintiffs received what they
reasonably expected they would receive when they paid tens of thousands in tuition and fees.
Omori Aff. ¶ 5; Yang Aff. ¶ 5. *See, e.g.*, *Linton v. N.Y. Life Ins. & Annuity Corp*., 392 F. Supp. 2d
39, 42 (D. Mass. 2005) (holding plaintiff stated claim for unjust enrichment where plaintiff
complained that his payment for investment services constituted unjust enrichment where the
plaintiff did not receive the services bargained for). Any notion that Plaintiffs' claim must be
rejected because they suffered no loss (i.e., that Plaintiffs had no detriment because they continued
with classes and ultimately received their degrees, Mot. at 20), must be rejected as inconsistent
with unjust enrichment law. *See* Restatement (Third) of Restitution & Unjust Enrichment § 1
(2011) ("Liability in restitution derives from the receipt of a benefit whose retention without
payment would result in the unjust enrichment of the defendant at the expense of the claimant.
While the paradigm case of unjust enrichment is one in which the benefit on one side of the
transaction corresponds to an observable loss on the other, the consecrated formula 'at the expense
of another' can also mean 'in violation of the other's legally protected rights,' without the need to
show that the claimant has suffered a loss."). *Id*. Summary judgment cannot occur.

## V.   CONCLUSION

Plaintiffs respectfully request that the Court deny Brandeis' motion for summary judgment
in its entirety and grant them all such other relief that the Court deems necessary.

Dated: May 4, 2022

Respectfully submitted,

By: */s/ Daniel J. Kurowski*

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
T: (708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
T: (206) 623-7292
steve@hbsslaw.com

Kristie LaSalle (BBO #692891)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
T: (617) 482-3700
kristiel@hbsslaw.com

Richard E. Levine (BBO# 672675)
STANZLER LEVINE, LLC
37 Walnut Street, Suite 200
Wellesley, MA 02481
(617) 482-3198
rlevine@stanzlerlevine.com

Eric M. Poulin (*Pro Hac Vice*)
Roy T. Willey, IV (*Pro Hac Vice*)
ANASTOPOULO LAW FIRM, LLC
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com

*Attorneys for Plaintiffs, individually and on behalf of all others similarly situated*

- 23 -

**<u>CERTIFICATE OF SERVICE</u>**

I, Daniel J. Kurowski, hereby certify that on May 4, 2022 the foregoing document filed

through the Court's CM/ECF system will be sent electronically to the registered participants as

identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those

indicated as non-registered participants.

<i>/s/ Daniel J. Kurowski</i>
Daniel J. Kurowski