UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN THOMAS OMORI and LINFEI YANG, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>BRANDEIS UNIVERSITY,<br><br>               Defendant. | No. 1:20-cv-11021-NMG |

**DEFENDANT BRANDEIS UNIVERSITY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1
ARGUMENT .........................................................................................................................1
I.   PLAINTIFFS FAIL TO SHOW A TRIABLE ISSUE ON THEIR TUITION-BASED CONTRACT CLAIMS ..........................................................................1
     A.   Plaintiffs' Now-Conceded Express Contract Precludes Implied Terms ..................1
     B.   Plaintiffs Fail To Show Material Facts Supporting An Implied Contract ...............3
     C.   Plaintiffs Fail To Show Material Facts Supporting Breach .....................................4
     D.   Plaintiffs Fail To Show How They Can Prove Damages ........................................4
     E.   Plaintiffs Concede Brandeis's Performance Was Impossible ..................................5
II.  PLAINTIFFS FAIL TO SHOW A TRIABLE ISSUE ON THEIR FEE-BASED CONTRACT CLAIMS ................................................................................6
     A.   Plaintiffs Fail To Show Standing For Fees They Did Not Pay ................................6
     B.   Plaintiffs Fail To Show Material Facts Supporting An Implied Contract ...............7
     C.   Plaintiffs Fail To Show Material Facts Supporting Breach .....................................8
     D.   Plaintiffs Fail To Show How They Can Prove Damages ........................................9
     E.   Plaintiffs Fail To Respond To Brandeis's Impossibility Argument ........................9
III. PLAINTIFFS FAIL TO SHOW A TRIABLE ISSUE ON UNJUST ENRICHMENT ........................................................................................................9
     A.   Plaintiffs Cite No Authority Suggesting That They Can Survive Summary Judgment On Both Unjust Enrichment And Breach Of Contract ...........................9
     B.   Plaintiffs Fail To Satisfy The Elements Of Unjust Enrichment ............................10
CONCLUSION.....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Biogen, Inc. ERISA Litig.*,
   2021 WL 3116331 (D. Mass. July 22, 2021) .......................................................................... 7

*In re Bos. Univ. COVID-19 Refund Litig.*,
   511 F. Supp. 3d 20 (D. Mass. 2021) ...................................................................................... 5

*Bulmer v. MidFirst Bank, FSA*,
   59 F. Supp. 3d 271 (D. Mass. 2014) ...................................................................................... 2

*Burt v. Bd. of Trustees of Univ. of Rhode Island*,
   523 F. Supp. 3d 214 (D.R.I. 2021) ........................................................................................ 4

*Chase Precast Corp. v. John J. Paonessa Co.*,
   409 Mass. 371 (1991) ............................................................................................................ 5

*Coll v. PB Diagnostic Sys., Inc.*,
   50 F.3d 1115 (1st Cir. 1995) .................................................................................................. 2

*CSX Transp., Inc. v. Massachusetts Bay Transp. Auth.*,
   697 F. Supp. 2d 213 (D. Mass. 2010) .................................................................................... 2

*Durbeck v. Suffolk Univ.*,
   547 F. Supp. 3d 133 (D. Mass. 2021) ................................................................................ 4, 5

*Guckenberger v. Bos. Univ.*,
   974 F. Supp. 106 (D. Mass. 1997) ......................................................................................... 8

*Hiatt v. Brigham Young Univ.*,
   512 F. Supp. 3d 1180 (D. Utah 2021) .................................................................................... 5

*LeMaitre v. Massachusetts Tpk. Auth.*,
   70 Mass. App. Ct. 634 (2007) ................................................................................................ 9

*Mangla v. Brown Univ.*,
   135 F.3d 80 (1st Cir. 1998) .................................................................................................... 8

*Metro. Life Ins. Co. v. Beard*,
   2019 WL 480513 (D. Mass. Feb. 7, 2019) .......................................................................... 10

*MIT v. Guzman*,
   90 Mass. App. Ct. 1102, 2016 WL 4395356 (2016) ............................................................. 8

*Ninivaggi v. Univ. of Delaware*,
    555 F. Supp. 3d 44 (D. Del. 2021) .................................................................................. 6

*Okmyansky v. Herbalife Int'l of Am., Inc.*,
    415 F.3d 154 (1st Cir. 2005) ............................................................................................ 3

*Raimo v. Washington Univ. in St. Louis*,
    2022 WL 796239 (E.D. Mo. Mar. 16, 2022) ................................................................... 5

*Realty Fin. Holdings, LLC v. KS Shiraz Manager, LLC*,
    86 Mass. App. Ct. 242 (2014) ..................................................................................... 2, 3

*Rodriguez v. Massachusetts Bay Transp. Auth.*,
    92 Mass. App. Ct. 26 (2017) ............................................................................................ 4

*Ruggers, Inc. v. U.S. Rugby Football Union, Ltd.*,
    843 F. Supp. 2d 139 (D. Mass. 2012) .............................................................................. 6

*Salamon v. Terra*,
    394 Mass. 857 (1985) ...................................................................................................... 3

*Simmons-Telep v. Roger Williams Univ.*,
    2022 WL 843847 (D.R.I. Mar. 22, 2022) ........................................................................ 7

*Squeri v. Mount Ida Coll.*,
    954 F.3d 56 (1st Cir. 2020) .............................................................................................. 8

*Wheelabrator Envirotech Operating Servs. Inc. v. Massachusetts Laborers Dist. Council Loc. 1144*,
    88 F.3d 40 (1st Cir. 1996) ................................................................................................ 5

*Zhao v. CIEE Inc.*,
    3 F.4th 1 (1st Cir. 2021) .................................................................................................. 2

### Additional Authorities

Restatement (Second) Contracts § 373 (1981) ....................................................................... 6

Restatement (Second) of Contracts § 373 cmt. a (1981) ........................................................ 6

Restatement (Third) of Restitution and Unjust Enrichment § 6 cmt. a (2011) ..................... 10

**INTRODUCTION**

In their opposition (Dkt. 90 ("Opp.")) to Brandeis's motion for summary judgment and statement of undisputed facts in support thereof (Dkts. 74 ("MSJ") & 75 ("SUF")), Plaintiffs make a number of crucial concessions. They concede that they entered an express agreement with Brandeis agreeing to be bound by its tuition refund schedule, that Brandeis made no express promise to provide in-person instruction in all circumstances, and that they accepted Brandeis's substitution of remote for in-person instruction in response to the COVID-19 pandemic and completed their degrees. They also make no argument that Brandeis could have provided in-person instruction during the pandemic given the public health risks and applicable government orders. They thus fail to show legally sufficient facts to prove an implied contract or breach. Nor do Plaintiffs explain how the Court could objectively measure damages without making impermissible judgments about the quality of the education they received. The Court should grant summary judgment based on the now-undisputed facts.

**ARGUMENT**

**I.   PLAINTIFFS FAIL TO SHOW A TRIABLE ISSUE ON THEIR TUITION-BASED CONTRACT CLAIMS**

   **A.   Plaintiffs' Now-Conceded Express Contract Precludes Implied Terms**

Plaintiffs admit that they signed the Financial Responsibility Agreement ("FRA") requiring them to pay Brandeis tuition and fees in exchange for registration for the 2020 spring semester and to be bound by Brandeis's published tuition refund schedule (*see* MSJ 6-7). Plaintiffs protest (Opp. 10) that the tuition refund schedule should apply only in instances where a student withdraws from classes. But they do not dispute that the schedule provides for "no refund" percentage after the fifth Friday of the semester, and they cite no instances in which Brandeis has ever issued tuition refunds for any reason after the schedule's specified dates.

1

*Zhao v. CIEE Inc.*, 3 F.4th 1 (1st Cir. 2021) (applying Maine law), is thus dispositive, and Plaintiffs fail (Opp. 10-11) to distinguish it.  Contrary to Plaintiffs' assertion, *Zhao* turned on contract language providing that no refunds would be provided after the study-abroad program began—not on other language concerning alternative educational arrangements in the event the program was canceled.  *Id*. at 7.  Brandeis's tuition refund policy is materially identical.

Moreover, Plaintiffs' admissions that they entered into this express contract are fatal to their implied contract claims.  Plaintiffs do not dispute that express contracts displace implied contracts.  *See, e.g.*, *CSX Transp., Inc. v. Massachusetts Bay Transp. Auth.*, 697 F. Supp. 2d 213, 224 (D. Mass. 2010) (applying Massachusetts law).

Plaintiffs err in asserting (Opp. 9) that the FRA is "not a complete or integrated contract" or is "missing essential terms."  In fact, the FRA sets forth the nature and extent of the services that Brandeis will provide students:  in exchange for students "pay[ing] all tuition, fees and other associated costs," Brandeis allowed them to "register" and "receive [] service[s] from Brandeis."  SUF ¶ 35.  Plaintiffs point to nothing on "the face of" the FRA "that would indicate that the parties did not intend it to be a complete and final expression of [the parties'] rights and obligations."  *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1123 (1st Cir. 1995) (applying Massachusetts law).  The FRA and tuition refund schedule were at minimum "partially integrated—concerning specifically the extent of and acceptable remedy for Plaintiff[s'] [claims]—and, accordingly, replaced any earlier agreements and eclipsed inconsistent evidence having to do with its terms."  *Bulmer v. MidFirst Bank, FSA*, 59 F. Supp. 3d 271, 276 (D. Mass. 2014) (applying Massachusetts law).

In any event, Plaintiffs may not import implied terms into an express contract, whether integrated or not.  Parties may sometimes supplement an express contract with other evidence of the parties' intent, such as "evidence of preliminary negotiations or side agreements."  *Realty Fin.*

2

*Holdings, LLC v. KS Shiraz Manager, LLC,* 86 Mass. App. Ct. 242, 247-48 (2014) (citations omitted). But that does not mean parties may add implied terms to express contracts. Implied-contract terms are equitable terms that do not reflect "any expression of assent," *Salamon v. Terra,* 394 Mass. 857, 859 (1985) (citations omitted), and "the existence of a valid express contract … bars the application of [] equitable" terms, *Okmyansky v. Herbalife Int'l of Am., Inc.,* 415 F.3d 154, 162 (1st Cir. 2005) (applying Massachusetts law).

Plaintiffs also admit that they expressly agreed to abide by terms in the Brandeis's Bulletin and Handbook, which provide that Brandeis reserved unilateral discretion to restrict use of campus facilities "for activities contrary to federal, state, or local laws, … or activities that may create an undue risk or harm to persons and/or property," to "reassign students to other locations," and "to make any changes in the course offerings without prior notice." SUF ¶¶ 45-47. Plaintiffs fail to explain (Opp. 11-12) why the reservations' plain text does not include discretion to switch to remote instruction in the face of the pandemic and government shutdown orders. Plaintiffs unavailingly cite (Opp. 9-11) cases rejecting university reservations of rights and tuition-refund policies as grounds to *dismiss*, but this case is now before the Court on summary judgment, and the undisputed evidence now shows that Plaintiffs expressly agreed to Brandeis's reservations of rights and tuition refund policies, precluding their implied contract claims.

**B.     Plaintiffs Fail To Show Material Facts Supporting An Implied Contract**

Even if their agreement to their express contract with Brandeis were not dispositive (and it is), Plaintiffs also fail to show any reasonable expectation of exclusively in-person classes.

*First,* Plaintiffs fail to explain (Opp. 4, 6) why Brandeis's statements about "hands-on experiences," internships, and academic centers in its website and Bulletin are any less general than the "promises of 'hands-on' instruction in particular campus buildings" found insufficiently

3

definite and certain to support an implied contract in *Burt v. Bd. of Trustees of Univ. of Rhode Island*, 523 F. Supp. 3d 214, 222 (D.R.I. 2021) (applying Rhode Island law). And *Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133 (D. Mass. 2021) (applying Massachusetts law) (cited Opp. 4), declined to resolve at the pleading stage whether website statements gave rise to expectations of in-person instruction during "a global pandemic," *id.* at 146, and also found general statements about campus life in Suffolk's academic catalog "illusory" in light of Suffolk's express reservation of rights, *id.* at 147. Brandeis's similar reservation of rights in its Bulletin also renders illusory Plaintiffs' references (Opp. 6) to course and major descriptions in the Bulletin.

*Second*, Plaintiffs misplace reliance (Opp. 5) on the Bulletin's statement that library and athletic facility use are covered by tuition. That statement nowhere uses the term "on-campus," and means only that students do not have to pay extra fees to access the library or athletic facilities.

### C.      Plaintiffs Fail To Show Material Facts Supporting Breach

Plaintiffs barely mention breach, suggesting in only a single sentence (Opp. 6-7) that there must have been breach because they did not agree to remote instruction. They thus concede that their contract and breach arguments stand or fall together. Their failure to show a reasonable expectation of solely in-person instruction thus dooms their breach claim. *See Rodriguez v. Massachusetts Bay Transp. Auth.*, 92 Mass. App. Ct. 26, 30 (2017) (holding no breach of implied contract where no reasonable expectation of continuous train service in a winter storm).

### D.      Plaintiffs Fail To Show How They Can Prove Damages

As Plaintiffs concede, Brandeis does not provide an online undergraduate degree program (SUF ¶ 52), and there is thus no pre-pandemic Brandeis undergraduate online course to use as a comparator in calculating damages. Instead, Plaintiffs propose (Opp. 7) that the Court compare the tuition they paid toward their undergraduate degrees with the cost of online Brandeis graduate programs or unspecified "online programs offered elsewhere." But where there is no "comparable

4

online program to whose tuition the Court could compare" a student's tuition, *Raimo v. Washington Univ. in St. Louis*, 2022 WL 796239, at *6 (E.D. Mo. Mar. 16, 2022) (applying Missouri law), any effort to compare the quality of other schools' online courses would run headlong into the bar on educational malpractice, *see Suffolk*, 547 F. Supp. 3d at 142; MSJ 13. Thus, Plaintiffs' inability to prove damages has nothing to do with "expert testimony" (Opp. 8 n.2), but rather with the fact that their proposed comparison so "inextricably implicate[s] the issue of quality as to render the claim non-actionable." *In re Bos. Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20, 23 n.5 (D. Mass. 2021) (applying Massachusetts law).

Moreover, Plaintiffs do not dispute that thousands of students paid full tuition for Brandeis's undergraduate program in Fall 2020 even knowing classes could be remote (MSJ 12-13)—a fact that conclusively contradicts their damages theory. They have no response.

### E. Plaintiffs Concede Brandeis's Performance Was Impossible

Plaintiffs do not dispute (Opp. 12) that Brandeis's performance "bec[a]me substantially impossible" following Governor Baker's orders restricting gatherings and non-essential business. *See* MSJ 13-14. This distinguishes *Hiatt v. Brigham Young Univ.*, 512 F. Supp. 3d 1180 (D. Utah 2021) (cited Opp. 13), which declined to consider impracticability on a motion to dismiss.

Plaintiffs assert (Opp. 12-13) that impossibility invariably poses a question of fact, but that is untrue. Plaintiffs' cases hold only that there *can* be a question of fact "on whether or not the parties reasonably foresaw and allocated the risk that the event or circumstances making performance impossible might occur." *Wheelabrator Envirotech Operating Servs. Inc. v. Massachusetts Laborers Dist. Council Loc. 1144*, 88 F.3d 40, 44 (1st Cir. 1996) (applying Massachusetts law, resolving this issue as a matter of law). Plaintiffs make no argument and cite no evidence suggesting that a global pandemic "was a risk allocated by the contracts to" Brandeis. *Chase Precast Corp. v. John J. Paonessa Co.,* 409 Mass. 371, 376 (1991). To the contrary,

5

Brandeis's tuition refund schedule reflects an allocation of financial risk that shifted to *the student* by the fifth Friday of the semester.

Even if the tuition refund schedule did not allocate that risk (it does), Plaintiffs would still not be entitled to the restitution they claim (Opp. 13), for two reasons. *First*, Brandeis offered in-person instruction for half the semester, and Plaintiffs accepted Brandeis's substitute performance for the second half. Restitution is unavailable as a matter of law when the defendant "has committed, at most, only a partial breach," *Ruggers, Inc. v. U.S. Rugby Football Union, Ltd.,* 843 F. Supp. 2d 139, 145 (D. Mass. 2012) (applying Massachusetts law, citing Restatement (Second) Contracts § 373 (1981)), or when a plaintiff "accept[s] or ret[ains] [] performance with knowledge of defects," Restatement (Second) of Contracts § 373 cmt. a (1981). Plaintiffs fail to respond to this point, asserting (Opp. 7-8) only that "they had no meaningful choice" but to accept Brandeis's remote instruction. But that is true of anyone who pays in advance for a service, is faced with impossibility, and accepts partial performance nonetheless, with the consequence that neither side can be restored to the status quo ante. The choice was restitution *or* partial performance.

*Second*, Plaintiffs' own authorities hold that a university that switches classes to a remote platform because of the pandemic "cannot be liable for restitution unless going online enriched it." *E.g., Ninivaggi v. Univ. of Delaware,* 555 F. Supp. 3d 44, 53 (D. Del. 2021) (cited in Opp. 10-11, 13, applying Delaware law). As explained below, *infra* Part III, there is no material dispute of fact that the transition to remote instruction did not financially benefit Brandeis.

## II. PLAINTIFFS FAIL TO SHOW A TRIABLE ISSUE ON THEIR FEE-BASED CONTRACT CLAIMS

### A. Plaintiffs Fail To Show Standing For Fees They Did Not Pay

Plaintiffs err in suggesting (Opp. 14) that this Court must wait until class certification to rule that they have no contract claim or standing as to fees that they were not charged and did not

6

pay. Named plaintiffs may assert only those claims on which they suffered personal injury, and the Court may make that threshold determination at the summary judgment stage. *See, e.g.*, *Simmons-Telep v. Roger Williams Univ.*, 2022 WL 843847, at *3 (D.R.I. Mar. 22, 2022) (applying Rhode Island law, granting summary judgment to RWU on grounds of both lack of a triable contract issue and lack of standing where named plaintiff did not pay the challenged fees). Plaintiffs' two cases (Opp. 14) are inapposite, ruling only that plaintiffs need not "invest in every fund cited in Plaintiffs' complaint" because ERISA lawsuits are "brought in a representative capacity on behalf of the plan as a whole." *In re Biogen, Inc. ERISA Litig.*, 2021 WL 3116331, at *4 (D. Mass. July 22, 2021). Neither suggests that a plaintiff can sue for breach of a contract that it never entered into or claim to have been injured by paying a fee that it never paid.

**B.       Plaintiffs Fail To Show Material Facts Supporting An Implied Contract**

As with the tuition-based claim, Plaintiffs do not dispute they signed express agreements pursuant to which they agreed to "accept full responsibility to pay all tuition, [and] *fees*," and to "be responsible for paying all or a portion of tuition and *fees* in accordance with the published tuition refunds schedule," and that the refund schedule provides "***no refund of any other fee*** on or after the first day of instruction of either semester." MSJ 15 (citations omitted).

Apart from saying (Opp. 15) they "disagree," Plaintiffs also offer no evidence or authority to dispute that the descriptions of fees in the university Bulletin do not create any reasonable expectations of exclusively in-person services. *See* MSJ 16-17. Nor do Plaintiffs address the authorities cited by Brandeis (MSJ 16-17) which establish that Plaintiffs cannot recover under their fee claims unless they prove that those fees guaranteed access to specific events or facilities, rather than generalized support of student programs.

Plaintiffs argue that the "parties' course of conduct" (Opp. 15) should support an implied agreement regarding fees, but fail to identify a single case using contract parties' "course of

7

conduct" to prove an implied student-university contract under Massachusetts law, and Defendant is aware of none. *See* MSJ 5. Indeed, Brandeis is unaware of any case in the First Circuit finding an implied student-university contract based on any alleged failure to provide specific academic services. *See, e.g.*, *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 61 (1st Cir. 2020) (applying Massachusetts law, rejecting implied contract claim regarding college closure); *Mangla v. Brown Univ.*, 135 F.3d 80, 82-84 (1st Cir. 1998) (applying Rhode Island law, rejecting implied contract claim regarding admission). Plaintiffs' self-serving statements (Opp. 15) about their subjective "underst[anding] that … their fees payments [would] provid[e] access to campus facilities, services, and activities" fail to raise a triable issue of fact, for any implied contract here depends upon objectively reasonable expectations, not subjective beliefs (MSJ 5 (collecting authorities)).

Finally, any purported discovery deficiencies regarding "Brandeis's description of the four fees" (Opp. 16 n.3) cannot have prejudiced Plaintiffs' ability to oppose summary judgment. Students suing universities on implied contract claims must prove "expectations as a student were shaped" by the statements at issue. *MIT v. Guzman*, 90 Mass. App. Ct. 1102, 2016 WL 4395356, at *5 n.11 (2016); *see also, e.g.*, *Guckenberger v. Bos. Univ.*, 974 F. Supp. 106, 151 (D. Mass. 1997) (applying Massachusetts law, concluding that, "[e]ven assuming arguendo that statements in a university's promotional materials can form the basis of a binding contractual agreement with its students," only a student who received and relied such materials may assert such a contract). If Plaintiffs do not know of materials potentially giving rise to an expectation of in-person services, they cannot use them at summary judgment.

### C. Plaintiffs Fail To Show Material Facts Supporting Breach

While Plaintiffs claim (Opp. 16) that questions of material fact remain with respect to Brandeis's breach of an implied contract for in-person experiences in exchange for fees, they fail to identify a single disputed fact. Plaintiffs do not dispute any of the facts offered by Brandeis

8

(MSJ 17-18) showing that Brandeis used the fees it charged Plaintiffs just the same as it did in prior semesters, including to support ongoing services for students. Plaintiffs thus show no triable issues on Brandeis's supposed breach of any implied contract related to fees.

### D. Plaintiffs Fail To Show How They Can Prove Damages

Plaintiffs base their response on damages (Opp. 17) solely on the assertion that "Brandeis substituted a materially different experience than what Plaintiffs bargained for and received until March 2020." Plaintiffs present no evidence to contradict Brandeis's undisputed showing that it continued to provide extensive services remotely (*see* MSJ 17-18), let alone argue that the value of this was zero or less than what Plaintiffs paid for. Moreover, Plaintiffs have not even attempted to propose an objective measure by which this Court could value the remote services that Brandeis and student organizations undisputedly continued to offer throughout the pandemic.

### E. Plaintiffs Fail To Respond To Brandeis's Impossibility Argument

Plaintiffs' fee claims are barred by impossibility for the same reasons explained above as to their tuition claims. *See supra* Part I.E.

## III. PLAINTIFFS FAIL TO SHOW A TRIABLE ISSUE ON UNJUST ENRICHMENT

### A. Plaintiffs Cite No Authority Suggesting That They Can Survive Summary Judgment On Both Unjust Enrichment And Breach Of Contract

Contrary to Plaintiffs' suggestion (Opp. 18), there is no dispute over "the existence of a contract" or over whether "the terms explicitly address the parties' dispute." There is only a dispute over what those terms say. Thus, as Plaintiffs' own cited authority recognizes, "[s]ummary judgment [as to existence of a contract] is appropriate … where, as here, there is 'in essence … no real dispute as to the salient facts or if only a question of law is involved.'" *LeMaitre v. Massachusetts Tpk. Auth.,* 70 Mass. App. Ct. 634, 638 (2007) (citations omitted). Plaintiffs fail to distinguish Brandeis's authorities on this point (MSJ 19) and cite (Opp. 18) only inapposite cases

decided at the pleading stage or where there was a dispute as to the existence of a contract. Accordingly, Plaintiffs cannot avoid summary judgment on their unjust enrichment claims.

### B. Plaintiffs Fail To Satisfy The Elements Of Unjust Enrichment

Plaintiffs also fail to show that they could prove any of unjust enrichment's elements.

*First*, Plaintiffs do not dispute (Opp. 19-20) that Brandeis "did not benefit financially from the transition to online classes and services" and lost revenue that was not offset by government aid. Plaintiffs counter (Opp. 19) that Brandeis received "Plaintiffs' tuition and fees," but payment of money constitutes a benefit only if it was "not due," Restatement (Third) of Restitution and Unjust Enrichment § 6 cmt. a (2011). Here, by contrast, Plaintiffs paid their tuition and fees because they were "due" under the FRA in exchange for the opportunity to register for classes and receive services. *See supra* Part I.A.

*Second*, Plaintiffs' argument (Opp. 21) that Brandeis's purported enrichment was unjust because they "reasonably expected" in-person instruction fails because they had no such reasonable expectations. *See supra* Part I.B.

*Third*, Plaintiffs do not dispute that Brandeis used the tuition and fees they paid to provide them uninterrupted education and services (MSJ 20), but wrongly state (Opp. 22) that Brandeis must show its expenditures were "devoted to extraordinary consumption" to defeat unjust enrichment. That rule in fact applies only to cases of "overpayment," *Metro. Life Ins. Co. v. Beard*, 2019 WL 480513, at *7 (D. Mass. Feb. 7, 2019), and Plaintiffs do not contend they paid more than they owed under their tuition and fees contract with Brandeis. Plaintiffs have thus not met their "burden of proving [] entitlement" to money that Brandeis spent to provide Plaintiffs with education and services, *id.*

## CONCLUSION

The Court should grant Brandeis's Motion for Summary Judgment.

10

DATED:  May 18, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  /s/ Kathleen M. Sullivan
Kathleen M. Sullivan (BBO # 551053)
Crystal Nix-Hines (pro hac vice)
Shon Morgan (pro hac vice)
Marina Lev (pro hac vice)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
Tel. (213) 443-3000
crystalnixhines@quinnemanuel.com
kathleensullivan@quinnemanuel.com
shonmorgan@quinnemanuel.com
marinalev@quinnemanuel.com

Harvey Wolkoff (BBO No. 532880)
Alex H. Loomis (BBO No. 699129)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
harveywolkoff@quinnemanuel.com
alexloomis@quinnemanuel.com

*Attorneys for Defendant,
Brandeis University*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2022, I electronically filed the foregoing Defendant's Reply Memorandum of Law in Support of Its Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Kathleen M. Sullivan*
Kathleen M. Sullivan