# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRISTAN RANDALL,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNIVERSITY OF THE PACIFIC,<br><br>　　　　　Defendant. | Case No.　5:20-cv-03196-EJD<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 75 |

Plaintiff Tristan Randall alleges on behalf of himself and a putative class that Defendant University of the Pacific ("UOP") breached a contract with its students, or alternatively, unjustly enriched itself at its students' expenses when it retained the full amount of tuition and fees it collected for the Spring 2020 semester despite ceasing in-person instruction and closing its campus facilities and resources with just six weeks left of the semester. Currently at issue is Defendant's motion for summary judgment. *See* University of the Pacific Motion to Dismiss Second Amended Complaint ("MSJ"), Dkt. No. 75. On February 28, 2022, Plaintiff filed an opposition, to which Defendant filed a reply. *See* Plaintiff Tristan Randall's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Opp."), Dkt. No. 83; Defendant University of the Pacific's Reply Memorandum in Support of its Motion for Summary Judgment ("Reply"), Dkt. No. 84. Having considered the Parties' arguments and submissions, and for the reasons set forth below, the Court **GRANTS** the motion for summary judgment.[1]

---

[1] On May 13, 2022, the Court found this motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). *See* Dkt. No. 87.

Case No.: 5:20-cv-03196-EJD
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

1

**I.  BACKGROUND**

This action was originally filed on May 10, 2020, by prior named plaintiff Viney Saroya. *See* Dkt. No. 1.  The first-filed and first-amended complaints asserted claims for breach of contract, unjust enrichment, conversion, and money had and received.  Of these claims, only the breach of contract claim was permitted to proceed.  *See* Order Granting in Part and Denying in Part Motion to Dismiss; Granting Motion to Strike ("November 2020 Order"), Dkt. No. 45 (dismissing claims for conversion and money had and received); Order Granting Defendant's Motion to Dismiss ("June 2021 Order"), Dkt. No. 66 (dismissing unjust enrichment claim).  The Court bifurcated discovery, allowing discovery only as to the named plaintiff, and permitted Defendant to file a summary judgment motion as to the named plaintiff's individual claims before any class certification discovery.  *See* Dkt. No. 47.

After filing a second amended complaint, Saroya withdrew as the named plaintiff and Tristan Randall was substituted in as the proposed class representative.  *See* Dkt. Nos. 64, 67. Plaintiff was a senior enrolled at UOP for the Spring 2020 semester.  Declaration of Vito A. Costanzo in Support of University of the Pacific's Motion for Summary Judgment ("Costanzo Decl."), Ex. C ("Randall Depo. Transcript) at 47, Dkt. No. 75.  During his time at UOP, Plaintiff executed a Student Financial Responsibility Agreement ("SFRA"), an express contract, pursuant to which Plaintiff paid tuition and fees in exchange for the ability to register for classes.  *See* Defendant University of the Pacific's Separate Statement of Undisputed Material Facts ("UOP SSF") No. 1, Dkt. No. 75-24.

During the Spring 2020 semester, Plaintiff was enrolled in four classes.  Costanzo Decl., Ex. G.  Because of the COVID-19 pandemic, Plaintiff had to complete these courses remotely after UOP transitioned to distance learning in response to the pandemic and government orders. SSF No. 16.  At the end of the Spring 2020 semester, Plaintiff was awarded credits for all classes taken, and graduated from UOP with a Bachelor of Science degree in Bioengineering.  SSF No. 17; Costanzo Decl., Ex. E.

Case No.: 5:20-cv-03196-EJD
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
2

Plaintiff argues that UOP breached the contract that it had impliedly made with students to provide in-person instruction. Plaintiff bases that claim on the course descriptions in UOP's catalog, the class location listed on the course syllabi, statements in UOP's policies, and statements in UOP's marketing materials including:[2]

- The statement in the course catalog that "each student is expected to consult regularly with his or her faculty advisor," Ex. C at 51;
- UOP's statement that it uses "experiential learning" as a "way to assist students in integrating their academic training with the practical side of the working world," Ex. E at 42;
- UOP's statement that it provides "a personalized learning environment that supports student success through broad access to [its] faculty" and that, at UOP, "[l]earning takes place both in the class and outside it as students and faculty interact in directed and collaborative inquiry." UOP noted that "[a]ctive learning strategies in the classroom, extensive experiential learning opportunities alongside faculty researchers/practitioners, and one-on-one faculty advising together give students exceptional opportunities to benefit from faculty expertise as teachers and scholars." Ex. E at 73;
- The 2019–2020 Course Catalog's notation that some classes would be taught in an "ONLINE" format, which indicates that non-online designated classes were meant to be taught on a primarily in-person basis, Ex. E at 95.
- The requirement that Plaintiff create design documentation and demonstration as part of his senior project, Ex. C at 54;
- The statement in a course description that "students are also use of [sic] instruments in the lab" and "prepare a measurement project," Ex. C at 61;
- A class description that included the use of case descriptions, Ex. C at 63;
- The fact that one of Plaintiff's classes had a lab component; Ex. C at 71;

---

[2] Unless otherwise noted, citations are to exhibits referenced in the Costanzo Declaration.

Case No.: 5:20-cv-03196-EJD
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
3

Case 1:20-cv-10321-NMG Document 188-1 Filed 05/03/22 Page 5 of 11

- Information contained in UOP materials regarding the campus locations where classes would be taught, Ex. C at 24, 106–08;
- UOP's class attendance policy, in conjunction with course policies that limited the number of student absences, Ex. C at 82–83;
- UOP's academic residence requirement policy that allows students "the opportunity to take classes on the Stockton campus," Ex. C at 83–86;
- UOP's academic residence requirement policy, which requires students to take a certain number of credits on campus in order to graduate, Ex. C at 83–86;
- UOP's graduation requirements for Bachelor's degrees, which states that "requirements must be completed at Pacific," Ex. C. at 87;
- Course syllabi, which are "written in stone," Ex. C at 64;
- The Parties' prior course of conduct, Ex. C at 95;
- UOP's preference that students live on campus because "[l]iving on campus is central to student life at Pacific." UOP "considers the residential living experience to be an important part of its educational opportunities, and recognizes that living on campus contributes significantly to a student's development and to the learning process." Ex. S at 35.
- The former chair of the bioengineering department stating that all classes would be exclusively in-person, Ex. C. at 40–41; and
- UOP's website, social media, and posters, which contained photos of students attending in-person events, and which encouraged students to get involved by finding "exciting activities and events around campus." Ex. C at 94–95, 102; Opp. at 6–8.

Plaintiff interprets UOP's publications and statements to make it clear that "in-person classes were fundamental aspects of what the University would provide to its students." Opp. at 3. As noted, due to the COVID-19 pandemic, UOP was forced to suspend in-person instruction, discussion sections, seminars, and laboratories, and transition to remote learning for the rest of the Spring 2020 semester. UOP also extended spring break by one week (from March 13, 2020, to

Case No.: 5:20-cv-03196-EJD
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
4

March 23, 2020). *See* Declaration of Dr. Maria Pallavicini in Support of UOP's Motion to Dismiss ("Pallavicini Decl."), Ex. G, Dk. No. 22-1. Ultimately, UOP closed its campus and all campus facilities, including residence halls, for the remainder of the Spring 2020 semester. This was an "unprecedented" and "unforeseen" transition. *Id.*

Plaintiff alleges that UOP and its students "entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant [UOP], in exchange, would provide in-person educational services, experiences, opportunities, and other related services." Third Amended Class Action Complaint ("TAC") ¶ 3, Dkt. No. 68. By transitioning to remote learning, Plaintiff argues that he and putative class members were deprived of the opportunity for collaborative learning, in-person dialogue, feedback, and critique. TAC ¶ 31. Plaintiff thus maintains that he, and other students, were not given the educational services, access, or opportunities that they contracted and paid for. TAC ¶ 28.

The approximate cost of tuition and fees for the Spring 2020 semester was $24,794 for full-time undergraduate students, and $24,687 for full-time graduate students. TAC ¶ 24. At the beginning of the Spring 2020 semester, Plaintiff paid approximately $4,554 in tuition and fees to UOP. TAC ¶ 15. Through this action, Plaintiff seeks individually and on behalf of the putative class, disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online, and campus services ceased being provided. TAC ¶ 33. Defendant moves for summary judgment on the only remaining claim, breach of contract.

## II. LEGAL STANDARD

Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to only one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is sufficient evidence that a reasonable fact finder could find for the nonmoving

Case No.: 5:20-cv-03196-EJD
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
5

party. *Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1072 (N.D. Cal. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)). A fact is "material" if it could change the outcome of the case. *Id.* The Court must read the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Pursuant to Fed. R. Civ. P. 56(c), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, summary judgment is appropriate only if the nonmoving party does not respond, by affidavit or as otherwise provided in Rule 56, with specific facts showing that a genuine issue exists for trial. *See Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1072 (N.D. Cal. 2012). In reviewing the evidence, the Court must "draw all reasonable inferences in the light most favorable to the nonmoving party." *See eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 984 (N.D. Cal. 2019) (citing *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)).

### III. DISCUSSION

To prevail on a breach of contract claim, Plaintiff must allege (1) that a contract existed, (2) that he performed or was excused from performing, (3) that UOP breached the contract, and (4) damages. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *Green Valley Landowners Ass'n v. City of Vallejo*, 241 Cal. App. 4th 425, 433 (2015). Under California law, "[a] contract is either express or implied." Cal. Civ. Code § 1619. The terms of an express contract are stated in words, while the existence and terms of an implied contract are manifested by conduct. Cal. Civ Code §§ 1620, 1621. "The distinction reflects no difference in legal effect but merely in the mode of manifesting assent." *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (citations omitted).

"[T]he basic legal relationship between a student and a private university is contractual in nature." *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 823–24 (2007). A contract

Case No.: 5:20-cv-03196-EJD
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
6

is formed between a student and university when the student matriculates to the university and pays the required fees. *Id.* at 824. Because a formal contract between a student and university is rarely prepared, "the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications; custom and usages can also become specific terms by implications." *Id.* at 828. But not all statements in a university's publications become contractual obligations. *Id.* at 829. To determine whether such statements become part of the contract, the Court looks at the reasonableness of the parties' expectations at the time the contract was formed by looking at the totality of the circumstances. *Id.* at 831–32. "The reasonableness of the student's expectation is measured by the definiteness, specificity, or explicit nature of the representation at issue." *Id.* at 832.

However, "there cannot be a valid, express contract *and* an implied contract, each embracing the same subject matter, existing at the same time." *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975) (emphasis added). "The reason for the rule is simply that where the parties have freely, fairly, and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability and to withdraw from one party benefits for which he has bargained and to which he is entitled." *Id.* Thus, an implied-in-fact contract may only arise if there is no express agreement between the student and the school. *See Kashmiri*, 156 Cal. App. 4th at 827; *see also Flatscher v. Manhattan Sch. of Music*, 551 F. Supp. 3d 273 (S.D.N.Y. 2021) (looking to university catalogs, bulletins, circulars, and regulations for implied contract terms where no express contract existed).

Defendant argues that Plaintiff fails to state a breach of contract claim. Defendant argues it entered into an express agreement with Plaintiff, the SFRA, which controls this dispute. This agreement states:

> I acknowledge that when I register for any courses with the University of the Pacific or receive services or purchase goods, I am responsible for all "charges" as they are posted to my account but are not limited to tuition, fees, room and board, meal plans, Laptop Agreement, bookstore charges and library fees. I further understand and agree that my registration and acceptance of these terms constitutes a promissory note agreement . . . in which the University of the Pacific

Case No.: 5:20-cv-03196-EJD
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
7

|   |   |
|---|---|
| 1 | is providing me educational services, deferring some or all of my payment obligations for those services, and I promise to pay for all assessed tuition, fees, and other associated costs by the published or assigned due date. |
| 2 |   |

Defendant correctly asserts that nowhere in the SFRA did it promise to provide in-person instruction or access to on-campus services. *See* Mot. at 7. Even so, Plaintiff argues that because the SFRA "is not inclusive" of all the terms of the contract, he can rely on promises made in an implied contract. *See* Opp. at 17. Plaintiff uses *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047 (N.D. Cal. 20201) for support. That case is easily distinguishable.

*Nguyen*, like this case, is one of many lawsuits across the nation relating to a university's decision to transition in-person class instruction to online and to close on-campus services in response to the COVID-19 pandemic. 529 F. Supp. 3d at 1052. There, the University had an express Enrollment Agreement with Nguyen that "did [not] promise to provide in-person instruction or access to on-campus services." *Id.* at 1054. However, because the Enrollment Agreement stated that it was only "part of [a student's] contract with the university," the court determined that it was "not inclusive of all terms of the contract." *Id.* at 1054–55. After looking at other marketing materials that promised to provide in-person instruction and access to on-campus services, the court determined that Nguyen and the University had an implied contract *in addition to* the express Enrollment Agreement. *Id.*

In contrast, the SFRA does not contain any language that would allow the Court to find that the Parties had another implied contract. Instead, it is a broad agreement that clearly states that the student is responsible for all billed charges and that the student understands that he or she is receiving educational services in exchange for payment. There is no language that requires those educational services to be in-person. The Court agrees with Defendant that the SFRA governs the Parties' financial relationship with respect to tuition, fees, and refunds, which are the focus of the Complaint. *See* TAC ¶ 1 ("This is a class action lawsuit on behalf of all people who paid *tuition and fees* for the Spring 2020 academic semester at UOP, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for which they *paid*, and/or the services or which their fees were *paid*,

Case No.: 5:20-cv-03196-EJD
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
8

1   without having their *tuition and fees* refunded to them." (emphasis added)). When a student

2   accepts the SFRA prior to registration, the student agrees to pay the tuition and fees that the

3   University assesses, regardless of how the educational services are provided. The SFRA

4   demonstrates a valid written agreement that both Parties voluntarily entered. Thus, this Court

5   holds that the SFRA, and not an implied contract, controls Plaintiff's breach of contract claim.

6   *See Hickey v. Univ. of Pittsburgh*, 535 F. Supp. 3d 372, 378 & n.1 (W.D. Penn. 2021) (collecting

7   cases).

8       Plaintiff has not identified any provision in the SFRA that Defendant allegedly violated.

9   On the contrary, Plaintiff alleges that he received his educational services, but in a virtual

10  environment. Therefore, the Court concludes that Plaintiff has failed to state a breach of contract

11  claim. *See Wal-Noon Corp.*, 45 Cal. App. 3d at 613 ("[T]here cannot be a valid, express contract

12  and an implied contract, each embracing the same subject matter, existing at the same time.").

13      Even if Plaintiff could use an implied-in-fact contract to demonstrate a breach of contract,

14  Plaintiff has not met his burden of demonstrating that the Parties had such a contract. As outlined

15  above, Plaintiff asserts that UOP's websites, promotional materials, course catalogs, and

16  publications established an expectation that students would receive in-person instruction and have

17  access to on-campus spaces in return for their tuition and fees.

18      Plaintiff must offer evidence of a specific, unequivocal promise by UOP that it would

19  provide in-person instruction and services. *Nguyen*, 529 F. Supp. at 1055. He has not met this

20  burden. Plaintiff uses various, vague statements in UOP's promotional materials and course

21  catalogs to demonstrate a specific promise. This is insufficient. *See Kashmiri*, 156 Cal. App. 4th

22  at 829 ("Not all statements in [a university's] publications amount to contractual obligations.").

23  While this Court concluded at the motion to dismiss stage that Plaintiff had sufficiently alleged

24  facts that *could* show a specific promise by Defendant to hold in-person instruction and services,

25  at the summary judgment phase Plaintiff must provide evidence supporting his assertion that

26  Defendant made express promises. Statements in the course catalog about the "days and times"

27  and the "location" of courses are not express promises to provide in-person instruction. *See id.*

28  Case No.: 5:20-cv-03196-EJD
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
9

("As noted, courts have not interpreted general and vague declarations or promises in university publications as creating contractual obligations."); *accord Lindner v. Occidental College*, 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020) ("Plaintiffs have failed to identify any specific language in the 2019-2020 Catalog or any other publication from Occidental that promises in-person instruction."). Although UOP's promotional materials and course catalogs certainly created an expectation that classes would be taught in-person and that students would be able to take advantage of a myriad of on-campus opportunities, these materials do not contain any specific or identifiable promise that is adequate to support a breach of contract, even one implied in fact. *See Hickey*, 535 F. Supp. 3d at 379. Rather, the materials and publications merely describe UOP's on-campus experience, which Plaintiff received until Defendant was required to respond to and comply with California state mandates as a result of the COVID-19 pandemic. *See Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1065–70 (N.D. Cal. 2021).

Accordingly, the Court holds that UOP's publications do not give rise to an implied contract. The materials offered nothing more than a generalized and non-specific impression of typical student life. For this reason, the Court **GRANTS** Defendant's motion for summary judgment.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment. A judgment will follow the posting of this Order, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: May 28, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-03196-EJD
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
10