United States District Court
District of Massachusetts

```
————————————————————————   )
                           )
ALAN THOMAS OMORI and LINFEI YANG, )
individually and on behalf of all  )
others similarly situated,         )
                                   )
           Plaintiffs,             )
                                   )     Civil Action No.
           v.                      )     20-11021-NMG
                                   )
BRANDEIS UNIVERSITY                )
                                   )
           Defendant.              )
————————————————————————   )
```

MEMORANDUM & ORDER

GORTON, J.

This putative class action arises out of the decision by Brandeis University ("Brandeis", "the University" or "defendant") to retain the full tuition and fees collected from students for the Spring, 2020 semester despite closing its on-campus facilities and transitioning from in-person to online learning in response to the COVID-19 pandemic. Plaintiffs Alan T. Omori ("Omori") and Linfei Yang ("Yang") (collectively, "plaintiffs" or "the students") assert that the failure of Brandeis to reimburse students for a purported tuition differential between in-person and online education, as well as for certain fees, constitutes breach of contract and unjust enrichment.

Pending before the Court is defendant's motion for summary judgment on all claims (Docket No. 73).  For the reasons set forth below, that motion will be allowed, in part, and denied, in part.

## I.  **Background**

At the beginning of the Spring, 2020 academic term, plaintiffs were enrolled as full-time undergraduate students at Brandeis University, a private educational institution in Waltham, Massachusetts.  The students had registered and paid for in-person courses, purportedly expecting to receive access to on-campus instruction, facilities and experience.

Prior to the COVID-19 pandemic, Brandeis provided its students with such an on-campus, in-person educational experience and offered only a few online graduate courses.  On March 11, 2020, however, Brandeis announced that all of its classes would be conducted in an online format due to the spread of the novel coronavirus.  Thereafter, Brandeis closed its library and other campus facilities, cancelled all in-person meetings and events, required all non-exempt students to move off campus and declared that remote-only instruction would continue for the remainder of the semester.  It offered students prorated refunds of room and board but declined to refund any tuition or other fees.

In response, plaintiffs, on their own behalf and on behalf of other students, brought this four-count complaint, alleging breach of contract, both express and implied (Counts I & II), unjust enrichment (Count III) and conversion (Count IV).  They seek to recover from Brandeis tuition and fees allegedly paid in consideration for "in-person instruction and use of campus facilities" which were denied to the students during the second half of the Spring, 2020 academic term.

In November, 2020, Brandeis moved to dismiss the complaint for failure to state a claim.  That motion was allowed with respect to Count IV but otherwise denied.  Brandeis now moves for summary judgment on the remaining claims.  Defendants oppose the motion.

## II.   <u>Motion for Summary Judgment</u>

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. Application

Brandeis moves for summary judgment on plaintiffs' claims for breach of contract and unjust enrichment.  The Court will divide its consideration of the breach of contract claims

between tuition refunds and the fees that plaintiffs seek to
have reimbursed and then will address plaintiffs' claim for
unjust enrichment.

### i. Breach of Contract – Tuition

Breach of contract under Massachusetts law requires that

> (1) a valid contract between the parties existed, (2) the
> plaintiff was ready, willing, and able to perform, (3) the
> defendant was in breach of the contract, and (4) the
> plaintiff sustained damages as a result.

In re Bos. Univ. COVID-19 Refund Litig., 511 F. Supp. 3d 20, 23
(D. Mass. 2021) ["In re Boston I"] (quoting Bose Corp. v. Ejaz,
732 F.3d 17, 21 (1st Cir. 2013)).

In the private education context, Massachusetts law has
long recognized "a contractual relationship between the school
and the student," DMP v. Fay School ex rel. Bd. of Trustees, 933
F. Supp. 2d 214, 223 (D. Mass. 2013), the governing terms of
which are often set forth in a combination of handbooks, policy
manuals, brochures and promotional material. Guckenberger v.
Boston Univ., 974 F. Supp. 106, 150 (D. Mass. 1997); see also
Barkhordar v. President & Fellows of Harvard College, 544 F.
Supp. 3d 203, 211 (D. Mass. 2021).  Courts interpreting such
terms

> employ the standard of reasonable expectation—what meaning
> the party making the manifestation, the university, should
> reasonably expect the other party to give it.

Bleiler v. Coll. Of Holy Cross, No. 11-CV-11541, 2013 WL
4714340, at *15 (D. Mass. Aug. 26, 2013) (quoting Schaer v.
Brandeis Univ., 432 Mass. 474, 478, 735 N.E.2d 373, 378 (Mass.
2000)).

Plaintiffs' complaint alleges two claims for breach of
contract: for breach of an express contract and for breach of an
implied contract.  Each pertains to the same conduct, i.e.,
Brandeis' transition to online instruction, and both survived
Brandeis' motion to dismiss.  Plaintiffs have not, however,
opposed summary judgment as to the claim for breach of express
contract.  The Court considers that claim abandoned and,
discerning no plausible grounds for such breach, will enter
summary judgment in favor of Brandeis on it. Cordi-Allen v.
Halloran, 470 F.3d 25, 28 (1st Cir. 2006).  Accordingly, the
Court will address only whether a reasonable jury could find
breach of an implied contract for an in-person education.

## 1. Preclusion of Implied Contract

The law in many states, Massachusetts included, recognizes
that the terms of education contracts may be implied in fact.
See, e.g., Durbeck v. Suffolk Univ., 547 F. Supp. 3d 133, 145
(D. Mass. 2021) (explaining that an implied-in-fact contract can
derive from representations viewed in context with plaintiffs'
payment of fees and tuition); Ninivaggi v. Univ. of Delaware,

555 F. Supp. 3d 44, 47 (D. Del. 2021) (observing that "[h]igher
education involves lots of money but surprisingly few express
contracts").  A contractual term will not be implied, however,
where there is "an existing express contract covering the same
subject matter." CSX Transp., Inc. v. Mass. Bay Transp. Auth.,
697 F. Supp. 2d 213, 224 (D. Mass. 2010) (quoting Zarum v. Brass
Mill Materials Corp., 334 Mass. 81, 85, 134 N.E.2d 141, 143
(Mass. 1956)).

Brandeis contends that it entered into express contracts
with each of the plaintiff students that govern tuition refunds
and preclude implied rights or obligations as to in-person
instruction and campus access.  To that end, it directs the
Court to a financial responsibility agreement ("the FRA") and
the university's tuition refund schedule ("the Schedule")
incorporated by reference therein.

The FRA provides, in relevant part, that the signatory
students

> understand that when [they] register for any class at
> Brandeis University or receive any service from Brandeis
> University [they] accept full responsibility to pay all
> tuition, fees and other associated costs assessed as a
> result of [their] registration and/or receipt of services.

Docket No. 75, ¶ 35.  The FRA further provides that the students

> understand and agree that if [they] drop or withdraw from
> some or all of the classes for which [they] register,
> [they] will be responsible for paying all or a portion of
> tuition and fees in accordance with the published tuition

refund schedule . . . . as well as all other applicable charges (e.g., room and board).

Id.

The Schedule sets forth tuition refunds for the 2019-20 academic year, which decline as the semester progresses, in the event of "approved or required leaves, withdrawals, suspensions or dismissals[.]" Id., ¶ 37 (culminating in no refund after "the fifth Friday following the opening day of instruction"). The Schedule also provides that "[t]here is no refund of any other fee on or after the first day of instruction of either semester". Id., ¶ 38.

Although the FRA and the Schedule contain express terms regarding certain matters related to tuition and fees, neither is dispositive as to whether Brandeis had an obligation to refund plaintiffs upon ceasing to provide an in-person education to them. The documents instead address the obligation of a student to pay full tuition and fees for the services they receive and the obligation of the University to provide reimbursement, full or partial, in the event of a student's approved withdrawal from the University.

Zhao v. CIEE Inc., 3 F.4th 1, 2021 U.S. App. LEXIS 19170 (1st Cir. June 28, 2021), which Brandeis cites in support of its preclusion argument, is inapplicable. Zhao arose from the mid-semester adaptation of a traditional study-abroad program into

-8-

an online substitute due to the COVID-19 pandemic.  In Zhao, the
First Circuit Court of Appeals ("the First Circuit") held that
petitioner, a student who had participated in the program, was
not entitled to a refund of tuition.  The operative agreement
divested defendant of any obligation to refund tuition in the
event that a program was canceled during the semester due to an
emergency.  The defendant was instead required to "make
reasonable efforts to make alternative arrangements" for the
students to complete their work. Id. at *6.  Thus, in contrast
to the material Brandeis proffers here, the express agreement in
Zhao unambiguously addressed the proper remedy for a mid-
semester cancellation due to an emergency.

    In a more analogous case, another session of this court
rejected a nearly identical argument made by Northeastern
University. Chong v. Northeastern Univ., Nos. 20-10844, 20-
10946, 2021 WL 1857341 (D. Mass. May 10, 2021).  Northeastern,
like Brandeis, transitioned to online education in March, 2020,
on account of the COVID-19 pandemic.  Northeastern students,
similar to Brandeis students, signed a Student Financial
Responsibility Agreement which incorporated a tuition schedule.
In Chong, Northeastern argued that the tuition schedule, which
also purported to limit the refund available to a student who
withdrew from the university, divested it of responsibility to
issue refunds arising out of its March, 2020 transition to

online education.  The Court rejected that argument as
"irrelevant" because none of the plaintiffs withdrew from
Northeastern in the Spring semester of 2020. Id. at *3 n.3.

Such is the case here.  Neither plaintiff withdrew from
Brandeis and they do not complain of any failure on the part of
the University to refund their tuition in connection with an
approved withdrawal.  Rather, they complain about conduct that
was not addressed by the FRA or the Schedule: retention of full
tuition and fees after Brandeis transitioned to online
instruction.  Thus, neither the FRA nor the Schedule constitute
an express agreement precluding the implied contract that
plaintiffs assert.

### 2. Implied Contract

Because neither the FRA nor the Schedule preclude an
implied right to an in-person education, the Court considers
whether such a guarantee may be implied by the parties'
contractual agreement.  For the following reasons, the Court
determines that this issue presents a genuine dispute of
material fact for a jury to resolve.

An implied-in-fact contract requires the same elements as
an express contract but differs in the manner of expressing
assent. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics,
Inc., 412 F.3d 215, 230 (1st Cir. 2005) ["QLT I"].  Unlike an
express contract, in which manifestation of mutual assent is

-10-

established by words, an implied contract may be found to exist
from the conduct and relationship of the parties. Durbeck, 547
F. Supp. 3d at 145 (citing Squeri v. Mount Ida Coll., 954 F.3d
56, 71 (1st Cir. 2020)).  The plaintiff must state with
"substantial certainty" the facts that demonstrate the existence
of a contract and its legal effect. Id. (quoting Squeri, 547 F.
Supp. 3d at 71).

Plaintiffs contend that Brandeis represented through its
website, brochures, admissions materials, handbooks and other
publications that students would receive various in-person
experiences and on-campus benefits in return for their tuition.
They assert that the university should have reasonably expected
those representations would be taken as a promise of in-person
instruction and access to on-campus facilities.

In its memorandum in support of its motion for summary
judgment, Brandeis argues that 1) its promotional statements
were too generalized and aspirational to create an implied
contract, 2) reasonable students could not interpret the mere
existence of online graduate programs as a promise that
undergraduate education would remain exclusively in-person and
3) the designation of campus meeting places in Spring, 2020
course listings was insignificant because the University
frequently changed class locations and meeting times after
registration.

Plaintiffs respond that the University's promotional statements and material specifically refer to, inter alia, "unprecedented access to important, cutting-edge, hands-on research opportunities" and elsewhere represent that "[l]ibrary privileges and use of athletic facilities" will be provided in return for a student's payment of tuition.

The fact that Brandeis offered both in-person and online graduate programs, but only in-person undergraduate programs, could allow a jury to infer that Brandeis reasonably expected plaintiffs (both undergraduates) had paid tuition in exchange for in-person instruction.  Finally, although classes might be moved with some frequency from one meeting place to another, a jury could find that this did not disturb a reasonable expectation that plaintiffs paid tuition in anticipation of classes meeting in-person somewhere on campus.

Viewed in its totality, the evidence cited by plaintiffs creates a genuine dispute of material fact as to whether they had an implied contractual right to an in-person education in exchange for tuition.

### 3. Reservation of Discretion

A disclaimer in an academic catalog or similar material "may excuse [a] university from a specific promise that would otherwise" bind it. Durbeck, 547 F. Supp. 3d at 147 (quoting Deen v. New Sch. Univ., No. 05-CV-7174, 2007 U.S. Dist. LEXIS

-12-

25295 (S.D.N.Y. Mar. 27, 2007)).  Brandeis points to several
provisions in the Brandeis University Bulletin ("the Bulletin")
and the rights and responsibilities handbook ("the Handbook")
that purportedly reserve to it unilateral discretion to switch
from in-person to online instruction, thereby rendering any
implied promise of an in-person education illusory.

The Bulletin provides that Brandeis may "make any changes
in course offerings without prior notice." Docket No. 75, ¶ 45.
In turn, the Handbook states that Brandeis "reserves the right"
to remove students from university housing or to reassign
students to different housing locations. Id., ¶ 46.  As to
campus facilities, the Handbook provides that they

> may not be used for activities contrary to federal, state,
> or local laws, activities conflicting with University
> regulations or policies, or activities that may create an
> undue risk of harm to persons or property

and that Brandeis "reserves the right to determine the time,
place, and manner of any event". Id., ¶ 47.

Brandeis also cites the Chong case, discussed above, in
support of its purported reservation of discretion. 2021 WL
1857341, at *5.  The "clarity of th[e] language" found to
reserve university discretion in Chong was, however, far more
compelling and germane than the language that Brandeis relies on
here.  Northeastern University reserved the right,

> whenever necessary or desirable . . . without limitation,
> [to make] changes in course content and class schedule, the

-13-

cancellation of scheduled classes and other academic
activities, and the substitution of alternatives for
scheduled classes and other academic activities.

Id. Northeastern specifically disclaimed liability in the event
of "delay or failure to provide educational or other services or
facilities due to causes beyond its reasonable control." Id.

Plaintiffs rejoin that Brandeis' proffered terms are
insufficient to reserve the discretion it claims and cite
several out-of-circuit cases, including Shaffer v. Geo. Wash.
Univ., 27 F.4th 754, 765 (D.C. Cir. 2022) and Ninivaggi, 555 F.
Supp. 3d at 52, in which courts have held that disclaimers
lacking a force majeure clause or other language addressing
emergencies did not allow universities unilaterally to
transition from in-person to online instruction at the beginning
of the COVID-19 pandemic.

This Court agrees with the logic of the cases cited by
plaintiffs and concludes that Brandeis' materials do not support
its claimed discretion to shift all instruction online, without
consequence, in the event of a public health emergency.  It
would be unreasonable to construe the inapposite and limited
provisions identified by Brandeis so broadly as to allow it to
alter the character of its core educational offerings so
fundamentally. See, e.g., Montesano v. Catholic Univ. of Am.,
548 F. Supp. 3d 6, 10-11 (D.D.C. 2021) (collecting cases).

### 4. Measure of Contract Damages

Brandeis insists that, in any event, plaintiffs will be unable to prove damages for any breach of contract they allege. Plaintiffs respond that they can prove damages by calculating the difference between the amount of tuition they paid in expectation of an in-person education and the value of the online instruction they ultimately received.  Plaintiffs would then prorate that difference to reflect the portion of the semester during which they received online instruction.

Although plaintiffs may attempt to prove damages in that fashion, their calculation cannot be grounded in a subjective assessment that the quality of online instruction is somehow less than that of in-person instruction. See Durbeck, 547 F. Supp. 3d at 139-42 (collecting cases) (describing the application of the educational malpractice doctrine to similar claims).  Instead, any purported difference in value between the performance allegedly promised and the performance actually rendered must be supported by objective evidence.

For instance, plaintiffs may be able to show that Brandeis priced similar degrees or courses differently depending on whether they were offered in-person or online.  Brandeis did not offer online undergraduate courses prior to the pandemic but it did offer certain graduate degree programs online.  Plaintiffs may, therefore, be able to calculate a difference in value based

-15-

upon the relative cost of those graduate degrees that were offered both in-person and online.  See In re Bos. Univ. COVID-19 Refund Litig., No. 20-CV-10827, 2022 WL 3154670, at *4 (D. Mass. Aug. 8, 2022) ["In re Boston II"].

To the extent that plaintiffs are able to establish a consistent difference in cost, they could then apply that differential to the undergraduate program in which they participated.  See, e.g., In re Suffolk Univ. Covid Refund Litig., No. 20-CV-10985, 2022 WL 2713732, at *2 (D. Mass. July 13, 2022) (noting the possibility of a similar approach if plaintiffs were "able to demonstrate its appropriateness").  Because the educational malpractice doctrine precludes consideration of educational quality, plaintiffs may not compare the cost of an in-person Brandeis education to potentially inapposite online instruction at another university.  Id.

### 5. Impossibility

Finally, Brandeis contends that any breach-of-contract claim is nevertheless barred by the impossibility of performance due to the COVID-19 pandemic and the "shutdown order" issued by the Governor of the Commonwealth.

Impossibility excuses performance of contractual obligations where the parties to a contract assume "the continued existence of some particular specified thing" and performance under the agreement becomes impossible due to the

-16-

disappearance or destruction "of the thing without the fault of either party." Chase Precast Corp. v. John J. Paonessa Co., Inc., 409 Mass. 371, 566 N.E.2d 603, 605 (Mass. 1991) (citation omitted).  The "companion rule" of frustration of purpose excuses performance that remains possible if "the expected value of performance to the party seeking to be excused has been destroyed" by the supervening event. Id. at 606 (citation omitted).  The principal question at issue under either doctrine is

> whether an unanticipated circumstance, the risk of which should not fairly be thrown on the promisor, has made performance vitally different from what was reasonably to be expected.

Id. at 604 (citation omitted).

If a jury were to find that the students had an implied contractual right to an in-person education, the question of whether the affirmative defense of impossibility (or frustration) excuses Brandeis' obligation to provide such an education would also be for the jury to decide. See id. at 606 (holding that whether a contract allocates the risk of non-performance "is a question for the trier of fact"); In re Boston II, 2022 WL 3154670, at *4 n.6 (holding that impossibility and frustration of purpose "are affirmative defenses for the jury to decide" under Massachusetts law).

-17-

Even if impossibility and/or frustration of purpose were to excuse Brandeis' non-performance, the doctrines forgive performance by both parties to a contract.  If one party has performed, as the plaintiffs here did by paying full tuition, the non-performing party may owe it restitution.  See Restatement (Second) of Contracts § 377, cmt. A ("[I]n cases of impracticability or frustration the other party is also ordinarily relieved of any obligation [to perform] . . . [and] is also entitled to restitution.").  Brandeis contends, however, that restitution is unavailable as a matter of law because it committed only a partial breach for which plaintiffs accepted substitute performance.

Brandeis is correct to the extent it asserts that restitution of full tuition is unavailable to plaintiffs. Plaintiffs were not, however, required to decline virtual classes and forego the possibility of any course credit when Brandeis stopped offering in-person education.  Rather, in light of the full tuition paid by plaintiffs and the partial in-person instruction provided by Brandeis, plaintiffs may be entitled to restitution of the difference between the amount of tuition paid and the objective value of the online education they ultimately received.  See Restatement (Second) of Contracts § 377; In re Boston II, 2022 WL 3154670, at *4 and n.6 (noting that "an impossibility defense only excuses performance, not repayment").

-18-

Determination of that difference would be subject to the same principles and limitations as discussed above in Section II.B.i.4.

### ii. Breach of Contract – Fees

For the reasons discussed previously with respect to tuition, the Court concludes that neither the FRA and Schedule nor the Bulletin and Handbook preclude the existence of a non-illusory, implied promise of in-person education in return for fees.  That does not, however, end the inquiry.

Plaintiffs refer generally to unidentified fees, including fees paid by other persons, but the parties identify only four fees that plaintiffs paid.  It is undisputed that one of those fees – the Processing Fee – is a mandatory fee charged to international students and used for immigration processing services.  There is no plausible allegation that Brandeis breached a contractual duty to provide such services.

Two of the other fees – the Undergraduate Fee and Senior Program Fee – are mandatory fees described in general terms. Apart from references to context and the parties' course of conduct, plaintiffs present no specific factual allegations in support of their subjective expectations that those fees were paid in consideration for in-person services or access to campus facilities. See Shaffer, 27 F.4th at 766-67 (holding that fees

-19-

not tied "to the provision of on-campus services, activities, and programs" could not be recovered under plaintiffs' claim for breach of contract).

It is undisputed that the fourth fee – the Studio Fee – was a "course-specific fee" paid, in this instance, in connection with a studio arts class.  It is reasonable to infer that students who paid a Studio Fee for a particular course would have expected to receive in-person services in return.  As a result, there is a genuine dispute of material fact as to whether Brandeis had and/or breached any contractual obligations with respect to that fee.

Thus, Brandeis' motion for summary judgment will be allowed as to the Processing Fee, the Undergraduate Fee and the Senior Program fee but will be denied as to the Studio Fee.

### iii. Unjust Enrichment

Under Massachusetts law, a plaintiff may recover for unjust enrichment upon a showing that 1) she conferred a benefit upon the defendant, 2) the defendant accepted that benefit and 3) the defendant's retention of the benefit would be inequitable without payment for its value. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) ["QLT II"].  Unjust enrichment is an equitable remedy which may serve as a "stopgap" for inadequacies in remedies at law by mandating

that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." QLT I, 412 F.3d at 234 (citing Fox v. F & J Gattozzi Corp., 672 N.E.2d 547, 552 (Mass. App. Ct. 1996)); see also Durbeck, 547 F. Supp. 3d at 149.

A plaintiff cannot state a claim for unjust enrichment if he or she has an adequate remedy at law. Watkins v. Omni Life Sci., Inc., 692 F. Supp. 2d 170, 179 (D. Mass. 2010). An adequate remedy need not be a prevailing or viable one, and a plaintiff may not pivot to a claim for unjust enrichment in the event that its disputed claims under a valid contract prove unsuccessful. See Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017) (holding that the "availability of a remedy at law, not the viability of that remedy," precludes a claim for unjust enrichment).

In this case, the parties hold divergent positions on the particular legal effect of the materials that comprise an implied contract between them. Plaintiffs contend that the dispute renders summary judgment on their claim for unjust enrichment premature. In support of their argument, plaintiffs cite cases decided at the motion to dismiss stage and cases in which the court found that "no contract exists," QLT I, 412 F.3d at 230, or that the contract may "not contain an essential term

. . . ." <u>Sentinel Prod. Corp.</u> v. <u>Mobile Chem. Co.</u>, No. 98-CV-11782, 2001 WL 92272, at *1 (D. Mass. Jan. 17, 2001).

The parties do not, however, dispute the existence of a contract that governs the relevant aspects of their university-student relationship here.  Consequently, plaintiffs have an adequate remedy at law even though the ultimate resolution of their claim for breach of contract remains uncertain.  <u>See</u> <u>In re Boston II</u>, 2022 WL 3154670, at *5; <u>Holmes</u> v. <u>University of Massachusetts</u>, No. 2084-CV-01025-B, 2022 WL 4134020, at *8-9 (Mass. Super. Aug. 23, 2022).  Thus, the University's motion for summary judgment on the claim for unjust enrichment will be allowed.

**ORDER**

For the foregoing reasons, Brandeis' motion for summary judgment is:

1) as to Claim I (breach of express contract) and Claim III (unjust enrichment), **ALLOWED;**

2) as to the Processing Fee, the Undergraduate Fee and the Senior Program Fee at issue in Claim II (breach of implied contract), **ALLOWED;** but

3) as to the tuition and Studio Fee at issue in Claim II, **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  October 18, 2022

-23-