# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALAN THOMAS OMORI and LINFEI YANG, individually and on behalf of all others similarly situated, | No. 1:20-cv-11021-NMG |
| Plaintiffs, | District Judge Nathaniel M. Gorton |
| v. |  |
| BRANDEIS UNIVERSITY, |  |
| Defendant. |  |

## PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF REQUEST FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND OF COMMON EVIDENCE ...................................2

      A.      Common evidence confirms that Brandeis created a reasonable expectation of in-person, on-campus instruction and experiences. .......................................................2

            1.      The typical Brandeis experience centers on in-person education. ...............2

            2.      Brandeis' own communications and publications confirm that it intended to provide Plaintiffs and the Class with an in-person, on-campus experience. .................................................................................................3

      B.      Common evidence reflects that Plaintiffs (and Class Members) performed their material obligations under the contract. ...................................................................5

      C.      Common evidence reflects that Brandeis breached the parties' bargain to provide in-person education and experiences. ..........................................................................6

      D.      Common evidence regarding Brandeis' Studio Fee. .................................................7

      E.      Damages will be proven utilizing a common methodology that is tied to Plaintiffs' legal theories. .........................................................................................8

      F.      Plaintiffs' experiences are representative of the Class Members' experiences. .......8

III.    CLASSES TO BE CERTIFIED..............................................................................9

IV.     STANDARD OF REVIEW .....................................................................................9

V.      ARGUMENT ........................................................................................................10

      A.      The Classes are ascertainable, with membership based on objective factors. .......10

      B.      Plaintiffs satisfy Rule 23(a)'s requirements............................................................10

            1.      Numerosity: with thousands of Class Members, joinder is impracticable.10

            2.      Commonality: commonality exists given numerous common questions and Brandeis' standard conduct to its student body. .........................................11

            3.      Typicality: Plaintiffs' interests align with Class Members' interests. .......12

4. Adequacy: Plaintiffs will fairly and adequately protect the interests of the Classes because they have no conflicts of interest and are represented by experienced counsel. ...................................................................................13

C. Plaintiffs satisfy the prerequisites of Rule 23(b)(3). ..............................................14

1. Common issues predominate. ...................................................................14

a. Common evidence and legal theories establish predominance.......15

b. Damages will be calculated using common methodologies. .........17

2. Class treatment is superior to thousands of individual adjudications. .......18

VI. CONCLUSION..............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander v. Florida Intern. University Bd. of Trustees*,
    No. 2021-009869-CA-01 (44), 2021 WL 9038526 (Fla. Cir. Ct. Dec. 30,
    2021) ...............................................................................................1, 10, 17, 19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................................9, 14

*Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*,
    568 U.S. 455 (2013)................................................................................................14

*Arredondo v. Univ. of La Verne*,
    341 F.R.D. 47 (C.D. Cal. 2022) ........................................................1, 13, 15, 17

*Booth v. Molloy Coll.*,
    Decision and Order, Index No. 608750/2020 (N.Y. Sup. Ct. Dec. 13, 2022) .........................2

*In re Boston Sci. Corp. Sec. Litig.*,
    604 F. Supp. 2d 275 (D. Mass. 2009) .......................................................................18

*Doe v. Brandeis Univ.*,
    177 F. Supp. 3d 561 (D. Mass. 2016) .......................................................................16

*Donovan v. Philip Morris USA, Inc.*,
    268 F.R.D. 1 (D. Mass. 2010)....................................................................10, 11, 14

*Eddlemon v. Bradley Univ.*,
    No. 1:20-cv-01264, 2022 WL 3227865 (C.D. Ill. July 22, 2022) ...........1, 12, 15, 19

*Garcia v. E.J. Amusements of New Hampshire, Inc.*,
    98 F. Supp. 3d 277 (D. Mass. 2015) ...................................................................12, 15

*Garcia-Rubiera v. Calderon*,
    570 F. 3d 443 (1st Cir. 2009) ............................................................................10, 11

*Gintis v. Bouchard Transp. Co., Inc.*,
    596 F.3d 64 (1st Cir. 2010)........................................................................................18

*Gonzalez v. XPO Last Mile, Inc.*,
    No. 1:19-cv-10290-TSH, 2022 WL 95930 (D. Mass. Jan. 10, 2022)....................12

*Guckenberger v. Boston Univ.*,
    974 F. Supp. 106 (D. Mass. 1997) ...........................................................................17

*Hebert v. Vantage Travel Service, Inc.*,
   334 F.R.D. 362 (D. Mass. 2019)................................................................13

*Little v. Grand Canyon Univ.*,
   No. CV-20-00795-PHX-SMB, 2022 WL 266726 (D. Ariz. Jan. 28, 2022) ................... *passim*

*In re McKesson Governmental Entities Average Wholesale Price Litig.*,
   767 F. Supp. 2d 263 (D. Mass. 2011) ......................................................11

*Muniz v. XPO Last Mile, Inc.*,
   342 F.R.D. 189 (D. Mass. 2022)................................................................15

*Overka v. Amer. Airlines, Inc.*,
   265 F.R.D. 14 (D. Mass. 2010)..........................................................11, 12

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003)........................................................................17

*In re Solodyn Antitrust Litig.*,
   No. 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017) ...........................18

*Staubus v. Regents of Univ. of Minnesota*,
   No. 27-cv-20-8546 (Minn. Dist. Ct. Nov. 9, 2022) .........................................2

*Tardiff v. Knox Cnty.*,
   365 F.3d 1 (1st Cir. 2004).........................................................................15

*Tyson Foods Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)...................................................................................14

*Vargas v. Spirit Delivery & Distrib. Servs., Inc.*,
   245 F. Supp. 3d 268 (D. Mass. 2017) .....................................................14, 18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...................................................................................10

### OTHER AUTHORITIES

Fed. R. Civ. P. 23 ...................................................................................10, 13

Fed. R. Civ. P. 23(a) ...............................................................................9, 10

Fed. R. Civ. P. 23(a)(1) .........................................................................10, 11

Fed. R. Civ. P. 23(a)(2) .............................................................................11

Fed. R. Civ. P. 23(a)(3) .............................................................................12

Fed. R. Civ. P. 23(a)(4) .............................................................................13

Fed. R. Civ. P. 23(b) ..................................................................................................18

Fed. R. Civ. P. 23(b)(1), (2) ........................................................................................9

Fed. R. Civ. P. 23(b)(3).....................................................................................14, 18, 19

Fed. R. Civ. P. 23(c)(1) ..............................................................................................19

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................19

Fed. R. Civ. P. 23(g) ..................................................................................................19

Mass. Superior Court Civil Practice Jury Instructions, § 14.1........................................15

## I.   INTRODUCTION

This case arises out of the decision by Brandeis University ("Brandeis" or "the university") to keep the full tuition and fees collected from students for the Spring 2020 semester despite closing its on-campus facilities and transitioning from in-person to online learning in response to the COVID-19 pandemic. Plaintiffs Alan T. Omori ("Omori") and Linfei Yang ("Yang") (collectively "Plaintiffs") assert that Brandeis' complete transition from an in-person experience to an online one and failure to provide refunds thereafter for tuition and certain fees, constitutes a breach of contract.

First, students entered into the same implied contract with Brandeis, to be proven by the uniform conduct and relationship of the parties. Brandeis' common representations to students during the registration and billing processes for the Spring 2020 semester created an implied contractual term that obligated Brandeis to provide an in-person education and access to campus facilities and in-person resources for that semester. Second, Brandeis breached that implied contract, with the conduct alleged as Brandeis' breach was the same for all students: Brandeis closed its campus and did not provide students with the bargained for in-person education and campus access. Whether this conduct was a breach with students is a classwide question and answered through classwide evidence. Last, the facts of injury and damages are class-wide issues too. When Brandeis stopped providing in-person education and access to campus resources, it caused Plaintiffs and the proposed Classes the same injury—all students stopped getting what they paid for and reasonably expected to receive when the enrolled at Brandeis.

This case is well-suited for classwide resolution. Under nearly identical circumstances, other courts around the country have readily held that class treatment is appropriate for cases such as this: *See, e.g.*, *Arredondo v. Univ. of La Verne*, 341 F.R.D. 47 (C.D. Cal. 2022); *Eddlemon v. Bradley Univ.*, No. 1:20-cv-01264, 2022 WL 3227865 (C.D. Ill. July 22, 2022); *Alexander v.*

*Florida Intern. University Bd. of Trustees*, No. 2021-009869-CA-01 (44), 2021 WL 9038526 (Fla.

Cir. Ct. Dec. 30, 2021); Ex. 23[1] *Booth v. Molloy Coll.*, Decision and Order, Index No. 608750/2020

(N.Y. Sup. Ct. Dec. 13, 2022); *Little v. Grand Canyon Univ.*, No. CV-20-00795-PHX-SMB, 2022

WL 266726 (D. Ariz. Jan. 28, 2022); and Ex. 24 *Staubus v. Regents of Univ. of Minnesota*, No.

27-cv-20-8546 (Minn. Dist. Ct. Nov. 9, 2022). The Court should grant Plaintiffs' Motion for Class

Certification.

**II.     FACTUAL BACKGROUND OF COMMON EVIDENCE**

**A.     Common evidence confirms that Brandeis created a reasonable expectation of in-person, on-campus instruction and experiences.**

**1.     The typical Brandeis experience centers on in-person education.**

Founded in 1948, Brandeis has an enrollment of approximately 5,800 students across a

variety of undergraduate and graduate areas of study. Def. Ans. to Consol. Compl. ("Answer") ¶

19 (ECF 55). Since its founding, Brandeis has predominantly provided students with an on-campus, in-person educational experience. *Id.* ¶ 20. Also, Brandeis is a residential university where

78 percent of students live on campus all four years. *Id.* ¶ 28. So, while many schools nationwide

offer (and highlight) remote learning capabilities to deliver education, Brandeis is not such a

school. Rather, Brandeis is foremost an in-person educational institution, with only limited

students enrolled virtually. Reflecting this reality, Brandeis annually reports its enrollment figures

to the U.S. Department of Education. *See generally* Ex. 1. For the 2019–2020 school year's Fall

Enrollment 2019, Brandeis reported that ***zero*** undergraduate students and 339 graduate students

were "**Enrolled** *exclusively* **in** <u>**distance education courses**</u>" with 3,675 undergraduate students

---

[1] All references to "Ex. __" are exhibits to the Declaration of Blake G. Abbott ("Abbott Decl.") filed contemporaneously herewith.

and 1,760 graduate students as "*Not enrolled* **in any distance education courses**." *Id*. (emphases in original).

### 2. Brandeis' own communications and publications confirm that it intended to provide Plaintiffs and the Class with an in-person, on-campus experience.

Before students were even admitted to the university, Brandeis promoted its campus. Brandeis' admissions office communications laid the foundation. *See, e.g.*, Ex. 2 (BRANDEIS-00018843 at 19276) ("We all know that websites and brochures can only offer a mere glimpse of what it is like on a college campus. Make our campus come alive by attending a Fall for Brandeis Day to get the full Brandeis experience."); *id*. at 19286 ("Here at Brandeis, we care about your future, which is why we want to give you a snapshot of where you could be one year from now. Last week, members of the Class of 2022 moved to campus and began their orientation programming. Ready to start their collegiate journeys, our new students said goodbye to their families and jumped right into campus culture."); *id*. at 18849 ("That sense of community you get when you step foot on campus allows students to form close, lasting relationships with professors and fellow students while still providing undergraduates with the opportunities and resources akin to a larger university."); *id*. at 18919 ("We are excited to have you join us on campus."); *id*. at 18973 ("As you finalize your decision, consider what you can expect from a Brandeis experience. At Brandeis, you don't have to choose between academic and extracurricular passions.").

Consistent with its pre-admissions descriptions of the on-campus experience that students could expect, when offering admission to students, Brandeis continued to emphasize an on-campus experience. *See, e.g.*, Ex. 3 (BRANDEIS-00000219) (admissions offer letter template for class arriving in Fall 2018: "When you come to Brandeis, you will be part of a truly distinctive campus community. There is a special energy here . . . I look forward to seeing you on campus . . . ."); Ex. 4 (BRANDEIS-00000217) (admissions offer letter template for class arriving in Fall 2019: "When

you come to Brandeis, you will be part of a truly distinctive campus community. There is a special energy here . . . I look forward to seeing you on campus . . . .").[2]

Once enrolled, Brandeis did not stop communicating to students that they would receive an on-campus, in-person educational experience. A variety of non-exclusive examples follow. Brandeis' University Bulletin repeatedly reflects that the parties' bargained for in-person instruction and experiences. As Brandeis described, the educational experience it offered students for the 2019–2020 school year:

> Brandeis is a research university and a liberal arts college. As a research university, we are committed to the creation of new knowledge; as a small liberal arts college, we are committed to intense intellectual engagement of faculty with the students. ***In the classroom, laboratory and the studio***, these two aspects come together and are further enriched through the multitude of centers, institutes and other academic resources ***on campus***.

University Bulletin (2019–2020) at ECF 20-3, p. 25 of 142 (emphases added). Echoing its admissions materials, as the Bulletin lays out, courses provided on-campus routinely offer students education and experience only available through on-campus, in-person instruction. For example, the Bulletin's descriptions for on-campus courses refer to: "hands-on experience,"[3] "hands-on exposure,"[4] "experiential learning,"[5] access to "state-of-the-art studios,"[6] "practical experience" in laboratory courses,[7] and dozens of other references to benefits exclusive to on campus instruction. *See generally* Compl. Ex. D. Also, Brandeis' course listings reflected the bargained for on-campus

---

[2] By contrast, in its template admissions letter to its first post-COVID-19 entering class arriving for Fall 2020, Brandeis removed such references. *See* Ex. 5 BRANDEIS-00000215.

[3] Compl. Ex. D; Compl. ¶ 38 fn.15.

[4] Compl. Ex. D; Compl. ¶ 38 fn.16.

[5] Compl. Ex. C; Compl. ¶ 38 fn.17.

[6] Compl. Ex. D; Compl. ¶ 38 fn.18.

[7] Compl. Ex. D; Compl. ¶ 38 fn.19.

classes, with Spring 2020 classes offered in-person at specific locations on campus.[8]

Likewise, in its 2019–2020 Rights and Responsibilities handbook, Brandies categorized students as enrolled in courses or programs "on campus" or "Internet-based." Ex. 6 (BRANDEIS-00000080 at 82). That same handbook further confirmed in-person access and experiences, indicating that Brandeis students would be able to "[u]tilize the University Identification Card exclusively for the student's own use in obtaining University services and privileges." *Id.* at 88. Brandeis self-described such services and privileges as specifically including in-person access. Ex. 7.

Finally, common evidence supporting the argument that the parties bargained for delivery of in-person education and experiences comes from the common fact that from the start of the Spring 2020 term through no later than March 20, 2020, Brandeis actually held in-person classes and provided in-person experiences. *See* Ex. 8 (Omori Affidavit ¶ 9); Ex. 9 (Yang Affidavit ¶ 9).

**B.    Common evidence reflects that Plaintiffs (and Class Members) performed their material obligations under the contract.**

Next, Plaintiffs will invoke common evidence to show that they and putative Class Members performed their material obligations under their contract with Brandeis. Plaintiffs' key obligations under their contract with Brandeis required them to be: (1) in good financial and (2) good academic standing at Brandeis. Here, Brandeis' policies and financial forms uniformly required Plaintiffs and Class Members pay tuition to enroll in classes at the university, while simultaneously confirming that tuition payments by Plaintiffs and Class Members included a campus component:

> Payment of tuition and other fees is due on August 2, 2019, for the
> fall semester and December 13, 2019, for the spring semester. Any

---

[8] Compl. Ex. A; Compl. ¶ 36 fn.13; *see also* Compl. Ex. B; Compl. ¶ 36 fn.13.

> student with outstanding financial obligations will be denied the
> privileges of attending classes and using university facilities.

University Bulletin (2019–2020) at ECF 20-3, p. 79 of 142 (emphasis added). Further common

evidence that Plaintiffs and Class Members paid all bills and remained in good academic standing

rests within Brandeis' financial transaction and graduation records. As to these facts, Brandeis'

student financial records system confirms Class Members—like Plaintiffs—paid Brandeis all

billed amounts for Spring 2020. And further confirmation that Plaintiffs and students met all non-

financial academic expectations of them can be found in Brandeis' own graduation records,

including the fact that both Plaintiffs graduated and received their degrees in May 2020. Pls.' Resp.

Def. SOF and CSOF ¶ 17 [ECF 86].

## C.   Common evidence reflects that Brandeis breached the parties' bargain to provide in-person education and experiences.

Next, Plaintiffs will use common evidence to prove Brandeis' breach of contract for in-

person education/experiences. While the parties may dispute whether they bargained for in-person

education/experiences (itself an issue capable of classwide resolution, regardless of the answer),

what remains undisputed is that Brandeis stopped providing in-person education/experiences after

March 20, 2020. Brandeis admits that "on or about March 11, 2020, Brandeis decided to migrate

all, or substantially all, classes online. Larger lectures were moved online on March 16, 2020 and

all courses would transition online after March 20, 2020 and be conducted online for the remainder

of the Spring 2020 semester." Compl. ¶ 4; Answer ¶ 4 (Admitted). On top of Brandeis' admissions,

further evidence of Brandeis' breach rests with its uniform decision to deny students any partial

tuition discounts, reimbursements, or refunds. Brandeis maintained the same policy equally

applicable to Plaintiffs and all Class Members: *no tuition discounts, reimbursements, or refunds*.

As Brandeis communicated its policy no later than April 6, 2020: "tuition will not be refunded for

the spring semester." Ex. 10; *see also* Answer ¶ 82 ("Defendant admits that its campus was closed

for most students in Spring 2020 and that it has not offered tuition or fee refunds to students for

that semester . . . ."); Ex. 11 (BRANDEIS-00019709 at 19710) ("While Brandeis has made refunds

for unused room and board, the university will not make refunds for spring tuition (see the

complete answer on the Brandeis COVID-19 FAQs).").

Confirming the departure from reasonable student expectations at Brandeis, on March 11,

2020, announcing the transition to online instruction, Brandeis' President, Ron Liebowitz wrote:

> It is also understandable for our students, especially, to feel
> disappointment at this time. As Brandeisians, we enjoy being on
> campus to teach and learn together and to share the friendship,
> support, and particular rituals that make the Brandeis experience
> special.

Ex. 12 (BRANDEIS-00019376 at 19378); *see also* Ex. 10 ("The reality in which we are currently

living is not one that anyone anticipated . . ."); Ex. 13 (BRANDEIS-00019976) ("There will surely

be bumps along the way, but I have full confidence in our ability to adapt and work together as we

enter uncharted territory."). Such disappointment was reasonable as Brandeis repeatedly

recognized it could not replicate an in-person experience online. *See* Ex. 14 (BRANDEIS-

00019472) ("I can't imagine having classes online when experiential learning was the essence of

refining my craft."); Ex. 15 (BRANDEIS-00019642) (Provost discussing creation of substitute

virtual lab experiences: "There is no doubt that this is not the same as being in a lab . . . ."); Ex. 16

(BRANDEIS-00019923) ("The reality unfortunately is that we will not be able to offer the same

experience going online. So faculty will need to adjust to second and third best solutions here.").

Brandeis continues to maintain its "no refund" position despite an extensive endowment, valued

at approximately $1.074 billion at the end of fiscal year 2019. Answer ¶ 21.

**D.      Common evidence regarding Brandeis' Studio Fee.**

Finally, Plaintiffs' claims particular to Brandeis' Studio Fee will be shown using common

evidence. Specifically, Brandeis charges course-specific fees for a limited number of its courses.

Pls.' Resp. Def. SOF and CSOF ¶ 60 [ECF 86]. Studio Fees in Spring 2020 were denoted in the course catalog with the statement "additional course fee applies," and in the course description. *Id.* ¶ 63. As to this fee in particular, on March 15, 2020, Brandeis announced "[e]ffective immediately, there will be no in-person instruction and all courses at Brandeis will go online, regardless of size," "includ[ing] labs and studios." *Id.* ¶ 7.

**E.    Damages will be proven utilizing a common methodology that is tied to Plaintiffs' legal theories.**

In addition, Plaintiffs will use classwide evidence and methodologies to calculate damages. Here, as reflected in the Expert Report of Charles Cowan, Ph.D., feasible methods exist to estimate class-wide damages, for Plaintiffs tuition and Studio Fee claims. *See generally* Ex. 17 (Cowan Report). Dr. Cowan opines that it is possible to calculate damages from comparing the financial value of the education services that students contracted with Brandeis for the whole Spring 2020 semester against the actual value of the education services that they received during that semester. *Id.* ¶ 18.  As for Studio Fees, Dr. Cowan proposes to multiply the proportion of the semester the services associated with those fees were not provided, by the total fee paid by the student. *Id.* ¶ 47.

**F.    Plaintiffs' experiences are representative of the Class Members' experiences.**

Finally, Plaintiffs' experiences in Spring 2020 are representative of the Class Members experiences as well. Like other members of the Classes they seek to represent, Plaintiffs enrolled in Brandeis and did not receive what they had enrolled at the university for, an in-person education. Ex. 8 (Omori Affidavit ¶¶ 4, 7); Ex. 9 (Yang Affidavit ¶¶ 4, 7). Plaintiffs enrolled at Brandeis understanding that it did not offer online classes for undergraduate students, and as such they would exclusively receive in-person instruction for the entire semester. Ex. 8 (Omori Affidavit ¶¶ 7–8); Ex. 9 (Yang Affidavit ¶¶ 7–8). When registering for classes for the Spring 2020 semester, Brandeis indicated that all courses were being taught on an in-person, classroom basis and listed a

specific classroom as the location at which that class was to meet. Ex. 8 (Omori Affidavit ¶ 10); Ex. 9 (Yang Affidavit ¶ 10). So at the time of their bargain, Plaintiffs understood and (reasonably) expected that all of their classes for that semester would be taught in-person. Ex. 8 (Omori Affidavit ¶¶ 11, 17, 19); Ex. 9 (Yang Affidavit ¶¶ 11, 17, 19). And, reflective of this standing specific to the Studio Fee Class, Plaintiff Yang was enrolled in one class with a course-specific fee in the Spring 2020 semester, Senior Studio II, which required payment of a $75 Studio Fee. Pls.' Resp. Def. SOF and CSOF ¶ 62 [ECF 86].

### III.   CLASSES TO BE CERTIFIED

Individually and on behalf of themselves and all others similarly situated, Plaintiffs seek certification of the following two classes:[9]

| Proposed Class | Proposed Class Representative |
|---|---|
| Tuition Class: All students enrolled at Brandeis University during the Spring 2020 academic term and charged tuition by Brandeis. | Alan Omori and Linfei Yang |
| Studio Fee Class: All students enrolled at Brandeis University during the Spring 2020 academic term and charged a Studio Fee by Brandeis. | Linfei Yang |

### IV.   STANDARD OF REVIEW

To certify a class, a plaintiff must meet all the requirements under Fed. R. Civ. P. 23(a), otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, as well as the requirements of either Fed. R. Civ. P. 23(b)(1), (2), or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). "A party seeking class certification must

---

[9] Excluded from any proposed Class are students who withdrew from Spring 2020 classes on or before March 20, 2020 (the last day that Brandeis provided on-campus instruction) as well as any students who were exclusively enrolled in Brandeis' distance, online or remote education programs or classes.

affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

## V.   ARGUMENT

### A.   The Classes are ascertainable, with membership based on objective factors.

Ascertainability is not explicitly referenced in Rule 23, but there is "an implicit prerequisite to class certification is that a class exists—in other words, it must be administratively feasible for the court to determine whether a particular individual is a member." *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 9 (D. Mass. 2010) (internal quotation marks omitted). "To be ascertainable, all class members need not be identified at the outset; the class need only be determinable by stable and objective factors." *Id.* (internal quotation marks omitted). The proposed Classes here are easily ascertainable, as they are based on objectively identifiable factors: whether a student was enrolled at Brandeis in Spring 2020 and Brandeis charged them tuition and/or a Studio Fee. Class membership can easily be determined by Brandeis' records, which track the students enrolled at the university for the Spring 2020 semester, the programs in which they enrolled and their payment records. *See, e.g., Alexander*, 2021 WL 9038526, at *3 (the proposed class is ascertainable because it is objectively defined and because "the Statements of Charges, which the university sends to all students, show which fees were charged and paid by Plaintiffs and all Class members"). The same is true here.

### B.   Plaintiffs satisfy Rule 23(a)'s requirements.

#### 1.   Numerosity: with thousands of Class Members, joinder is impracticable.

The Rule first requires that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The First Circuit has characterized the numerosity requirement as a "low threshold." *Garcia-Rubiera v. Calderon*, 570 F. 3d 443, 460 (1st Cir. 2009).

There exists no minimum number necessary to satisfy this requirement, but courts generally accept that a class exceeding 40 members is sufficiently numerous. *Id.* Here, numerosity exists because the proposed Classes have over 5,000 members, including about 3,493 undergraduate students and about 1,947 graduate students. *See* Ex. 18 (Brandeis University Common Data Set (2020–2021) at 3). *See Little*, 2022 WL 266726, at *5 (certifying class where proposed class included over 20,000 students). Consequently, Plaintiffs seek to represent Classes far exceeding the low threshold of 40 Class Members to meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

**2. Commonality: commonality exists given numerous common questions and Brandeis' standard conduct to its student body.**

The Rule next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2)'s commonality requirement is a "low hurdle," *Donovan*, 268 F.R.D. at 10 (quoting *S. States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007)). Commonality does not require that all questions of law and fact be common to satisfy the rule, but instead a single issue shared by all members of the class may be enough. *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d 263, 269 (D. Mass. 2011). Courts routinely find the commonality requirement satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Overka v. Amer. Airlines, Inc.*, 265 F.R.D. 14, 18 (D. Mass. 2010) (quotation omitted).

Commonality is easily satisfied here. Common issues here include: (1) whether Brandeis and Class Members had a valid, binding contract; (2) whether the conduct and relationship of the parties formed a valid, implied contract; (3) whether the terms of the contract included terms obligating Brandeis to provide in-person instruction and experiences; (4) whether the terms of the contract included terms obligating Brandeis to provide services relating to the Studio Fee; and (5) the fact and measure of damages derived from verifiable classwide information maintained by

Brandeis. The answers to these questions will determine the outcome of this litigation for all proposed members of the Classes. Because Brandeis engaged in standardized conduct and the same central questions are common for both Plaintiffs and about 5,000 putative Class Members, commonality is easily satisfied.

### 3.      Typicality: Plaintiffs' interests align with Class Members' interests.

The third requirement is "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "'The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class.'" *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015) (internal citation omitted). "The typicality requirement, which tends to merge with the commonality requirement, is 'not highly demanding because the claims only need to share the same essential characteristics, and need not be identical.'" *Gonzalez v. XPO Last Mile, Inc.*, No. 1:19-cv-10290-TSH, 2022 WL 95930, at *5 (D. Mass. Jan. 10, 2022) (internal citation omitted).

Here, Plaintiffs and Class Members were subject to the same promises advertised by Brandeis, for example in its Academic Bulletin, and therefore bring a claim of breach of such promises upon the same legal theory of a breach of implied contract resulting from Brandeis' move from in-person to online instruction in March 2020. It is clear that Plaintiffs' claims "have the same essential characteristics." *Garcia*, 98 F. Supp. 3d at 288. Their claims "arise out of the same practice" by Brandeis and are "based on the same legal theory" as the claims of the other Class Members. *Overka*, 265 F.R.D. at 18. Therefore, the typicality requirement is satisfied. *See Little*, 2022 WL 266726, at *6 ("That Plaintiff did not pay the same fees as every member of the class is irrelevant as long as Plaintiff endured a course of conduct directed against the class. Accordingly, Plaintiff has satisfied the requirement for typicality."); *see also Eddlemon*, 2022 WL 3227865, at

*4 ("[A]ny variations between what Plaintiff paid in tuition and what other members of the class paid is irrelevant, since [d]efendant directed a course of conduct against the entire class."); *Arredondo*, 341 F.R.D. 47 (finding typicality satisfied despite the university's argument that plaintiff's receipt of scholarships made her atypical of the class).

### 4. Adequacy: Plaintiffs will fairly and adequately protect the interests of the Classes because they have no conflicts of interest and are represented by experienced counsel.

Finally, Rule 23 requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The "adequacy" test "'serves to uncover conflicts of interest between named parties and the class they seek to represent,' and focuses on conflicts that are 'fundamental to the suit and that go to the heart of the litigation.'" *Hebert v. Vantage Travel Service, Inc.*, 334 F.R.D. 362, 371 (D. Mass. 2019) (quoting *Matamoros v. Starbucks Corp*., 699 F.3d 129, 138 (1st Cir. 2012)). "[S]peculative conflict should be disregarded at the class certification stage." *Id.* at 371–72 (quotation omitted).

First, Plaintiffs and Class Members have the same interest in obtaining compensation representing the loss of the benefit of their bargain with Brandeis. Plaintiffs have shown their adequacy and commitment to vigorously prosecuting this action by performing the duties asked of them as putative class representatives.

Second, Plaintiffs are also represented by class counsel with extensive experience litigating complex and class action cases. Ex. 19 (Declaration of Daniel J. Kurowski, Exhibit A); Ex. 20 (Poulin | Willey | Anastopoulo, LLC Firm Resume). Collectively, Plaintiffs' counsel have been appointed class counsel in hundreds of cases in both federal and state courts, obtaining billions in recoveries. They have vigorously prosecuted this action through litigating Brandeis' motions to dismiss, issuing discovery (including review of 18,500 pages from Brandeis' records), fighting Brandeis' motion for summary judgment, have retained and advanced costs for an expert witness,

conducted substantial research regarding the legal issues, and thoroughly investigated the factual issues. They have no conflicts of interest and will prosecute this action vigorously on behalf of Plaintiffs and Class Members. Plaintiffs' counsel are well-funded law firms that are willing and able to bear the costs associated with maintaining this class action.

**C.      Plaintiffs satisfy the prerequisites of Rule 23(b)(3).**

Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.      Common issues predominate.**

The Rule 23(b)(3) predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class. *Vargas v. Spirit Delivery & Distrib. Servs., Inc.*, 245 F. Supp. 3d 268, 289 (D. Mass. 2017). While "more demanding" than commonality, predominance actually "presumes that individual issues will exist." *Donovan*, 268 F.R.D. at 28 (quoting *Amchem*, 521 U.S. at 624). So, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

For a common issue, "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* at 453. Plaintiffs need not show that they will prevail on the predominantly common issues; rather they must only show they can offer evidence common to the Classes. *Amgen Inc. v. Connecticut Ret. Plans and*

-14-

*Tr. Funds*, 568 U.S. 455, 459 (2013). "In deciding whether individual issues predominate . . . a court must not rely on mere speculation that individual issues may arise." *Muniz v. XPO Last Mile, Inc.*, 342 F.R.D. 189, 198 (D. Mass. 2022) (quoting *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 89 (1st Cir. 2021)). Further, the need for individual damages determinations does not alone defeat predominance. *See Garcia*, 98 F. Supp. 3d at 291 ("Calculating the precise amount of damages owed to each class member may also require some individualized inquiry. But this task also does not stand in the way of class certification."); *see also Tardiff v. Knox Cnty.*, 365 F.3d 1, 6–7 (1st Cir. 2004) (class certification appropriate even though individual damages would differ).

Here, as other federal courts evaluating similar tuition and/or fee refund cases have found, this Court should conclude that common questions predominate. *See, e.g.*, *Arredondo*, 341 F.R.D. 47, at 53; *Little*, 2022 WL 266726, at *7 ("GCU took actions which uniformly affected students and potentially resulted in a breach of contract. Accordingly, [p]laintiff has met the predominance requirement . . ."); *Eddlemon*, 2022 WL 3227865, at *6 (finding common questions, including "as to whether [d]efendant breached its contract with its students," predominate over individual ones).

### a.   Common evidence and legal theories establish predominance.

Plaintiffs can also show predominance on each element of their claims using common evidence and legal theories. Under Massachusetts law, Plaintiffs must prove: (1) "that there was a valid contract, including proof of the terms of the contract;" (2) "that the plaintiff performed [his/her/its] material obligations under the contract;" (3) "that the defendant breached or violated the contract;" and (4) "that the plaintiff suffered damages as a result of the breach of contract." Mass. Superior Court Civil Practice Jury Instructions, § 14.1. The key issues are common for all Class Members, such as: whether Brandeis' materials document an agreement for in-person education/experiences, whether Brandeis' conduct and representations—including during course registration, billing, and payment—formed a contract with Class Members that required the

university to provide in-person instruction and access to facilities and in-person services; whether Plaintiffs and Class Members performed their material obligations under the contract; whether Brandeis breached the parties' bargain to provide in-person education/experiences; and the calculation of damages. These common issues predominate over any individual issues that may exist. Importantly, as this Court recognized, when interpreting the terms of a university-student contract, courts "employ the standard of reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the [student] to give it." ECF 52 at 7–8 (quotation omitted). Thus, specific student-by-student expectation analyses are unnecessary and contrary to the standard of review.

Here, Brandeis' statements to students, handbooks, mission statement, vision statement, catalogues, policies and financial forms, syllabi noting courses meeting at specific locations on campus, acceptance materials, and school-specific publications—along with Brandeis' history of providing in-person classes—all provide classwide evidence of the existence of a contract for in-person education and experiences. *See* Section II.A.–B. Brandeis' records will show that all Class Members paid tuition and fees for the Spring 2020 semester meeting their material obligations. The university's conduct giving rise to the breach is common for all Class Members: Brandeis transitioned all in-person classes to online-only education. This breach resulted in the same injury for all Class Members; they did not receive the full benefit of their bargain after the transition from in-person classes to online-only education.

This evidence directly affects every Class Members' effort to show liability and every Class Members' entitlement to relief. "It is well established in Massachusetts that the student-college relationship is contractual in nature." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 593 (D. Mass. 2016) (citation omitted). Under Massachusetts law, the contractual terms are often derived

from statements in handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials. *Guckenberger v. Boston Univ.*, 974 F. Supp. 106, 150 (D. Mass. 1997). Whether Brandeis and Class Members were party to a contract that obligated Brandeis to provide in-person education, and whether Brandeis breached its contract with Class Members by failing to provide in-person education and access to facilities are common questions that can be answered for all Class Members. *Alexander*, 2021 WL 9038526, at *6 (finding common issues predominated where, like here, the plaintiffs' claims were based on the university's failure to provide students with the services paid for as the case "poses the same basic legal question for all class members"). These common issues will predominate over any individual issues.

> ### b.    Damages will be calculated using common methodologies.

As discussed in Section II.E, *supra*, damages will be calculated using classwide evidence. Plaintiffs will present the same classwide evidence that the university's transition to online-only education damaged Plaintiffs and Class Members. Common issues predominate even though an individual Class Member's damages may have slight differences. Brandeis maintains records of enrolled students' financial transactions, bills, and payments (*see, e.g.*, Ex. 21 BRANDEIS-00020512, Ex. 22 BRANDEIS-00020518), and common issues predominate where individual factual determinations can be done using computer records, clerical assistance, and objective criteria. *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003). Plaintiffs establish predominance as to damages. *See Little*, 2022 WL 266726, at *7 ("Even though some matters will need to be tried separately, such as which fees students paid (damages), GCU took actions which uniformly affected students and potentially resulted in a breach of contract. Accordingly, Plaintiff has met the predominance requirement for his breach of contract claim."); *Arredondo*, 341 F.R.D. at 53 (finding predominance satisfied where, even though the measure of damages for each student may be individualized, "the ultimate calculation is capable of resolution easily and without

considering an overwhelming number of individualized questions."). This case satisfies the predominance test.

### 2. Class treatment is superior to thousands of individual adjudications.

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). The superiority requirement "ensures that litigation by class action will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Solodyn Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (cleaned up). Superiority exists when class adjudication would be "far more efficient and economical" than many individual cases regarding the same subject matter. *Vargas*, 245 F. Supp. 3d at 289. A class action is a superior method of adjudication when it is questionable that putative class members could litigate on their own. *See Gintis v. Bouchard Transp. Co., Inc.*, 596 F.3d 64, 67–68 (1st Cir. 2010).

Certification of the two proposed Classes is superior to thousands of individual cases on the same issues. The comparatively small amount of damages to each individual Class Member balanced against the litigation costs necessary to litigate against an entity with a $1.2 billion dollar endowment shows class treatment is superior and more efficient. *See, e.g.*, *In re Boston Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 287–88 (D. Mass. 2009) ("Class certification . . . is also superior to other methods because . . . it will provide the opportunity for individual investors to vindicate potentially valid claims, even where those investors suffered relatively small damages and have insufficient resources to pursue litigation on their own."). This case can be tried in an efficient matter, and Plaintiffs foresee no manageability problems that make thousands of individual actions a better alternative to litigate the same basic contractual claims.

-18-

Class certification will permit many students to adjudicate their common claims in a single forum simultaneously, effectively, and efficiently, without the duplication of effort and expense that many individual actions would require. Plaintiffs show the superiority prong of Fed. R. Civ. P. 23(b)(3). *Little*, 2022 WL 266726, at *7 ("[I]t is clear that a class action is the most efficient way to manage this controversy. Otherwise, roughly 20,000 students would need to individually litigate their breach of contract claims against [defendant], and students would likely not be able to collect enough in damages in order to bring suit on their own."); *Eddlemon*, 2022 WL 3227865, at *9 ("Owing to the common issues shared and the large class size, a class action will reduce litigation costs and promote greater efficiency."); *Alexander*, 2021 WL 9038526, at *7 (finding superiority met "[w]here, like here, the absent class members' individual claims are too small to expect them to be adjudicated separately," such that "the added efficiency of a class action is at its greatest" and that "[a]bsent a class-wide resolution, it is unlikely that any significant number of class members would obtain redress.") (citation and quotation omitted).

## VI.    CONCLUSION

Accordingly, for the reasons provided above and for good cause shown, Plaintiffs respectfully request this Court enter an order (1) certifying this case as a class action under Fed. R. Civ. P. 23(c)(1); (2) appointing Plaintiffs Omori and Yang as class representatives for the Tuition Class and appoint Plaintiff Yang as class representative for the Studio Fee Class; (3) appointing Hagens Berman Sobol Shapiro LLP and Poulin | Willey | Anastopoulo, LLC as co-lead class counsel for the certified Classes under Fed. R. Civ. P. 23(g); (4) instructing notice to be sent to the Classes in accordance with the requirements of Fed. R. Civ. P. 23(c)(2)(B) and requiring Brandeis to provide Class Member email and notice lists to a notice administrator so direct notice may issue to the certified Classes; and (5) ordering Brandeis to produce Class Member, student-level transactional data from its system to finalize individualized damages calculations. Plaintiffs

-19-

further request that the Court grant them all such other relief as the Court deems necessary and appropriate.

Dated: February 3, 2023                  Respectfully submitted,

*/s/ Blake G. Abbott*
Roy T. Willey, IV (*Pro Hac Vice*)
Eric M. Poulin (*Pro Hac Vice*)
Paul J. Doolittle (*Pro Hac Vice*)
Blake G. Abbott (*Pro Hac Vice*)
POULIN | WILLEY | ANASTOPOULO, LLC
32 Ann Street
Charleston, SC 29403
(843) 614-8888
roy@akimlawfirm.com
eric@akimlawfirm.com
pauld@akimlawfirm.com
blake@akimlawfirm.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Rachel Downey (BBO #706639)
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Floor
(617) 482-3700
racheld@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Richard E. Levine (BBO# 672675)
STANZLER LEVINE, LLC
37 Walnut Street, Suite 200
Wellesley, MA 02481
(617) 482-3198
rlevine@stanzlerlevine.com

*Attorneys for Plaintiffs, individually and on behalf*
*of all others similarly situated*

-21-

## <u>COMPLIANCE WITH LOCAL RULE 7.1</u>

The undersigned, an attorney, hereby certifies that on January 26, 2023, counsel for Plaintiffs (Blake Abbott and Daniel Kurowski) met and conferred telephonically with counsel for Defendant (Alex Loomis) regarding Plaintiffs' Motion for Class Certification. Counsel for Defendant did not agree or consent to class certification, nor any individual elements or issues under Rule 23. As a result, the parties are at an impasse.

*/s/ Blake G. Abbott*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on February 3, 2023, a true and correct copy of the foregoing, with all attachments thereto, was filed electronically via the Court's CM/ECF system, which caused notice to be sent to all counsel of record.

*/s/ Blake G. Abbott*